# EXHIBIT 2

## Copies of All Process Documents, Pleadings and Orders

Case Number: CACE-16-016030 Division: 25

Filing # 45874387 E-Filed 08/30/2016 03:35:58 PM

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form shall be filed by the plaintiff or petitioner for the use of the Clerk of the Court for the purpose of reporting judicial workload data pursuant to Florida Statutes section 25.075.

### I.   CASE STYLE

IN THE CIRCUIT COURT OF THE <u>SEVENTEENTH</u> JUDICIAL CIRCUIT,
IN AND FOR <u>BROWARD</u> COUNTY, FLORIDA

Case No.: _____
Judge: _____

<u>Kerry Roth</u>
Plaintiff

vs.

<u>GEICO General Insuracne Company</u>
Defendant

### II.   TYPE OF CASE

- ☐ Condominium
- ☒ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☐ Negligence – other
  - ☐ Business governance
  - ☐ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability – commercial
  - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
  - ☐ Commercial foreclosure $0 - $50,000
  - ☐ Commercial foreclosure $50,001 - $249,999
  - ☐ Commercial foreclosure $250,000 or more
  - ☐ Homestead residential foreclosure $0 – 50,000
  - ☐ Homestead residential foreclosure $50,001 - $249,999
  - ☐ Homestead residential foreclosure $250,000 or more
  - ☐ Non-homestead residential foreclosure $0 - $50,000
  - ☐ Non-homestead residential foreclosure $50,001 - $249,999
  - ☐ Non-homestead residential foreclosure $250,00 or more

- ☐ Other real property actions $0 - $50,000
- ☐ Other real property actions $50,001 - $249,999
- ☐ Other real property actions $250,000 or more

- ☐ Professional malpractice
  - ☐ Malpractice – business
  - ☐ Malpractice – medical
  - ☐ Malpractice – other professional
- ☐ Other
  - ☐ Antitrust/Trade Regulation
  - ☐ Business Transaction
  - ☐ Circuit Civil - Not Applicable
  - ☐ Constitutional challenge-statute or ordinance
  - ☐ Constitutional challenge-proposed amendment
  - ☐ Corporate Trusts
  - ☐ Discrimination-employment or other
  - ☐ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☐ Trust litigation

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

III.   **REMEDIES SOUGHT** (check all that apply):
      ☒  Monetary;
      ☐  Non-monetary
      ☐  Non-monetary declaratory or injunctive relief;
      ☐  Punitive

IV.   **NUMBER OF CAUSES OF ACTION: (    )**
    (Specify)

      1

V.   **IS THIS CASE A CLASS ACTION LAWSUIT?**
      ☒  Yes
      ☐  No

VI.   **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
      ☒  No
      ☐  Yes – If "yes" list all related cases by name, case number and court:

VII.   **IS JURY TRIAL DEMANDED IN COMPLAINT?**
      ☒  Yes
      ☐  No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature s/ Christopher J Lynch     FL Bar No.: 331041
    Attorney or party                          (Bar number, if attorney)

    Christopher J Lynch   08/30/2016
    (Type or print name)                           Date

Filing # 45874387 E-Filed 08/30/2016 03:35:58 PM

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

KERRY ROTH, on behalf of herself and all
others similarly situated,

CASE NO:

CLASS REPRESENTATION

      Plaintiff,

vs.

GEICO GENERAL INSURANCE
COMPANY; GOVERNMENT EMPLOYEE
INSURANCE COMPANY; GEICO INDEMNITY COMPANY;
GEICO CASUALTY COMPANY; GEICO ADVANTAGE
INSURANCE COMPANY; GEICO CHOICE INSURANCE
COMPANY AND GEICO SECURE INSURANCE COMPANY,

      Defendants.

_____/

## PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES

The Plaintiff KERRY ROTH, on behalf of herself and all others similarly situated, files

this Class Action Complaint against GEICO GENERAL INSURANCE COMPANY;

GOVERNMENT EMPLOYEE INSURANCE COMPANY; GEICO INDEMNITY COMPANY;

GEICO CASUALTY COMPANY; GEICO ADVANTAGE INSURANCE COMPANY; GEICO

CHOICE INSURANCE C OMPANY and GEICO SECURE INSURANCE COMPANY as follows:

### I. NATURE OF THE ACTION

1.    This is a class action lawsuit by Plaintiff who was the named insured under a

GEICO GENERAL INSURANCE COMPANY, (hereinafter also identified as "GEICO General"),

automobile policy issued for private passenger auto physical damage requiring payment of

"Actual Cash Value" ("ACV"), including sales tax, and state and local regulatory fees, for

covered total loss leased vehicles.

2.     The Defendant GEICO GENERAL's standardized policy language, which is also present in the Florida policies issued by GOVERNMENT EMPLOYEE INSURANCE COMPANY; GEICO INDEMNITY COMPANY; GEICO CASUALTY COMPANY; GEICO ADVANTAGE INSURANCE COMPANY; GEICO CHOICE INSURANCE COMPANY and GEICO SECURE INSURANCE COMPANY shows that sales tax equal to at least six percent[1] of the cash value of the insured vehicle at the time of loss (the "ACV Sales Tax"), is included in a total loss vehicle coverage, as are state and local regulatory fees.

3.     This lawsuit is brought on behalf of Plaintiff KERRY ROTH and on behalf of similarly situated insureds who have suffered damages due to the Defendants' policy and practice of refusing to pay full ACV Sales Tax and state and local regulatory fees, on insured leased vehicles, in the case of total loss, notwithstanding that, as set forth above, the Defendants' standardized policy language provides coverage for said ACV Sales Tax and fees.

## II. JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over Plaintiff's claims since the Plaintiff's and classes' claims exceed $15,000.00.

5.     Venue is proper in this Court, pursuant to §47.051 *Fla. Stat.,* since the Defendants have agents or representatives doing business in this county.

## III. THE PARTIES

6.     At all times material hereto, the Plaintiff KERRY ROTH, is and was a person residing in Boca Raton, Florida.

---

[1] Florida's sales tax is 6%. In addition, some counties impose a local sales tax of up to 1.5% in addition to the 6% state sales tax.

7.     At all times material hereto, the Defendant GEICO GENERAL is and was a foreign corporation authorize to transact insurance in the State of Florida, and one of the largest, if not the largest, motor vehicle insurer in Florida.   The remaining Defendants GOVERNMENT EMPLOYEE INSURANCE COMPANY; GEICO INDEMNITY COMPANY; GEICO CASUALTY COMPANY; GEICO ADVANTAGE INSURANCE COMPANY; GEICO CHOICE INSURANCE COMPANY and GEICO SECURE INSURANCE COMPANY are also foreign corporations authorized to transact insurance in Florida.

## IV. FACTUAL ALLEGATIONS

8.     At all times material hereto, the Plaintiff ROTH was a lessee of a 2015 Audi A3 Sedan, VIN number WAUACGFF7F1092286, financed through VW Credit, Inc.

9.     At all times material hereto, the Plaintiff ROTH insured the 2015 Audi A3 under a Florida Family Automobile Insurance Policy with GEICO GENERAL (a copy of said policy is attached hereto as Exhibit A).

10.     On or about June 18, 2016, the Plaintiff ROTH was involved in an accident while operating the 2015 Audi A3.  As a result of said accident, ROTH filed a claim for property damage with GEICO GENERAL,  claim number 05590116-0101-012.

11.     Following the filing of said claim, GEICO GENERAL determined that the 2015 Audi A3 was a total loss with an ACV of $23,947.00.  GEICO GENERAL then paid the aforementioned sum to the lienholder, VW Credit Inc., minus the GEICO GENERAL policy's deductible of $1,000.00, for a total of $22,947.00.

12.     In paying the aforementioned amount, GEICO GENERAL indicated that because the vehicle was leased ,no ACV Sales Tax or state or local regulatory fees were owed under the GEICO GENERAL policy.

## V.  THE GEICO GENERAL POLICY

13.     The GEICO GENERAL policy, under Section III, entitled PHYSICAL DAMAGE

COVERAGE, (page 14 of Form A-70 FL(03-11), states:

**LOSSES WE WILL PAY**

\*                    \*                    \*

*Collision*

**1.**  We will pay for *collision loss* to the *owned
auto* for the amount of each *loss* less the
applicable deductible and to the *non-owned auto*
for the amount of each *loss* less the applicable
deductible when driven by *you* or a *relative.*

14.     The GEICO GENERAL policy, in Section III,  under the provision entitled **LIMIT**

**OF LIABILITY,** (page 15 of Form A-70FL (03-11)), states:

The limit of our liability for *loss* :

1. Is the *actual cash value* of the property at the
time of the *loss.*

15.     Finally, the **DEFINITIONS** provision of the GEICO GENERAL policy (page 13

of form A-70FL (03-11)), states:

1.  *Actual cash value* is the replacement cost of
the auto or property less *depreciation* or
*betterment.*

16.     Clearly, the policy language, which is identical to the language contained in the

Florida policies issued by GOVERNMENT EMPLOYEE INSURANCE COMPANY; GEICO

INDEMNITY COMPANY; GEICO CASUALTY COMPANY; GEICO ADVANTAGE INSURANCE

COMPANY; GEICO CHOICE INSURANCE COMPANY and GEICO SECURE INSURANCE

COMPANY does not include: (1) any provision excluding sales tax or state and local

regulatory fees from ACV; (2) any provision deferring payment of the ACV Sales Tax and state or local regulatory fees for any purpose whatsoever; (3) any provision requiring an insured to lease a replacement vehicle; (4) any provision requiring the insured to first lease a replacement vehicle as a condition precedent to receiving a ACV Sales Tax or state and regulatory fees; and (5) any provision linking the amount of ACV Sales Tax or state and regulatory fees to the lease of a replacement vehicle and the corresponding sales tax or state or regulatory fees on said replacement vehicle.

## VI. CLASS ALLEGATIONS

17.     The Plaintiff brings this action seeking representation of two classes pursuant to Florida Rule of Civil Procedure 1.220.

18.     Plaintiff's claims are typical to those of all class members because members of the class are similarly affected by the Defendant's failure to pay ACV Sales Tax and state and local regulatory fees upon the total loss of insured leased vehicles. The material policy terms for each class member are identical to the terms of the Plaintiff's policy.

19.     Plaintiff's interests are not antagonistic to those of other class members nor is the Plaintiff subject to any unique defenses.

20.     The claim of the representative Plaintiff ROTH, raises questions of law and fact that are common to all members of the classes, within the meaning of Florida Rule of Civil Procedure 1.220.   Said common questions include, but are not limited to, the following: (a) whether under the Defendant's standardized policy language Plaintiff and the class members are owed ACV Sales Tax and state and local regulatory fees upon the total loss of an insured leased vehicle; and (b) whether the Defendants have breached their insurance contracts with the Plaintiff and the class members by failing to pay ACV Sales Tax and state and local regulatory fees upon the total loss of an insured leased vehicle.

21.    The claims of the Plaintiff are typical of the claims of all other members of the classes because all such claims arise from the alleged improper failure of the Defendant to pay ACV Sales Tax and state and local regulatory fees upon the total loss of insured leased vehicles.

22.    The Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the classes.

23.    The Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions.

24.    This action is properly maintained as class action pursuant to Florida Rule of Civil Procedure 1.220(b)(3) in that questions of law and fact, common to claims of the Plaintiff and the members of the class, will predominate over questions of law or fact, affecting only individual members of the class, such that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

25.    The Plaintiff brings this action pursuant to Rule 1.220(b)(3) of the Florida Rules of Civil Procedure as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

<u>CLASS A</u>

All insureds, under a policy issued by Geico General Insurance Company in the State of Florida, covering a leased vehicle, who sustained a total loss to said vehicle and who, within the five year time period prior to the date on which this lawsuit was filed till the date of any certification order, received payment from Geico General Insurance Company for said loss, which payment did not include ACV Sales Tax or state and local regulatory fees for the loss of said vehicle.

## CLASS B

All insureds, under policies issued by Geico General Insurance Company; Government Employee Insurance Company; Geico Indemnity Company; Geico Casualty Company; Geico Advantage Insurance Company; Geico Choice Insurance Company and Geico Secure Insurance Company, in the State of Florida, covering a leased vehicle, who sustained a total loss to said vehicle, and who, within the five years time period prior to the date on which this lawsuit was filed to the date of any certification order, received payment from any of the aforementioned insurance companies, which payment did not include ACV Sales Tax or state and local regulatory fees for the loss of said vehicle.

26.    The issues relating to the claim of the Plaintiff do not vary from the issues relating to the claims of the other members of the classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

27.    Certification of the above classes under Florida Rule of Civil Procedure 1.220(b)(3) is also supported by the following considerations:

(a) The relatively small amount of damages that members of the classes have suffered on an individual basis would not justify the prosecution of separate lawsuits.

(b) Counsel in this class action is not aware of any previously filed litigation against the Defendants in which any of the members of the classes are a party and which any question of law or fact in the subject action is to be adjudicated.

(c) No difficulties would be encountered in the management of the Plaintiff's claim on a class action basis because the classes are readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

28.     Finally, although the precise number of class members is unknown to Plaintiff at this time, and can only be determined through appropriate discovery, the Plaintiff believes that since the Defendants collectively are one of the largest, if not the largest, motor vehicle insurer in the State of Florida, the classes of persons affected by the Defendants' unlawful practice consists of thousands of individuals or the classes of persons affected are otherwise so numerous, that joinder of all class members is impractical.   The unlawful practice alleged herein is a standardized uniform practice, employed by the Defendants, pursuant to standardized insurance policy language, resulting in the retention by the Defendants of insurance benefits and monies properly owed to the Plaintiff and the class members.

### COUNT I - BREACH OF CONTRACT FOR CLASSES A AND B

29.     The allegations contained in paragraphs 1 through 28 above are incorporated herein by reference.

30.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured leased vehicles, the Plaintiff and the class members were owed the actual cash value of the vehicle which would include ACV Sales Tax and state and local regulatory fees.

31.     The Defendants failure to provide coverage for the aforementioned ACV Sales Tax and state and local regulatory fees, constitutes a breach of said contractual provisions. As a result of said breaches, the Plaintiff and the class members are entitled to sums representing the benefits owed for ACV Sales Tax and state and local regulatory fees, under the Defendants' insurance polices, as well as costs, prejudgment and post judgment interest and other relief as is appropriate.

32.     In addition, the Plaintiff and the class members are entitled to an award of attorney fees pursuant to §627.428 Fla. Stat.

WHEREFORE, the Plaintiff KERRY ROTH, individually and on behalf of Classes A and B, seeks an award of compensatory damages as outlined above, pre and post judgment interest, costs, attorney fees and such other relief deemed appropriate. In addition, the Plaintiff ROTH seeks trial by jury of all issues so triable.

## COUNT II - CLAIM FOR DECLARATORY RELIEF
## FOR CLASSES A AND B

33.     The allegations in paragraph 1 through 28 above are incorporated herein by reference.

34.     This is a claim for declaratory relief pursuant to §86.011 *et. seq. Fla. Stat.*

35.     It is the Plaintiff's and the class members' position, that upon the total loss of the insured leased vehicles, the Plaintiff and the class members were properly owed ACV Sales Tax and state and regulatory fees under the Defendants' policies.

36.     It is the Defendants' position, that upon the total loss of the insured leased vehicles, the Defendants did not owe ACV Sales Tax and state and local regulatory fees to Plaintiff and the class members.

37.     A dispute having arisen between the Parties as to the proper interpretation of the subject contractual provisions, the Plaintiff and the class members request that this Court declare that under the Defendants' policy provisions, following the total loss of an insured leased vehicle, the Plaintiff and the class members were owed ACV Sales Tax and state and local regulatory fees.

38.     In addition, pursuant to §86.011 *Fla. Stat.*, the Plaintiff and the class members request further relief consisting of payment of the aforementioned ACV Sales Tax and state and local regulatory fees; injunctive relief mandating the payment of said ACV Sales Tax and state and local regulatory fees to all insureds under similar policy language; as well as costs,

prejudgment and post judgment interest and such other relief as deemed appropriate.

39.    Finally, the Plaintiff and the class members are entitled to an award of attorney fees pursuant to §627.428 *Fla. Stat.*

WHEREFORE, the Plaintiff KERRY ROTH, individually and on behalf of Classes A and B, seeks declaratory and supplemental relief as outlined above, attorney fees, costs, pre and post judgment interest and such other relief deemed appropriate.   In addition, the Plaintiff ROTH seeks trial by jury of all issues so triable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by process server on the Defendants.

Respectfully submitted,

Christopher J. Lynch, P.A.
Attorney for Plaintiff
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Facsimile: (305) 443-6204
Clynch@hunterlynchlaw.com
Lmartinez@hunterlynchaw.com

By:  /s/ Christopher J. Lynch
        CHRISTOPHER J. LYNCH
        FBN 331041

Edmund A. Normand, Esq.
FBN: 0865590
Normand Law PLLC
4551 New Broad St.
Orlando, Fl 32814
Ed@EdNormand.com

By: /s/ Edmund A. Normand
        EDMUND A. NORMAND

# GEICO

ONE GEICO PLAZA
Washington, D. C. 20076-0001
Telephone: 1-800-841-3000

# Florida Family Automobile Insurance Policy

GEICO GENERAL INSURANCE COMPANY

A-70FL (03-11)



EXHIBIT

"A"

# YOUR POLICY INDEX

Page

**SECTION I – Liability Coverages**
**Your Protection Against Claims From Others**

Definitions.....................................................................3
Losses We Will Pay For You.....................................3
Additional Payments We Will Make Under
   The Liability Coverages......................................4
      Legal Expenses And Court Costs
      Bail And Appeal Bonds
      First Aid Expenses
Exclusions: When Section I Does Not Apply...........4
Persons Insured: Who Is Covered............................5
Financial Responsibility Laws...................................5
Out of State Coverage ..............................................5
Limits Of Liability .......................................................5
Other Insurance.........................................................5
Conditions...................................................................5
   Notice
   Assistance And Cooperation Of The Insured
   Action Against Us
   Subrogation

**SECTION II – Personal Injury Protection Coverage**

Personal Injury Protection (Part I)............................6
Definitions...................................................................6
Payments We Will Make ............................................8
Exclusions ..................................................................8
Limits Of Liability; Application Of Deductible;
   Other Insurance....................................................9
Policy Period; Territory ..............................................9
Conditions...................................................................9
   Notice
   Action Against The Company
   Proof Of Claim; Medical Reports and
      Examinations; Payment of Claim Withheld
   Reimbursement And Subrogation
   Special Provisions For Rented Or Leased Vehicles
Modification Of Policy Coverages (Part II) .........10
Provisional Premium (Part III)............................10
Automobile Medical Payments Coverage
(Part IV)................................................................10

**SECTION III – Physical Damage Coverages**
**Your Protection For Loss Of Or Damage To Your Car**

Definitions.................................................................13
Losses We Will Pay.................................................14
   Comprehensive(Excluding Collision)..............14
   Collision .............................................................14
Additional Payments We Will Make Under The
   Physical Damage Coverages............................14
   Car Rental If Your Car Is Stolen  ......................14

Page

Exclusions:  When The Physical Damage
   Coverages Do Not Apply....................................14
Limit Of Liability .......................................................15
Other Insurance .......................................................15
Conditions.................................................................15
   Notice
   Assistance And Cooperation Of The Insured
   Action Against Us
   Insured's Duties In Event Of Loss
   Appraisal
   Payment Of Loss
   No Benefit To Bailee
   Subrogation
   Assignment

**SECTION IV – Uninsured Motorists Coverage**
**Your Protection For Injuries Caused By**
**Uninsured And Hit-And-Run Motorists..............17**

**SECTION V – General Conditions**
**The Following Apply To All Coverages In This Policy**
Territory – Policy Period..........................................17
Premium.....................................................................17
Changes.....................................................................17
Assignment................................................................17
Cancellation By The Insured...................................17
Cancellation By Us...................................................18
Cancellation By Us Is Limited.................................18
Renewal.....................................................................18
Non Renewal .............................................................18
Mediation Of Claims.................................................19
Other Insurance........................................................19
Action Against Us......................................................19
Dividend Provision....................................................19
Declarations...............................................................19
Fraud And Misrepresentation..................................19
Examination Under Oath..........................................19
Terms Of Policy Conformed To Statutes...............19
Choice of Law............................................................19

**SECTION VI –  Amendments And Endorsements**

Special Endorsement
United States Government Employees.................20

Whenever "he," "his," "him," or "himself" appears in this policy, you may read "she," "her," "hers," or "herself."

## AGREEMENT

We, the Company named in the declarations attached to this policy, make this agreement with *you* , the policyholder.  Relying on the information you have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:

### SECTION I - LIABILITY COVERAGES

**Bodily Injury Liability And Property Damage Liability**
***Your* Protection Against Claims From Others**

## DEFINITIONS

The words bolded and italicized in Section I of this policy are defined below.

1. *Auto business* means the business of selling, repairing, servicing, storing, transporting or parking of autos.
2. *Bodily injury* means bodily injury to a person, caused by accident, including resulting sickness, disease or death. All claims for damages arising from bodily injury to a person from a single loss shall be considered one bodily injury.
3. *Farm auto* means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.
4. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5. *Non-owned auto* means a *private passenger, farm* or *utility auto* or *trailer* not owned by, furnished or available for regular use of either *you* or *your relative*, other than a *temporary substitute auto.* An auto rented or leased for more than 30 days will be considered as furnished or available for regular use.
6. *Owned auto* means:
   (a) A vehicle described in this policy for which a premium charge is shown for these coverages;
   (b) *A trailer* owned by *you;*
   (c) A *private passenger, farm* or *utility auto*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more, if
   (i) It replaces an *owned auto* as defined in (a) above; or
   (ii) We insure all *private passenger, farm* and *utility autos* owned by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;
   (d) A *temporary substitute auto.*
7. *Private passenger auto* means a four-wheel private passenger, station wagon or jeep-type auto, including a *farm* or *utility auto* as defined.
8. *Relative* means a person related to *you* by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as *you.*
9. *Temporary substitute auto* means a *private passenger, farm* or *utility auto* or *trailer*, not owned by *you* or *your relative*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction. This vehicle will no longer qualify as a *temporary substitute auto:*
   (a) Five (5) days after the *owned auto* is deemed by us to be a total loss, and
   (b) We pay the applicable limit of liability under Section III.
10. *Trailer* means a vehicle designed to be towed by a *private passenger auto*. If the vehicle is being used for business or commercial purposes, it is a trailer only while used with a *private passenger, farm* or *utility auto. Trailer* also means a farm wagon or farm implement used with a *farm auto.*
11. *Utility auto* means a vehicle, other than a *farm auto*, with gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.
12. *War* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.
13. *You* and *your* means the named insured shown in the declarations or his or her spouse if a resident of the same household.

## LOSSES WE WILL PAY FOR YOU

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

1. *Bodily injury*, sustained by a person, and

2. Damage to or destruction of property,

arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*.

We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit. We have no duty to investigate or defend any claims which are not covered under the terms of this policy. Our duty to defend ends when the limits of liability for bodily injury liability have been exhausted by payments of judgments or settlements.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. All investigative and legal costs incurred by us.
2. Interest calculated on that part of a judgment that is within our limit of liability and accruing:
    (a) Before the judgment, where owed by law, and until we pay, offer to pay, or deposit in court the amount due under this coverage;
    (b) After the judgment, and until we pay, offer to pay, or deposit in court, the amount due under this coverage.
3. Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of our liability.
4. We will upon request by an *Insured*, provide reimbursement for the following items:
    (a) Costs incurred by any *Insured* for first aid to others at the time of an accident involving an *owned auto* or *non-owned auto*.
    (b) Loss of earnings up to $50 a day, but not other income, if we request an *Insured* to attend hearings and trials.
    (c) All reasonable costs incurred by an *Insured* at our request.
    (d) Premiums for bail bonds paid by an *Insured* due to traffic law violations arising out of the use of an *owned auto*, not to exceed $250 per bail bond.

## EXCLUSIONS

**Section I Does Not Apply:**

1. To any *bodily injury* to any *Insured* or *relative* of an *Insured's* family residing in the *Insured's* household.
    This exclusion does not apply if the *Insured* or *relative* of the *Insured* is injured as a passenger in a motor vehicle insured under this policy while that vehicle is being driven by a person who is not a *relative*, nor *you*.
2. To any vehicle used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.
3. To liability coverage for any person who intentionally causes *bodily injury* or property damage.
4. To *bodily injury* or property damage that is insured under a nuclear liability policy. This exclusion applies even if the limits of that policy are exhausted.
5. To *bodily injury* or property damage arising from the operation of farm machinery.
6. To *bodily injury* to an employee of an *Insured* arising out of and in the course of employment by an *Insured*.
    However, *bodily injury* of a domestic employee of the *Insured* is covered unless benefits are payable or are required to be provided under a workmen's compensation law.
7. To *bodily injury* to a fellow employee of an *Insured* (other than *you*) injured in the course of his employment if the *bodily injury* arises from the use of an auto in the business of his employer, and if benefits are payable under a workmen's compensation policy.
8. To an *owned auto* while used by a person (other than *you* or a *relative* or *your* or *your relative's* partner, agent or employee) when he is employed or otherwise engaged in the *auto business*.
9. To a *non-owned auto* while maintained or used by a person while he is employed or otherwise engaged in any *auto business*.
    However, coverage does apply to a *non-owned private passenger auto* used by *you*, *your* chauffeur or a domestic servant, while engaged in the business of an *Insured*.
10. To damage:
    (a) To property owned, or transported by an *Insured*; or
    (b) To property rented to or in charge of an *Insured*. This exclusion does not apply to a residence or private garage.
11. To an auto acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.
12. To:
    (a) The United States of America or any of its agencies;
    (b) Any person, including *you*, if protection is afforded under the provisions of the Federal Tort Claims Act.
13. To any liability assumed under any contract or agreement.
14. To *bodily injury* or property damage caused by the *Insured* in participation and/or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

**15.** To punitive or exemplary damages, regardless of any other provision of this policy.

**PERSONS INSURED**

Who Is Covered

Section I applies to the following as *insureds* with regard to an *owned auto*:

1. *You;*
2. Any other person using the auto with *your* permission to the extent of that permission;
3. Any other person or organization for his or its liability because of acts or omissions of an *insured* under 1. or 2. above.

Section I applies to the following as *insureds* with regard to a *non-owned auto*:

1. *You* and *your relatives* when driving the *non-owned auto*. Such use must be with the permission, or reasonably believed to be with the permission, of the owner and to the extent of that permission.
2. A person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1. above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

**FINANCIAL RESPONSIBILITY LAWS**

When this policy is certified as proof of compliance with the Florida financial responsibility law for the future, this liability insurance will comply with the provisions of that law.

**OUT OF STATE COVERAGE**

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. We will not provide Bodily Injury Liability Coverage under this provision if that coverage is not purchased and shown in the policy declarations. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

**LIMITS OF LIABILITY**

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.
2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.
3. The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of damage to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.
4. If this policy covers two or more autos, the LIMITS OF LIABILITY apply separately to each. An auto and attached *trailer* are considered to be one auto.

**OTHER INSURANCE**

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

If the *insured* has other applicable insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

**CONDITIONS**

The following conditions apply to Section I:

1. **NOTICE**

   As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:

   (a) The identity of the *insured;*
   (b) The time, place and details of the occurrence;
   (c) The names and addresses of the injured, and of any witnesses; and
   (d) The names of the owners and the description and location of any damaged property.

   If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

2. **ASSISTANCE AND COOPERATION OF THE *INSURED***

   The *insured* will cooperate and assist us, if requested:

   (a) In the investigation of the occurrence;

(b) In making settlements;

(c) In the conduct of suits;

(d) In enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage;

(e) At trials and hearings;

(f) In securing and giving evidence; and

(g) By obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

**3.  ACTION AGAINST US**

No suit will lie against us:

(a) Unless the *insured* has fully complied with all the policy's terms and conditions, and

(b) Until the amount of the *insured's* obligation to pay has been finally determined, either:

    (i)  By a final judgment against the *insured* after actual trial; or

    (ii) By written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or of his estate will not relieve us of our obligations.

**4.  SUBROGATION**

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

When a person has been paid damages by us under this policy and also recovers from another, that person shall:

(a) Hold in trust for us the amount recovered; and

(b) Reimburse us to the extent of our payment.

---

**SECTION II: PART I - PERSONAL INJURY PROTECTION AND PART IV-AUTOMOBILE MEDICAL PAYMENTS**

**(Automobile Medical Payments Coverage applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)**

---

**PART I - PERSONAL INJURY PROTECTION**

**DEFINITIONS**

The definitions of the terms *insured* and *you* under Section I apply to Section II also.

**1.**  *Bodily injury* means bodily injury, sickness, or disease to a person, caused by accident, including resulting sickness, disease or death resulting therefrom. All claims for damages arising from *bodily injury* to a person from a single loss shall be considered one *bodily injury*.

**2.**  *Insured motor vehicle* means a *motor vehicle*:

(a) Of which *you* are the *owner*, and

(b) With respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law, and

(c) For which a premium is charged, or which is a trailer, other than a mobile home, designed for use with a *motor vehicle*.

**3.**  (a) *Medical expenses* means reasonable expenses for *medically necessary* medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person. Reimbursement for *medical expenses* shall be limited to and shall not exceed 80% of the schedule of maximum charges as set forth in Florida Statute § 627.736(5) (a) 2.

(b) However, the medical benefits shall provide reimbursement only for such services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under Florida Statutes, Title 32, chapter 458 or chapter 459, a dentist licensed under Florida Statutes, Title 32, chapter 466, or a chiropractic physician licensed under Florida Statutes, Title 32, chapter 460 or that are provided by any of the following persons or entities:

1. A hospital or ambulatory surgical center licensed under Florida Statutes, Title 29, chapter 395.

2. A person or entity licensed under Florida Statutes Title 29, chapters 401.2101-401.45 that provides emergency transportation and treatment.

3. An entity wholly owned by one or more physicians licensed under Florida Statutes Title 32, chapter 458 or chapter 459, chiropractic physicians licensed under Florida Statutes, Title 32, chapter 460, or dentists licensed under Florida Statutes, Title 32, chapter 466 or by such practitioner or practitioners and the spouse, parent, child, or sibling of that practitioner or those practitioners.
4. An entity wholly owned, directly or indirectly, by a hospital or hospitals.
5. A health care clinic licensed under Florida Statute Title 29, chapters 400.990-400.995 that is :
   a. Accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission of Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc.; or
   b. A health care clinic that;
      (i) Has a medical director licensed under chapter Florida Statute Title 32, chapter 458, chapter 459, or chapter 460;
      (ii) Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and
      (iii) Provides at least four of the following medical specialties:
         (A) General medicine.
         (B) Radiography.
         (C) Orthopedic medicine.
         (D) Physical medicine.
         (E) Physical therapy.
         (F) Physical rehabilitation.
         (G) Prescribing or dispensing outpatient prescription medication.
         (H) Laboratory services.

4. *Medically necessary* refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:
   (a) In accordance with generally accepted standards or medical practice;
   (b) Clinically appropriate in terms of type, frequency, extent, site, and duration; and
   (c) Not primarily for the convenience of the patient, physician, or other health care provider.
5. *Motor vehicle* means any self-propelled vehicle of four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle.
   A *motor vehicle* does not include:
   (a) Any *motor vehicle* which is used in mass transit other than public school transportation and designed to transport more than five passengers exclusive of the operator of the *motor vehicle* and which is owned by a municipality, a transit authority, or a political subdivision of the state; or
   (b) A mobile home.
6. *Occupying* means in or upon or entering into or alighting from;
7. *Owner* means a person or organization who holds the legal title to a *motor vehicle*, and also includes:
   (a) A debtor having the right to possession, in the event a *motor vehicle* is the subject of a security agreement, and
   (b) A lessee having the right to possession, in the event a *motor vehicle* is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and
   (c) A lessee having the right to possession, in the event a *motor vehicle* is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance;
8. *Pedestrian* means a person while not an occupant of any self-propelled vehicle;
9. *Relative* means a person related to *you* by blood, marriage or adoption (including a ward or foster child) who is usually a resident of the same household as *you*;
10. *Replacement services expenses* means with respect to the period of disability of the injured person all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his household;
11. *Work loss* means with respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person.

**PAYMENTS WE WILL MAKE**

The Company will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law, to or for the benefit of the injured person:

(a) 80% of *medical expenses*; which are *medically necessary*, pursuant to the following schedule of maximum charges contained in the Florida Statute § 627.736(5) (a) 2:

  1. For emergency transport and treatment by providers licensed under Florida Statutes, Title 29, chapter 401, 200 percent of medicine.

  2. For emergency services and care provided by a hospital licensed under Florida Statutes, Title 29, chapter 395, 75 percent of the hospital's usual and customary charges.

  3. For emergency services and care as defined by Florida Statutes Title 29 chapter 395.002(9) provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

  4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

  5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

  6. For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B, we may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes Title 31, chapter 440.13 rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

(b) 60% of *work loss*; and

(c) *Replacement services expenses*; and

(d) Death benefits.

The above benefits will be provided for injuries incurred as a result of *bodily injury*, caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle* and sustained by:

  (1) *You* or any *relative* while *occupying* a *motor vehicle* or, while a *pedestrian* through being struck by a *motor vehicle*; or

  (2) Any other person while *occupying* the *insured motor vehicle* or, while a *pedestrian*, through being struck by the *insured motor vehicle*.

**EXCLUSIONS**

Section II - Part I does not apply:

1. To *you* or any *relative* injured while *occupying* any *motor vehicle* owned by *you* and which is not an *insured motor vehicle* under this insurance;

2. To any person while operating the *insured motor vehicle* without *your* express or implied consent;

3. To any person, if such person's conduct contributed to his *bodily injury* under any of the following circumstances:

  (i) Causing *bodily injury* to himself intentionally;

  (ii) While committing a felony;

4. To *you* or any dependent *relative* for *work loss* if an entry in the schedule or declarations indicates such coverage does not apply;

5. To any *pedestrian*, other than *you* or any *relative*, not a legal resident of the State of Florida;

6. To any person, other than *you*, if such person is the *owner* of a *motor vehicle* with respect to which security is required under the Florida Motor Vehicle No-Fault law, as amended;

7. To any person, other than *you* or any *relative*, who is entitled to personal injury protection benefits from the *owner* or *owners* of a *motor vehicle* which is not an *insured motor vehicle* under this insurance or from the *owner's* insurer; or

8. To any person who sustains *bodily injury* while *occupying* a *motor vehicle* located for use as a residence or premises.

## LIMIT OF LIABILITY; APPLICATION OF DEDUCTIBLE; OTHER INSURANCE

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law, as amended, from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains *bodily injury* as the result of any one accident shall be $10,000; provided that payment for death benefits included in the foregoing shall be equal to the lesser of $5,000 or the remainder of unused personal injury protection benefits per individual.

After the deductible is met, each *insured* is eligible to receive up to $10,000 in total benefits described. The amount of any deductible stated in the declarations shall be deducted from all expenses or losses as described in FL Stat. § 627.736 with respect to all *medical expenses*, *replacement services expenses* and *work loss* incurred by or on behalf of each person to whom the deductible applies and who sustains *bodily injury* as the result of any one accident. Such deductible will not apply to the death benefit.

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workmen's compensation laws of any state or the federal government.

If benefits have been received under the Florida Motor Vehicle No-Fault Law, as amended, from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

## POLICY PERIOD - TERRITORY

The insurance under this Section applies only to accidents which occur during the policy period:

    (a) In the State of Florida;

    (b) As respects *you* or a *relative*, while *occupying* the *insured motor vehicle* outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

    (c) As respects *pedestrians* injured when struck by the *insured motor vehicle* in the State of Florida, if they are not the *owner* of a *motor vehicle* for which coverage is required to be maintained under the Florida No-Fault Law.

## CONDITIONS

1.  **NOTICE**

    In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2.  **ACTION AGAINST THE COMPANY**

    No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance, and in accordance with, and subject to the terms, conditions, and exclusions of, the Florida Motor Vehicle No-Fault Law, as amended.

3.  **PROOF OF CLAIM; MEDICAL REPORTS AND EXAMINATIONS; PAYMENT OF CLAIM WITHHELD**

    As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examination, we will not be liable for subsequent personal injury protection benefits.

    Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

    If requested by us an *insured* , or any other person or organization making a claim or seeking payment, must submit to examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require.

    This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO. If requested by us an *insured* , or any other person or organization making a claim or seeking payment, if the person unreasonably refuses to submit to an EUO, we will not be liable for personal injury protection benefits.

4.  REIMBURSEMENT AND SUBROGATION

In the event of payment to or for the benefits of any injured person under this insurance:

(a)  The Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

(b)  The Company providing personal injury protection benefits on a private passenger motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the *owner* or insurer of the *owner* of a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while *occupying*, or while a *pedestrian* through being struck by, such commercial motor vehicle.

5.  SPECIAL PROVISION FOR RENTED OR LEASED VEHICLES

Notwithstanding any provision of this coverage to the contrary, if a person is injured while *occupying*, or through being struck by, a *motor vehicle* rented or leased under a rental or lease agreement, within the state of Florida, which does not specify otherwise in at least 10 point type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary. Personal injury protection coverage offered under this policy will not apply to a vehicle rented, operated, used, or leased outside the state of Florida.

## PART II - MODIFICATION OF POLICY COVERAGES

Any Automobile Medical Payments insurance, any Uninsured Motorists coverage or any excess Underinsured Motorists coverage afforded by the policy shall be excess over any Personal Injury Protection benefits paid or available for payment or which would be available but for the application of a deductible.

Regardless of whether the full amount of Personal Injury Protection benefits have been exhausted, any Medical Payments insurance afforded by this policy shall pay the portion of any claim for Personal Injury Protection *medical expenses* which are otherwise covered but not available for payment due to the limitation of 80% of *medical expenses* contained in Part I but shall not be payable for the amount of the deductible selected.

## PART III - PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law, as amended, providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the named insured pursuant to the Florida Motor Vehicle No-Fault Law, as amended, with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations, the insured shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

## PART IV - AUTOMOBILE MEDICAL PAYMENTS COVERAGE
**(Automobile Medical Payments coverage applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)**

### DEFINITIONS

The definitions of the terms *insured* and *you* under Section I apply to Section II - Part IV also. The definitions under Section II - Part I also apply to Section II - Part IV.

*Usual and customary medical charges* as used in this Part means charges that are otherwise covered under Section II, Part I of the policy.

*Medically necessary* as used in this Part means all services which would be covered under Section II, Part I of the policy.

### PAYMENTS WE WILL MAKE

Under Automobile Medical Payments coverage, the Company will pay the *usual and customary charges* for *bodily injury*, caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle* and sustained by:

(1)  *You* or any *relative* while *occupying* a *motor vehicle* or, while a *pedestrian* through being struck by a *motor vehicle*; or

(2)  Any other occupants of the *insured motor vehicle* injured in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

In addition, we will pay, subject to the coverage limit:

(a)  The portion of any claim for Personal Injury Protection medical expense benefits otherwise covered but not payable due to the coinsurance provision of the Personal Injury Protection provision. This is the 20% of *medical expenses* not covered in Part I - Payments We Will Make, item (a);

(b) *Usual and customary charges* incurred for *medically necessary* services that exceed the Personal Injury Protection medical expense coverage paid and when Personal Injury Protection coverage is exhausted; and

(c) *Usual and customary charges* incurred by *you* or any *relative* for *medically necessary* services that result from injuries received while *occupying* a *motor vehicle* or as a *pedestrian* in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

## EXCLUSIONS

Automobile Medical Payments coverage does not apply:

1. To *you* or any *relative* injured while *occupying* any *motor vehicle* owned by *you* or a *relative* and which is not an *insured motor vehicle* under this insurance;

2. To any person while operating the *insured motor vehicle* without *your* express or implied consent;

3. To any person, if such person's conduct contributed to his *bodily injury* under any of the following circumstances:
   (i) Causing *bodily injury* to himself intentionally;
   (ii) While committing a felony;

4. To any *pedestrian*, other than *you* or any *relative*; or

5. To any person, other than *you*, if such person is the *owner* of a *motor vehicle* with respect to which security is required under the Florida Motor Vehicle No-Fault Law, as amended;

6. To any person, other than *you* or a *relative*, who is entitled to personal injury protection benefits from the *owner* or *owners* of a *motor vehicle* which is not an *insured motor vehicle* under this insurance or from the *owner's* insurer;

7. To any person who sustains *bodily injury* while *occupying* a *motor vehicle* located for use as a residence or premises;

8. To *bodily injury* sustained by *you* or a *relative* that results from war of any kind;

9. To *bodily injury* sustained by *you* or a *relative* that results from exposure to fungi;

10. To *bodily injury* sustained by *you* or a *relative* that results from:
    (i) Nuclear reaction;
    (ii) Radiation or radioactive contamination from any source;
    (iii) The intentional or accidental detonation of, or release of radiation from any nuclear or radioactive device;

11. To *bodily injury* sustained by *you* or a *relative* while *occupying* a *motor vehicle*, or while a *pedestrian* through being struck by a *motor vehicle* while being employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles. However, this exclusion does not apply to *you* or a *relative*, or an agent or employee of *you* or a *relative*, when using the *insured motor vehicle*.

12. To *bodily injury* sustained by *you* or a *relative* caused by the *insured* in participation and/or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

## LIMITS OF LIABILITY

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of Automobile Medical Payments benefits available from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains *bodily injury* as the result of any one accident is the amount listed in the declarations page.

## OTHER INSURANCE

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workmen's compensation or other similar laws of any state or the federal government.

If benefits have been received under any similar coverage from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim. This coverage will coordinate with any applicable Personal Injury Protection benefits but will not duplicate any benefits available for payment. The coverage of the occupied vehicle is primary.

Any Uninsured Motorist Coverage or any excess Underinsured Motorist Coverage afforded by this policy shall be excess over any Automobile Medical Payments benefits paid or available for payment or which would be available but for the application of a deductible; and subject to the terms and conditions of the Uninsured/Underinsured Motorist coverage.

## POLICY PERIOD - TERRITORY

The insurance under this Part applies only to accidents which occur during the policy period:

(a) In the State of Florida; and

(b) We will cover *you* or any *relative* for injuries incurred while *occupying a motor vehicle* or as a *pedestrian* in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada. This coverage is excess over any other valid and collectible insurance provided with respect to the occupied *motor vehicle*.

## CONDITIONS

**1.  NOTICE**

In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

**2.  PROOF OF CLAIM; MEDICAL REPORTS AND EXAMINATIONS; PAYMENT OF CLAIM WITHHELD**

As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the *bodily injury* and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examination, we will not be liable for subsequent Automobile Medical Payment benefits.

Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

We also have the right to determine if incurred charges and treatment are reasonable, *medically necessary* and causally related to a *bodily injury* sustained in an accident. This determination may be made by use of utilization review, peer reviews, medical bill reviews or medical examination. We will also have the right to determine if incurred charges are *usual and customary charges* and if treatment is *medically necessary.*

If requested by us an *insured* , or any other person or organization making a claim or seeking payment, must submit to examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require.

This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO. If requested by us an *insured*, or any other person or organization making a claim or seeking payment, if the person unreasonably refuses to submit to an EUO, we will not be liable for medical payments benefits.

**3.  ACTION AGAINST THE COMPANY**

No action shall lie against us:
(a) Unless the insured has fully complied with all the policy's terms and conditions; and
(b) Until 30 days after the required notice of accident and reasonable proof of claim has been filed with us; and
(c) Unless we receive written notice of the intent to initiate litigation and within 30 days after receipt of such notice we do not:
  (i)  Pay the claim; or
  (ii) Mail to the person filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice.

Payment or our written statement of agreement to pay for treatment shall be treated as being made on the date a draft, or other valid instrument that is equivalent payment, or the written statement of agreement to pay, is placed in the United States mail properly addressed posted envelope or if not so posted, on the date of delivery.

The written notice of intent to initiate litigation must state that it is a demand letter for Automobile Medical Payments coverage and contain the following information:

(a) The name of the insured for whom benefits are being sought including a copy of the assignment giving rights to the claimant if the claimant is not the insured;
(b) The claim number and or policy number upon which the claim was originally submitted; and
(c) To the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and each exact amount, the date of treatment, service or accommodation and the type of benefits claimed to be due. A health insurance claim form (CMS-1500) or UB 92 form or any other standard form approved by the Department of Financial Services, may be used as the itemized statement.

The written notice must be delivered to us by United States Certified or Registered mail, Return Receipt Requested, at the address we have filed with and that is made available by the office of the Florida Chief Financial Officer on its internet website.

4. SUBROGATION

In the event of payment to or for the benefits of any injured person under this insurance the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

When an injured person has been paid by us and also recovers from another, the amount recovered will be held by the injured person in trust for us and reimbursed to us to the extent of our payment. If we are not reimbursed, we may pursue recovery of that amount directly against the injured person.

## DEFINITIONS

The definitions of the terms *auto business, farm auto, non-owned auto, private passenger auto, relative, temporary substitute auto, utility auto, you, your,* and *war* under Section I apply to Section III also. Under this Section, the following special definitions apply:

2. *Betterment* is improvement of the auto or property to a value greater than its pre-loss condition.

4. *Comprehensive* means *loss* caused other than by *collision* and includes the following causes:

    (a) Missiles;
    (b) Falling objects;
    (c) Fire;
    (d) Lightning;
    (e) Theft;
    (f) Larceny;
    (g) Explosion;
    (h) Earthquake;
    (i) Windstorm;
    (j) Hail;
    (k) Water;
    (l) Flood;
    (m) Malicious mischief;
    (n) Vandalism;
    (o) Riot;
    (p) Civil commotion; or
    (q) Colliding with a bird or animal.

5. *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:

    (a) Are permanently installed or attached; or
    (b) Alter the appearance or performance of a vehicle.

    This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the *owned auto* or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

6. *Depreciation* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.:

7. *Insured* means:

    (a) Regarding the *owned auto*:
        (i) *You* and *your relatives;*
        (ii) A person or organization maintaining, using or having custody of the auto with *your* permission, if his use is within the extent of that permission.
    (b) Regarding a *non-owned auto, you* and *your relatives,* when driving the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the extent of that permission.

8. ███████████████████████████████████████████
   ███████████████████████████████████████████
   (b) Other property insured under this section.
9. ████████████████
   ████████████████████████████████████████████████████████████████████████████████████
   ███████████
   (b) A *private passenger, farm* or *utility auto* or a *trailer*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more, if
      (i)  It replaces an *owned auto* as described in (a) above, or
      (ii) We insure all *private passenger, farm,* and *utility autos* owned by *you* on the date of the acquisition and *you* ask us to add it to the policy no more than 30 days later;
   (c) A *temporary substitute auto.*
10. *Trailer* means a trailer designed to be towed by a *private passenger auto* and not used as a home, residence, office, store, display or passenger trailer. *Trailer* does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

███████████████████

## Comprehensive (Excluding Collision)

1. We will pay for each *loss*, less the applicable deductible, caused other than by *collision* to the *owned* or *non-owned auto*. This includes glass breakage.
   No deductible will apply to *loss* to windshield glass.
   At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision coverage, if included in the policy.
2. We will pay, up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to:
   (a) Fire;
   (b) Lightning;
   (c) Flood;
   (d) Falling objects;
   (e) Earthquake;
   (f) Explosion; or
   (g) Theft of the entire automobile.
   The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto.*
3. *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

████████████
████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████

2. We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*. The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto.*
3. *Losses* involving one *owned auto*, arising out of a single occurrence shall be subject to no more than one deductible.
4. If more than one *owned auto* or *non-owned auto* is involved in a *collision loss*, any deductible will apply separately to each *owned auto* or *non-owned auto.*

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

1. We will reimburse the *insured* for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the *loss*.
   Reimbursement will not exceed $30.00 per day nor $900.00 per *loss*.
2. We will pay general average and salvage charges for which the *insured* becomes legally liable when the auto is being transported.

## EXCLUSIONS

**Section III Does Not Apply:**

1. To an auto used to carry passengers or goods for hire is not covered. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.
2. To *loss* due to *war.*

3. To *loss* to a *non-owned auto* when used by the *insured* in the *auto business*.

4. To *loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

5. To road damage to tires.

6. To *loss* due to radioactivity.

7. To *loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound.

8. To *loss* to any radar detector.

9. To any vehicle or *trailer* when used for business or commercial purposes other than a *farm auto*.

10. To *loss* for *custom parts or equipment* unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

11. To any liability assumed under any contract or agreement.

12. To any *loss* resulting from:
    (a) The acquisition of a stolen vehicle;
    (b) Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle; or
    (c) Any confiscation, seizure or impoundment of a vehicle by governmental authorities.
    (d) The sale of an *owned auto*.

13. To the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a *relative* or a permissive user of the vehicle in illegal activity.

14. To any *loss* caused by the *insured* in participation and/or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

2. Will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price;

3. To personal effects arising out of one occurrence is $200;

4. To a *trailer* not owned by *you* is $500;

5. For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.
   *Actual cash value* or *betterment* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

6. If this policy covers two or more autos or *trailers* any deductibles will apply separately to each.

**OTHER INSURANCE**

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro rata share of the total coverage available. Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

**CONDITIONS**

The following conditions apply only to the Physical Damage coverages:

1. NOTICE
   As soon as possible after a *loss*, written notice must be given us or our authorized agent stating:
   (a) The identity of the *insured*;
   (b) A description of the auto or *trailer*;
   (c) The time, place and details of the *loss*; and
   (d) The names and addresses of any witnesses.
   In case of theft, the *insured* must promptly notify the police.

2. ASSISTANCE AND COOPERATION OF THE *INSURED*

The *insured* will cooperate and assist us, if requested:
   (a) In the investigation of the *loss;*
   (b) In making settlements;
   (c) In the conduct of suits;
   (d) In enforcing any right of subrogation against any legally responsible person or organization;
   (e) At trials and hearings;
   (f) In securing and giving evidence; and
   (g) By obtaining the attendance of witnesses.

3. ACTION AGAINST US

Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of *loss* is filed and the amount of *loss* is determined.

If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.

4. *INSURED'S* DUTIES IN EVENT OF LOSS

In the event of *loss* the *insured* will:
   (a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
   (b) File with us, within 91 days after *loss*, his sworn proof of *loss* including all information we may reasonably require.
   (c) At our request, the *insured* will exhibit the damaged property and submit to examination under oath.

5. ██████████

███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████

6. PAYMENT OF *LOSS*

We may at our option:
   (a) Pay for the *loss;* or
   (b) Repair or replace the damaged or stolen property.
   At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

7. NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

8. SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery, to the extent of our payment against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

9. ASSIGNMENT

With respect to Section III, Physical Damage Coverages, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

## SECTION IV - UNINSURED MOTORIST COVERAGE
**Protection For *You* And *Your* Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorist**

UNLESS AMENDED WITH THE STACKED OR NON-STACKED UNINSURED/UNDERINSURED AMENDMENT, YOU ELECTED NOT TO PURCHASE CERTAIN VALUABLE COVERAGE, WHICH WOULD HAVE PROTECTED YOU AND YOUR FAMILY WHEN INVOLVED, IN A COVERED LOSS WITH AN UNINSURED/ UNDERINSURED MOTORIST.

**THIS POLICY DOES NOT PROVIDE UNINSURED/UNDERINSURED MOTORISTS BENEFITS.**

**Uninsured/underinsured motorist benefits are designed to provide protection when *you* or *your* family are involved in an accident with an uninsured/underinsured motorist.**

## SECTION V- GENERAL CONDITIONS
### These conditions Apply To all coverages In This Policy

1. **TERRITORY - POLICY PERIOD**

   This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories and possessions, or Canada and while an *owned auto* is being transported between ports thereof.

   Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at *your* address stated in the declarations.

2. **PREMIUM**

   When *you* dispose of, acquire ownership of, or replace a *private passenger, farm* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

3. **CHANGES**

   The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

   We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

   The premium for each auto is based on the information we have in *your* file. *You* agree:

   (a) That we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

   (b) That *you* will cooperate with us in determining if this information is correct and complete.

   (c) That *you* will notify us of any changes in this information.

   Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

4. **ASSIGNMENT**

   Assignment of interest under this policy will not bind us without our consent.

   If *you* die, this policy will cover:

   (a) *Your* surviving spouse;

   (b) The executor or administrator of *your* estate, but only while acting within the scope of his duties;

   (c) Any person having proper temporary custody of the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate; and

   (d) Under the Medical Payments coverage, a person who was a *relative* at the time of *your* death, if a premium is shown on the Policy Declarations for Medical Payments.

5. **CANCELLATION BY THE *INSURED***

   *You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

   However, *you* may not cancel during the first two months immediately following *your* policy's effective date except:

   (a) Upon total destruction of all of the *owned autos*;

   (b) Upon transfer of ownership of all of the *owned autos*;

   (c) If *you* obtained a replacement policy covering an *owned auto* elsewhere; or

   (d) When we notify *you* that the premium charged must be increased to comply with our rate filings or the applicable laws of Florida, *you* have the following options:

   1. Upon receipt of *your* bill *you* may pay the difference in premium and keep the policy as it stands with the corrected premium; or

   2. *You* may cancel this policy within 10 days from the receipt of our notice and receive a refund of any unearned premium; or

   3. *Your* failure to respond timely or pay the additional premium charged will result in the cancellation of *your* policy when all paid premiums are exhausted.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals.

6. **CANCELLATION BY US**

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective. This notice will be mailed by United States Post Office certificate of mailing.

We will mail this notice:

(a) 10 days in advance if the proposed cancellation is for nonpayment of premium or any of its installments when due;

(b) 45 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals.

Payment or tender of unearned premium is not a condition of cancellation.

7. **CANCELLATION BY US IS LIMITED**

After this policy has been in effect for 60 days or, if the policy is a renewal, effective immediately, we will not cancel unless:

(a) *You* do not pay the premiums for this policy or any installment when due to us or our agent; or

(b) Any *insured* has had his driver's license or motor vehicle registration under suspension or revocation; either:

    (i) During the current policy period; or

    (ii) During the preceding 180 days if this is a new policy; or

(c) There has been fraud or material misrepresentation under the policy in *your* application or in making a claim.

We will not cancel a new policy during the first 60 days immediately following the effective date of the policy for nonpayment of premium unless the reason for the cancellation is the issuance of a payment for the premium that is dishonored for any reason. If the initial payment on the policy is dishonored, we will not declare the policy void without providing *you* with notice of *your* right to cure the nonpayment as required by Florida law.

Nothing in this section will require us to renew this policy.

8. **RENEWAL**

We guarantee to renew this policy for *private passenger, farm* or *utility autos* as long as all the following conditions are met:

1. *You* (or *your* spouse) are at least 50 years old and *you* (or *your* spouse) are a principal operator of an auto insured under this policy. There are no principal or occasional operators under the age of 25.

2. *You* and all operators of autos insured under this policy must be physically and mentally able to safely operate an auto. We may require an operator to provide certification of this from a doctor acceptable to us.

3. The autos insured are principally located in a state which has approved the use of this condition, and that state continues to approve the use on this condition.

4. The representations provided in *your* application for this policy were true.

If these requirements are not met, the guaranteed renewal condition does not apply. We reserve the right to terminate this guaranty in any state in which conditions require that we discontinue writing new and renewal policies for all our *insureds*. Should we choose not to renew, we will mail to *you*, at the address shown in this policy, written notice of our refusal to renew at least 45 days prior to the expiration date. This notice will be mailed by United States Post Office certificate of mailing. The mailing or delivery of this notice will be sufficient proof of notice.

If *you*:

(1) do not pay the premium as required to renew this policy; or

(2) have informed us or our agent that *you* wish the policy cancelled or not renewed; or

(3) do not accept our offer to renew;

it will be construed to mean that *you* have refused our renewal offer and the policy will expire without notice.

If this policy has been in effect for 5 years or more we will not refuse to renew solely because an *insured* was involved in a single traffic accident.

9. **NON-RENEWAL**

We agree that we will not refuse to renew or continue this policy unless a written notice of our refusal to renew or continue is mailed to *you*, at the address shown in the policy, at least 45 days prior to the expiration notice. This notice will be mailed by United States Post Office certificate of mailing. The mailing or delivery of this notice will be sufficient proof of notice.

10. MEDIATION OF CLAIMS

In the event of a claim for *bodily injury* amounting to $10,000 or less, or any property damage claim, either party may demand mediation of the claim, provided that suit has not yet been filed. Only one mediation may be demanded for each claim, unless both parties agree to more than one mediation. Mediation is not binding on either party.

A request for mediation shall be filed with the Department of Financial Services on a form approved by the Department. The request for mediation shall state the reason for the request and the issues in dispute which are to be mediated. The Department of Financial Services will appoint the mediator to conduct the mediation. Each party may once reject the mediator selected by the Department, either originally or after the opposing side has exercised its option to reject a mediator. Each party participating in the mediation must have the authority to make a binding decision. All parties must mediate in good faith.

The cost of the mediation, as set by the Department of Financial Services is shared equally by the parties. Costs incurred by a party in preparing for or attending the mediation are paid by the party incurring that cost.

11. OTHER INSURANCE

If other insurance is obtained on *your owned auto*, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

12. ACTION AGAINST US

Persons other than the *insured* covered by this policy, may not name us as a defendant prior to first obtaining a judgment against an *insured*.

13. DIVIDEND PROVISION

*You* are entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

14. DECLARATIONS

By accepting this policy, *you* agree that:

(a) The statements in *your* application and in the declarations are *your* agreements and representations;
(b) This policy is issued in reliance upon the truth of these representations; and
(c) This policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

15. FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

1. At the time application is made; or
2. At any time during the policy period; or
3. In connection with the presentation or settlement of a claim.

16. EXAMINATION UNDER OATH (EUO)

The *insured*, or any other person or organization seeking coverage under this policy must submit to examination under oath by any person named by us when, where and as often as we may reasonably require. This provision includes providing a copy of any documents, forms, records, or materials requested to be provided as part of the EUO request whether the request is made before, during or after the EUO.

17. TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Florida are amended to conform to those statutes.

18. CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Florida.

## SECTION VI- AMENDMENTS AND ENDORSEMENTS

1. SPECIAL ENDORSEMENT UNITED STATES GOVERNMENT EMPLOYEES

A. Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

1. Motor vehicles owned or leased by the United States Government or any of its agencies, or
2. Rented motor vehicle used for United States Government business,

when such use is with the permission of the United States Government. Subject to the limits describe in paragraph B. below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

B. The following limits apply to this coverage:

1. A $100 deductible applies to each occurrence.
2. For vehicles described in A.1. above, our liability shall not exceed the lesser of the following:

(a) The *actual cash value* of the property at the time of the occurrence; or
(b) The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
(c) Two months basic pay of the *Insured*; or
(d) The limit of Property Damage liability coverage stated in the declarations.

3. For vehicles described in A.2. above, our liability shall not exceed the lesser of the following:

(a) The *actual cash value* of the property at the time of the occurrence; or
(b) The cost to repair or replace the property, or any of it parts with other of like kind and quality; or
(c) The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.


W. C. E. Robinson
Secretary

O. M. Nicely
President

Case Number: CACE-16-016030 Division: 25
Filing # 45874387 E-Filed 08/30/2016 03:35:58 PM

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

KERRY ROTH, on behalf of herself and all
others similarly situated,

        Plaintiff,

vs.

GEICO GENERAL INSURANCE
COMPANY, GOVERNMENT EMPLOYEE
INSURANCE COMPANY; GEICO INDEMNITY COMPANY;
GEICO CASUALTY COMPANY; GEICO ADVANTAGE
INSURANCE COMPANY; GEICO CHOICE INSURANCE
COMPANY AND GEICO SECURE INSURANCE COMPANY

        Defendants.

CASE NO:

CLASS REPRESENTATION

_____/

## REQUEST FOR PRODUCTION

COMES NOW, the Plaintiff, KERRY ROTH, on behalf of herself and all others

similarly situated, and pursuant to Rule 1.350 of the Florida Rules of Civil

Procedure, and requests that the Defendants, GEICO General Insurance

CGOVERNMENT EMPLOYEE INSURANCE COMPANY; GEICO INDEMNITY COMPANY;

GEICO CASUALTY COMPANY; GEICO ADVANTAGE INSURANCE COMPANY; GEICO

CHOICE INSURANCE COMPANY and GEICO SECURE INSURANCE COMPANY, to

produce and permit the undersigned to inspect and copy the following items at the

offices of the undersigned counsel on or before thirty (30) days from the date of

service:

    1.    Produce a copy of all form communications to policy insureds relating to

total loss claims for leased vehicles insured under Florida policies between January 1, 2011

and the present, that reference sales tax.

2.      Produce all documents evidencing training to claim representatives and/or sales representatives during the period of January 1, 2011 through the present relating to coverage or Actual Cash Value Sales Tax or state and local regulatory fees on leased vehicles total loss covered claims.

3.      All documents relating to or evidencing the consideration of, and/or implementation of, the decision of Defendants to pay or not pay Actual Case Value Sales Tax or state and local regulatory fees on first party total loss covered claims for leased vehicles which are covered by Defendants under Florida policies.  Responsive documents should include all memoranda and communications relating to such decision and all communications to claim representatives and sale representative relating to payment of sales tax and state and local regulatory fees for total loss leased vehicles.

4.      A copy of each form of automobile insurance policy issued by Defendants in Florida, since January 1, 2011, including a copy of each form of any addendum, amendment or endorsement to the forms, that relate in any way, to the payment or non-payment of Actual Cash Value Sales Tax or state and local regulatory fees on leased vehicle total loss covered claims.

5.      Produce all documents evidencing or supporting any assertion that the Plaintiff's policy does not require that the Defendants pay sales tax or state and local regulatory fees in the case of a total loss of an insured leased vehicle.

6.      Produce each and every document evidencing or relating to each and every formal or informal complaint or inquiry from insureds  who made a first party covered total loss claim on a leased Florida vehicle, and relating to the Defendants' payment of or refusal

to pay sales tax or state and local regulatory fees.

7.    Produce all documents evidencing any communication at any time between any Defendant and the Florida Office of Insurance Regulation addressing whether the Defendants are obligated to pay sales tax or state and local regulatory fees to Florida insureds for the total loss of an insured leased vehicle.

8.    Produce all documents evidencing or referencing the policies or procedure of Defendants relating to the payment of sales tax on first party total loss claims for Florida insureds for the total loss of a leased vehicle under form A-70 FL (03-11).

9.    Produce all documents evidencing or referencing the policies or procedure of Defendants relating to the payment of sales tax on first party total loss claims for Florida insureds for the total loss of an owned or financed vehicle.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by process server on the Defendants.

Christopher J. Lynch, P.A.
Attorney for Plaintiff
6915 Red Road,  Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Facsimile: (305) 443-6204
Clynch@hunterlynchlaw.com
Lmartinez@hunterlynchaw.com

By:   /s/ Christopher J. Lynch
        CHRISTOPHER J. LYNCH
        FBN 331041

Edmund A. Normand, Esq.
FBN: 0865590
Normand Law PLLC
4551 New Broad St.
Orlando, Fl 32814
Ed@EdNormand.com

By: /s/ Edmund A. Normand
         EDMUND A. NORMAND

Case Number: CACE-16-016030 Division: 25

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

KERRY ROTH, on behalf of herself and all
others similarly situated,

CASE NO:

CLASS REPRESENTATION

      Plaintiff,

vs.

GEICO GENERAL INSURANCE
COMPANY, GOVERNMENT EMPLOYEE
INSURANCE COMPANY; GEICO INDEMNITY COMPANY;
GEICO CASUALTY COMPANY; GEICO ADVANTAGE
INSURANCE COMPANY; GEICO CHOICE INSURANCE
COMPANY AND GEICO SECURE INSURANCE COMPANY

      Defendants.

_____ /

### PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANTS

COMES NOW, the Plaintiff, KERRY ROTH, on behalf of herself and all others

similarly situated, and hereby notifies the Court that they have propounded the

attached Interrogatories to the Defendants, GEICO General Insurance Company

GOVERNMENT EMPLOYEE INSURANCE COMPANY; GEICO INDEMNITY COMPANY;

GEICO CASUALTY COMPANY; GEICO ADVANTAGE  INSURANCE COMPANY; GEICO

CHOICE INSURANCE COMPANY AND GEICO SECURE INSURANCE COMPANY to be

answered in accordance with Rule 1.340 of the Florida Rules of Civil Procedure.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served with the complaint by process server on the Defendant.

Christopher J. Lynch, P.A.
Attorney for Plaintiff
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Facsimile: (305) 443-6204
Clynch@hunterlynchlaw.com
Lmartinez@hunterlynchaw.com

By:   /s/ Christopher J. Lynch
        CHRISTOPHER J. LYNCH
        FBN 331041

- and-

Edmund A. Normand, Esq.
FBN: 0865590
Normand Law PLLC
4551 New Broad St.
Orlando, Fl 32814
Ed@EdNormand.com

By: /s/ Edmund A. Normand
        EDMUND A. NORMAND

Filing # 46655972 E-Filed 09/20/2016 10:43:47 AM

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

KERRY ROTH, on behalf of herself and all
others similarly situated,

CASE NO: 16-016030

CLASS REPRESENTATION

       Plaintiff,

vs.

GEICO GENERAL INSURANCE
COMPANY; GOVERNMENT EMPLOYEE
INSURANCE COMPANY; GEICO INDEMNITY COMPANY;
GEICO CASUALTY COMPANY; GEICO ADVANTAGE
INSURANCE COMPANY; GEICO CHOICE INSURANCE
COMPANY AND GEICO SECURE INSURANCE COMPANY,

       Defendants.

_____/

## SUMMONS

TO:   GEICO Advantage Insurance Company
      By Serving Registered Agent
      Chief Financial Officer
      200 E. Gaines Street
      Tallahassee, FL 32399

## IMPORTANT

     A lawsuit has been filed against you. You have twenty (20) calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

     If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

CHRISTOPHER J. LYNCH, P.A.
HUNTER & LYNCH
6915 SW 57 Avenue, Suite 208
Coral Gables, FL 33143
(305) 443-6200

THE STATE OF FLORIDA:

TO:        Executive Express
           4460 NW 73rd Avenue
           Miami, FL 33166

You are commanded to serve this Summons and Complaint with First Set of Interrogatories and Amended Request For production in this lawsuit on the above named Defendant.        SEP 27 2016

As Clerk of Said Court

By _____
      as Deputy Clerk

HOWARD C. FORMAN

Filing # 46655972 E-Filed 09/20/2016 10:43:47 AM

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

KERRY ROTH, on behalf of herself and all
others similarly situated,

                                CASE NO: 16-016030

                                CLASS REPRESENTATION

      Plaintiff,

vs.

GEICO GENERAL INSURANCE
COMPANY; GOVERNMENT EMPLOYEE
INSURANCE COMPANY; GEICO INDEMNITY COMPANY;
GEICO CASUALTY COMPANY; GEICO ADVANTAGE
INSURANCE COMPANY; GEICO CHOICE INSURANCE
COMPANY AND GEICO SECURE INSURANCE COMPANY,

      Defendants.
_____/

## SUMMONS

TO:   GEICO Casualty Company
       By Serving Registered Agent
       Chief Financial Officer
       200 E. Gaines Street
       Tallahassee, FL 32399

### IMPORTANT

     A lawsuit has been filed against you. You have twenty (20) calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

     If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

CHRISTOPHER J. LYNCH, P.A.
HUNTER & LYNCH
6915 SW 57 Avenue, Suite 208
Coral Gables, FL 33143
(305) 443-6200

THE STATE OF FLORIDA:

TO:      Executive Express
         4460 NW 73rd Avenue
         Miami, FL 33166

You are commanded to serve this Summons and Complaint with First Set of Interrogatories and Amended Request For production in this lawsuit on the above named Defendant.      SEP 27 2016

As Clerk of Said Court

By _____

         as Deputy

HOWARD C. FORMAN

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

KERRY ROTH, on behalf of herself and all
others similarly situated,

CASE NO: 16-016030

CLASS REPRESENTATION

      Plaintiff,

vs.

GEICO GENERAL INSURANCE
COMPANY; GOVERNMENT EMPLOYEE
INSURANCE COMPANY; GEICO INDEMNITY COMPANY;
GEICO CASUALTY COMPANY; GEICO ADVANTAGE
INSURANCE COMPANY; GEICO CHOICE INSURANCE
COMPANY AND GEICO SECURE INSURANCE COMPANY,

      Defendants.

_____/

## SUMMONS

TO:   GEICO Choice Insurance Company
     By Serving Registered Agent
     Chief Financial Officer
     200 E. Gaines Street
     Tallahassee, FL 32399

## IMPORTANT

A lawsuit has been filed against you. You have twenty (20) calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

CHRISTOPHER J. LYNCH, P.A.
HUNTER & LYNCH
6915 SW 57 Avenue, Suite 208
Coral Gables, FL 33143
(305) 443-6200

THE STATE OF FLORIDA:

TO:        Executive Express
           4460 NW 73rd Avenue
           Miami, FL 33166

You are commanded to serve this Summons and Complaint with First Set of Interrogatories and Amended Request For production in this lawsuit on the above named Defendant.        SEP 27 2016

As Clerk of Said Court

By _____
                 as Deputy

HOWARD C. FORMAN

Filing # 46655972 E-Filed 09/20/2016 10:43:47 AM

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

KERRY ROTH, on behalf of herself and all
others similarly situated,

CASE NO: 16-016030

CLASS REPRESENTATION

      Plaintiff,

vs.

GEICO GENERAL INSURANCE
COMPANY; GOVERNMENT EMPLOYEE
INSURANCE COMPANY; GEICO INDEMNITY COMPANY;
GEICO CASUALTY COMPANY; GEICO ADVANTAGE
INSURANCE COMPANY; GEICO CHOICE INSURANCE
COMPANY AND GEICO SECURE INSURANCE COMPANY,

      Defendants.

                                                /

## SUMMONS

TO:  GEICO General Insurance Co.
      By Serving Registered Agent
      Chief Financial Officer
      200 E. Gaines Street
      Tallahassee, FL 32399

## IMPORTANT

     A lawsuit has been filed against you. You have twenty (20) calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

     If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

CHRISTOPHER J. LYNCH, P.A.
HUNTER & LYNCH
6915 SW 57 Avenue, Suite 208
Coral Gables, FL 33143
(305) 443-6200

THE STATE OF FLORIDA:

TO:        Executive Express
           4460 NW 73rd Avenue
           Miami, FL 33166

       You are commanded to serve this Summons and Complaint with First Set of Interrogatories and Amended Request For production in this lawsuit on the above named Defendant.        SEP 27 2016

                              As Clerk of Said Court

                    By _____
                              as Deputy Clerk

                    HOWARD C. FORMAN

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

KERRY ROTH, on behalf of herself and all
others similarly situated,

CASE NO: 16-016030

CLASS REPRESENTATION

     Plaintiff,

vs.

GEICO GENERAL INSURANCE
COMPANY; GOVERNMENT EMPLOYEE
INSURANCE COMPANY; GEICO INDEMNITY COMPANY;
GEICO CASUALTY COMPANY; GEICO ADVANTAGE
INSURANCE COMPANY; GEICO CHOICE INSURANCE
COMPANY AND GEICO SECURE INSURANCE COMPANY,

     Defendants.
_____/

## SUMMONS

TO:   GEICO Indemnity Company
      By Serving Registered Agent
      Chief Financial Officer
      200 E. Gaines Street
      Tallahassee, FL 32399

### IMPORTANT

A lawsuit has been filed against you. You have twenty (20) calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

CHRISTOPHER J. LYNCH, P.A.
HUNTER & LYNCH
6915 SW 57 Avenue, Suite 208
Coral Gables, FL 33143
(305) 443-6200

THE STATE OF FLORIDA:

TO:        Executive Express
           4460 NW 73rd Avenue
           Miami, FL 33166

        You are commanded to serve this Summons and Complaint with First Set of
Interrogatories and Amended Request For production in this lawsuit on the above
named Defendant.        SEP 27 2016

                              As Clerk of Said Court

                    By _____

                         as Deputy

                    HOWARD C. FORMAN

Filing # 46655972 E-Filed 09/20/2016 10:43:47 AM

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

KERRY ROTH, on behalf of herself and all
others similarly situated,

CASE NO: 16-016030

CLASS REPRESENTATION

      Plaintiff,

vs.

GEICO GENERAL INSURANCE
COMPANY; GOVERNMENT EMPLOYEE
INSURANCE COMPANY; GEICO INDEMNITY COMPANY;
GEICO CASUALTY COMPANY; GEICO ADVANTAGE
INSURANCE COMPANY; GEICO CHOICE INSURANCE
COMPANY AND GEICO SECURE INSURANCE COMPANY,

      Defendants.

_____/

## SUMMONS

TO:   GEICO Secure Insurance Company
      By Serving Registered Agent
      Chief Financial Officer
      200 E. Gaines Street
      Tallahassee, FL 32399

## IMPORTANT

     A lawsuit has been filed against you. You have twenty (20) calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

     If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

CHRISTOPHER J. LYNCH, P.A.
HUNTER & LYNCH
6915 SW 57 Avenue, Suite 208
Coral Gables, FL 33143
(305) 443-6200

THE STATE OF FLORIDA:

TO:        Executive Express
           4460 NW 73rd Avenue
           Miami, FL 33166

You are commanded to serve this Summons and Complaint with First Set of Interrogatories and Amended Request For production in this lawsuit on the above named Defendant.        SEP 27 2016

As Clerk of Said Court

By _____
          as Deputy

HOWARD C. FORMAN

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

KERRY ROTH, on behalf of herself and all
others similarly situated,

        Plaintiff,

vs.

GEICO GENERAL INSURANCE
COMPANY; GOVERNMENT EMPLOYEE
INSURANCE COMPANY; GEICO INDEMNITY COMPANY;
GEICO CASUALTY COMPANY; GEICO ADVANTAGE
INSURANCE COMPANY; GEICO CHOICE INSURANCE
COMPANY AND GEICO SECURE INSURANCE COMPANY,

        Defendants.

_____/

CASE NO: 16-016030

CLASS REPRESENTATION

## SUMMONS

TO:  Government Employ Insurance Company
     By Serving Registered Agent
     Chief Financial Officer
     200 E. Gaines Street
     Tallahassee, FL 32399

## IMPORTANT

A lawsuit has been filed against you. You have twenty (20) calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

CHRISTOPHER J. LYNCH, P.A.
HUNTER & LYNCH
6915 SW 57 Avenue, Suite 208
Coral Gables, FL 33143
(305) 443-6200

THE STATE OF FLORIDA:

TO:        Executive Express
           4460 NW 73rd Avenue
           Miami, FL 33166

    You are commanded to serve this Summons and Complaint with First Set of Interrogatories and Amended Request For production in this lawsuit on the above named Defendant.        SEP 27 2016

                         As Clerk of Said Court

                         By _____

                              as Deputy

                         HOWARD C. FORMAN

IN THE CIRCUIT COUR OF THE 17ᵀᴴ
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

KERRY ROTH, on behalf of herself and all
others similarly situated,

CASE NO: 16-016030

CLASS REPRESENTATION

       Plaintiff,

vs.

GEICO GENERAL INSURANCE
COMPANY; GOVERNMENT EMPLOYEES
INSURANCE COMPANY;
GEICO INDEMNITY COMPANY;
GEICO CASUALTY COMPANY; and
GEICO CORPORATION

       Defendants.

_____/

## PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

The Plaintiff KERRY ROTH, on behalf of herself and all others similarly situated, files

this Class Action Complaint against GEICO GENERAL INSURANCE COMPANY;

GOVERNMENT EMPLOYEES INSURANCE COMPANY; GEICO INDEMNITY COMPANY;

GEICO CASUALTY COMPANY; and GEICO CORPORATION as follows:

### I. NATURE OF THE ACTION

1.    This is a class action lawsuit by Plaintiff who was the named insured under a

GEICO GENERAL INSURANCE COMPANY, (hereinafter also identified as "GEICO

GENERAL"), automobile policy issued for private passenger auto physical damage requiring

payment of "Actual Cash Value" ("ACV"), including sales tax, and state and local regulatory

fees, for covered total loss leased vehicles.

1

2.      The Defendant GEICO GENERAL's standardized policy language, which is also present in the Florida policies issued by GOVERNMENT EMPLOYEES INSURANCE COMPANY; GEICO INDEMNITY COMPANY; and GEICO CASUALTY COMPANY shows that sales tax equal to at least six percent[1] of the cash value of the insured vehicle at the time of loss (the "ACV Sales Tax"), is included in a total loss vehicle coverage, as are state and local regulatory fees.

3.      This lawsuit is brought on behalf of Plaintiff KERRY ROTH and on behalf of similarly situated insureds who have suffered damages due to the Defendants' policy and practice of refusing to pay full ACV Sales Tax and state and local regulatory fees, on insured leased vehicles, in the case of total loss, notwithstanding that, as set forth above, the Defendants' standardized policy language provides coverage for said ACV Sales Tax and fees.

## II. JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Plaintiff's claims since the Plaintiff's and Classes' claims exceed $15,000.00.

5.      Venue is proper in this Court pursuant to §47.051 *Fla. Stat.* since the Defendants have agents or representatives doing business in this county.

## III. THE PARTIES

6.      At all times material hereto, the Plaintiff KERRY ROTH, is and was a person residing in Boca Raton, Florida.

---

[1] Florida's sales tax is 6%.  In addition, some counties impose a local sales tax of up to 1.5% in addition to the 6% state sales tax.

2

7.      At all times material hereto, the Defendant GEICO GENERAL is and was a foreign corporation authorize to transact insurance in the State of Florida, and one of the largest, if not the largest, motor vehicle insurer in Florida. The Defendants GOVERNMENT EMPLOYEES INSURANCE COMPANY; GEICO INDEMNITY COMPANY; and GEICO CASUALTY COMPANY are also foreign corporations authorized to transact insurance in Florida.

8.      All the aforementioned companies are subsidiaries of GEICO CORPORATION which controls all actions of all the subsidiaries relating to the illegal conduct at issue in this case since, as stated above, all subsidiaries use the same policy forms, as well as the same claim adjusting forms, adjusting guidelines and procedures.

## IV. FACTUAL ALLEGATIONS

9.      At all times material hereto, the Plaintiff ROTH was a lessee of a 2015 Audi A3 Sedan, VIN number WAUACGFF7F1092286, financed through VW Credit, Inc.

10.      At all times material hereto, the Plaintiff ROTH insured the 2015 Audi A3 under a Florida Family Automobile Insurance Policy with GEICO GENERAL (a copy of said policy is attached hereto as Exhibit A).

11.      On or about June 18, 2016, the Plaintiff ROTH was involved in an accident while operating the 2015 Audi A3. As a result of said accident, ROTH filed a claim for property damage with GEICO GENERAL, claim number 05590116-0101-012.

12.      Following the filing of said claim, GEICO GENERAL determined that the 2015 Audi A3 was a total loss with an ACV of $23,947.00. GEICO GENERAL then paid the aforementioned sum to the lienholder, VW Credit Inc., minus the GEICO GENERAL policy's deductible of $1,000.00, for a total of $22,947.00.

3

13.     In paying the aforementioned amount, GEICO GENERAL indicated that because the vehicle was leased, no ACV Sales Tax or state or local regulatory fees were owed under the GEICO GENERAL policy.

### V.  THE GEICO GENERAL POLICY

14.     The GEICO GENERAL policy, under Section III, entitled PHYSICAL DAMAGE COVERAGE, (page 14 of Form A-70 FL(03-11), states:

> **LOSSES WE WILL PAY**
>
> \*                    \*                    \*
>
> *Collision*
>
> **1.** We will pay for *collision loss* to the *owned auto* for the amount of each *loss* less the applicable deductible and to the *non-owned auto* for the amount of each *loss* less the applicable deductible when driven by *you* or a *relative*.

15.     The GEICO GENERAL policy, in Section III, under the provision entitled **LIMIT OF LIABILITY,** (page 15 of Form A-70FL (03-11)), states:

> The limit of our liability for *loss* :
>
> 1. Is the *actual cash value* of the property at the time of the *loss.*

16.     Finally, the **DEFINITIONS** provision of the GEICO GENERAL policy (page 13 of form A-70FL (03-11)), states:

> 1. *Actual cash value* is the replacement cost of the auto or property less *depreciation* or *betterment.*

17.     Clearly, the policy language, which is identical to the language contained in the

4

Florida policies issued by GOVERNMENT EMPLOYEES INSURANCE COMPANY; GEICO INDEMNITY COMPANY; and GEICO CASUALTY COMPANY; does not include: (1) any provision excluding sales tax or state and local regulatory fees from ACV; (2) any provision deferring payment of the ACV Sales Tax and state or local regulatory fees for any purpose whatsoever; (3) any provision requiring an insured to lease a replacement vehicle; (4) any provision requiring the insured to first lease a replacement vehicle as a condition precedent to receiving a ACV Sales Tax or state and regulatory fees; and (5) any provision linking the amount of ACV Sales Tax or state and regulatory fees to the lease of a replacement vehicle and the corresponding sales tax or state or regulatory fees on said replacement vehicle.

## VI. CLASS ALLEGATIONS

18.    The Plaintiff brings this action seeking representation of two classes pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and 1.220(b)(3).

19.    Plaintiff's claims are typical to those of all class members because members of the class are similarly affected by the Defendant's failure to pay ACV Sales Tax and state and local regulatory fees upon the total loss of insured leased vehicles.  The material policy terms for each class member are identical to the terms of the Plaintiff's policy.

20.    Plaintiff's interests are not antagonistic to those of other class members nor is the Plaintiff subject to any unique defenses.

21.    The claim of the representative Plaintiff ROTH, raises questions of law and fact that are common to all members of the classes, within the meaning of Florida Rule of Civil Procedure 1.220.  Said common questions include, but are not limited to, the following: (a) whether under the Defendant's standardized policy language Plaintiff and the class members are owed ACV Sales Tax and state and local regulatory fees upon the total loss of an insured

5

leased vehicle; and (b) whether the Defendants have breached their insurance contracts with the Plaintiff and the class members by failing to pay ACV Sales Tax and state and local regulatory fees upon the total loss of an insured leased vehicle.

22.    The claims of the Plaintiff are typical of the claims of all other members of the classes because all such claims arise from the alleged improper failure of the Defendant to pay ACV Sales Tax and state and local regulatory fees upon the total loss of insured leased vehicles.

23.    The Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the classes.

24.    The Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions.

25.    Defendants have acted and refused to act on grounds generally applicable to the class, thereby making appropriate final declaratory relief with respect to the class as a whole pursuant to Rule 1.220(b)(2).

26.    This action is properly maintained as class action pursuant to Federal Rule of Civil Procedure 1.220(b)(3) in that questions of law and fact, common to claims of the Plaintiff and the members of the classes, will predominate over questions of law or fact, affecting only individual members of the classes, such that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

27.    The Plaintiff brings this action pursuant to Rules 1.220(b)(2) and 1.220(b)(3) of the Florida Rules of Civil Procedure as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

<u>CLASS A</u>

6

All insureds, under a policy issued by Geico General Insurance Company in the State of Florida, covering a leased vehicle, who sustained a total loss to said vehicle and who, within the five year time period prior to the date on which this lawsuit was filed till the date of any certification order, received payment from Geico General Insurance Company for said loss, which payment did not include ACV Sales Tax or state and local regulatory fees for the loss of said vehicle.

### CLASS B

All insureds, under policies issued by Geico General Insurance Company; Government Employees Insurance Company; Geico Indemnity Company; and Geico Casualty Company; in the State of Florida, covering a leased vehicle, who sustained a total loss to said vehicle, and who, within the five years time period prior to the date on which this lawsuit was filed to the date of any certification order, received payment from any of the aforementioned insurance companies, which payment did not include ACV Sales Tax or state and local regulatory fees for the loss of said vehicle.

28.    The issues relating to the claim of the Plaintiff do not vary from the issues

relating to the claims of the other members of the classes such that a class action provides a

more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

29.    Certification of the above classes under Florida Rule of Civil Procedure 1.220 is

also supported by the following considerations:

(a) The relatively small amount of damages that members of the classes have suffered on an individual basis would not justify the prosecution of separate lawsuits.

(b) Counsel in this class action is not aware of any

7.

previously filed litigation against the Defendants in which any of the members of the classes are a party and which any question of law or fact in the subject action is to be adjudicated.

(c) No difficulties would be encountered in the management of the Plaintiff's claim on a class action basis because the classes are readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

30.   Finally, although the precise number of class members is unknown to Plaintiff at this time, and can only be determined through appropriate discovery, the Plaintiff believes that since the Defendants collectively are one of the largest, if not the largest, motor vehicle insurer in the State of Florida, the classes of persons affected by the Defendants' unlawful practice consists of thousands of individuals or the classes of persons affected are otherwise so numerous, that joinder of all class members is impractical.   The unlawful practice alleged herein is a standardized uniform practice, employed by the Defendants, pursuant to standardized insurance policy language, resulting in the retention by the Defendants of insurance benefits and monies properly owed to the Plaintiff and the class members.

## COUNT I - BREACH OF CONTRACT FOR CLASSES A AND B

31.   The allegations contained in paragraphs 1 through 30 above are incorporated herein by reference.

32.   Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured leased vehicles, the Plaintiff and the class members were owed the actual cash value of the vehicle which would include ACV Sales Tax and state and local regulatory fees.

33.   The Defendants failure to provide coverage for the aforementioned ACV Sales

8

Tax and state and local regulatory fees, constitutes a breach of said contractual provisions. As a result of said breaches, the Plaintiff and the class members are entitled to sums representing the benefits owed for ACV Sales Tax and state and local regulatory fees, under the Defendants' insurance policies, as well as costs, prejudgment and post judgment interest and other relief as is appropriate.

34.     In addition, the Plaintiff and the class members are entitled to an award of attorney fees pursuant to §627.428 Fla. Stat.

WHEREFORE, the Plaintiff KERRY ROTH, individually and on behalf of Classes A and B, seeks an award of compensatory damages as outlined above, pre and post judgment interest, costs, attorney fees and such other relief deemed appropriate.   In addition, the Plaintiff ROTH seeks trial by jury of all issues so triable.

<u>**COUNT II – DECLARATORY RELIEF FOR CLASSES A AND B**</u>

35.     The allegations in paragraphs 1 through 30 above are incorporated herein by reference.

36.     This is a class action for declaratory relief against the Defendants pursuant to 86.011 et. seq. Fla. Stat.   The question of law and fact common to the claim of the representative party ROTH, and the Classes, is whether the Defendants were obligated to provide coverage for ACV Sales Tax and state and local regulatory fees under the Defendants' insurance contracts issued to ROTH and the class members.

37.     It is ROTH's and the class members position that pursuant to the Defendants policies, ROTH and the class members are entitled to ACV Sales Tax and state and local regulatory fees, while it is the Defendants' position that coverage for the aforementioned is not owed under the Defendants' policies.

9

38.     Accordingly, ROTH and the class members request a declaratory degree that the Defendants are obligated to provide coverage for ACV Sales Tax and state and local regulatory fees, under the insurance policies issued to the Class Members.

WHEREFORE, the Plaintiff ROTH, individually and on behalf of the class members, requests the following relief: (a) a declaratory degree that the Defendants are obligated to provide coverage under the Defendants' policies for ACV Sales Tax and state and local regulatory fees for the benefit of ROTH and the class members; (b) attorneys fees pursuant to §627.428 Fla. Stat.; (c) costs allowed by law; (d) any other supplementary relief deemed just and proper under 86.061 Fla. Stat.; and (e) trial by jury of all issues so triable.

Christopher J. Lynch, P.A.
Attorney for Plaintiff
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Facsimile: (305) 443-6204
Clynch@hunterlynchlaw.com
Lmartinez@hunterlynchaw.com

By:  /s/ Christopher J. Lynch
CHRISTOPHER J. LYNCH
FBN 331041

Edmund A. Normand, Esq.
FBN: 0865590
Normand Law PLLC
62 W. Colonial Drive,
Suite 209
Orlando, FL 32801
Ed@EdNormand.com

10

By: /s/ Edmund A. Normand
EDMUND A. NORMAND

# GEICO

ONE GEICO PLAZA
Washington, D. C. 20076-0001
Telephone: 1-800-841-3000

# Florida
# Family
# Automobile
# Insurance
# Policy

**GEICO GENERAL INSURANCE COMPANY**



EXHIBIT
A

# YOUR POLICY INDEX

Page

**SECTION I - Liability Coverages**
**Your Protection Against Claims From Others**

Definitions..................................................................3
Losses We Will Pay For You.....................................3
Additional Payments We Will Make Under
    The Liability Coverages.....................................4
        Legal Expenses And Court Costs
        Bail And Appeal Bonds
        First Aid Expenses
Exclusions: When Section I Does Not Apply............4
Persons Insured: Who Is Covered.............................5
Financial Responsibility Laws ...................................5
Out of State Coverage ...............................................5
Limits Of Liability .......................................................5
Other Insurance.........................................................5
Conditions..................................................................5
        Notice
        Assistance And Cooperation Of The Insured
        Action Against Us
        Subrogation

**SECTION II - Personal Injury Protection Coverage**

Personal Injury Protection (Part I)...........................6
Definitions..................................................................6
Payments We Will Make ............................................8
Exclusions ..................................................................8
Limits Of Liability; Application Of Deductible;
    Other Insurance...................................................9
Policy Period; Territory ..............................................9
Conditions..................................................................9
        Notice
        Action Against The Company
        Proof Of Claim; Medical Reports and
            Examinations; Payment of Claim Withheld
        Reimbursement And Subrogation
        Special Provisions For Rented Or Leased Vehicles
Modification Of Policy Coverages (Part II) .........10
Provisional Premium (Part III)............................10
Automobile Medical Payments Coverage
(Part IV).................................................................10

**SECTION III - Physical Damage Coverages**
**Your Protection For Loss Of Or Damage To Your Car**

Definitions................................................................13
Losses We Will Pay..................................................14
        Comprehensive(Excluding Collision)..............14
        Collision .............................................................14
Additional Payments We Will Make Under The
    Physical Damage Coverages.............................14
    Car Rental If Your Car Is Stolen  ......................14

Page

Exclusions:  When The Physical Damage
    Coverages Do Not Apply...................................14
Limit Of Liability .......................................................15
Other Insurance.......................................................15
Conditions................................................................15
        Notice
        Assistance And Cooperation Of The Insured
        Action Against Us
        Insured's Duties In Event Of Loss
        Appraisal
        Payment Of Loss
        No Benefit To Bailee
        Subrogation
        Assignment

**SECTION IV - Uninsured Motorists Coverage**
**Your Protection For Injuries Caused By**
**Uninsured And Hit-And-Run Motorists**.............17

**SECTION V - General Conditions**
**The Following Apply To All Coverages In This Policy**
Territory - Policy Period...........................................17
Premium....................................................................17
Changes....................................................................17
Assignment ...............................................................17
Cancellation By The Insured....................................17
Cancellation By Us...................................................18
Cancellation By Us is Limited..................................18
Renewal.....................................................................18
Non Renewal.............................................................18
Mediation Of Claims.................................................19
Other Insurance........................................................19
Action Against Us......................................................19
Dividend Provision....................................................19
Declarations..............................................................19
Fraud And Misrepresentation..................................19
Examination Under Oath...........................................19
Terms Of Policy Conformed To Statutes................19
Choice of Law...........................................................19

**SECTION VI - Amendments And Endorsements**

Special Endorsement
United States Government Employees.................20

Whenever "he," "his," "him," or "himself" appears in this policy, you may read "she," "her," "hers," or "herself."

## AGREEMENT

We, the Company named in the declarations attached to this policy, make this agreement with *you*, the policyholder. Relying on the information you have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:

### SECTION I - LIABILITY COVERAGES

### Bodily Injury Liability And Property Damage Liability
#### *Your* Protection Against Claims From Others

### DEFINITIONS

The words bolded and italicized in Section I of this policy are defined below.

1.  *Auto business* means the business of selling, repairing, servicing, storing, transporting or parking of autos.
2.  *Bodily injury* means bodily injury to a person, caused by accident, including resulting sickness, disease or death. All claims for damages arising from bodily injury to a person from a single loss shall be considered one bodily injury.
3.  *Farm auto* means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.
4.  *Insured* means a person or organization described under **PERSONS INSURED**.
5.  *Non-owned auto* means a *private passenger, farm* or *utility auto* or *trailer* not owned by, furnished or available for regular use of either *you* or *your relative*, other than a *temporary substitute auto*. An auto rented or leased for more than 30 days will be considered as furnished or available for regular use.
6.  *Owned auto* means:
    (a) A vehicle described in this policy for which a premium charge is shown for these coverages;
    (b) A *trailer* owned by *you*;
    (c) A *private passenger, farm* or *utility auto*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more, if
    　　(i) It replaces an *owned auto* as defined in (a) above; or
    　　(ii) We insure all *private passenger, farm* and *utility autos* owned by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;
    (d) A *temporary substitute auto*.
7.  *Private passenger auto* means a four-wheel private passenger, station wagon or jeep-type auto, including a *farm* or *utility auto* as defined.
8.  *Relative* means a person related to *you* by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as *you*.
9.  *Temporary substitute auto* means a *private passenger, farm* or *utility auto* or *trailer*, not owned by *you* or *your relative*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction. This vehicle will no longer qualify as a *temporary substitute auto*:
    (a) Five (5) days after the *owned auto* is deemed by us to be a total loss, and
    (b) We pay the applicable limit of liability under Section III.
10. *Trailer* means a vehicle designed to be towed by a *private passenger auto*. If the vehicle is being used for business or commercial purposes, it is a trailer only while used with a *private passenger, farm* or *utility auto*. *Trailer* also means a farm wagon or farm implement used with a *farm auto*.
11. *Utility auto* means a vehicle, other than a *farm auto*, with gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.
12. *War* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.
13. *You* and *your* means the named insured shown in the declarations or his or her spouse if a resident of the same household.

### LOSSES WE WILL PAY FOR YOU

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

1.  *Bodily injury*, sustained by a person, and

2. Damage to or destruction of property,

arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*.

We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit. We have no duty to investigate or defend any claims which are not covered under the terms of this policy. Our duty to defend ends when the limits of liability for bodily injury liability have been exhausted by payments of judgments or settlements.

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES**

1. All investigative and legal costs incurred by us.

2. Interest calculated on that part of a judgment that is within our limit of liability and accruing:

   (a) Before the judgment, where owed by law, and until we pay, offer to pay, or deposit in court the amount due under this coverage;

   (b) After the judgment, and until we pay, offer to pay, or deposit in court, the amount due under this coverage.

3. Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of our liability.

4. We will upon request by an *insured*, provide reimbursement for the following items:

   (a) Costs incurred by any *insured* for first aid to others at the time of an accident involving an *owned auto* or *non-owned auto*.

   (b) Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.

   (c) All reasonable costs incurred by an *insured* at our request.

   (d) Premiums for bail bonds paid by an *insured* due to traffic law violations arising out of the use of an *owned auto*, not to exceed $250 per bail bond.

**EXCLUSIONS**

**Section I Does Not Apply:**

1. To any *bodily injury* to any *insured* or *relative* of an *insured's* family residing in the *insured's* household.

   This exclusion does not apply if the *insured* or *relative* of the *insured* is injured as a passenger in a motor vehicle insured under this policy while that vehicle is being driven by a person who is not a *relative*, nor *you*.

2. To any vehicle used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

3. To liability coverage for any person who intentionally causes *bodily injury* or property damage.

4. To *bodily injury* or property damage that is insured under a nuclear liability policy. This exclusion applies even if the limits of that policy are exhausted.

5. To *bodily injury* or property damage arising from the operation of farm machinery.

6. To *bodily injury* to an employee of an *insured* arising out of and in the course of employment by an *insured*.

   However, *bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workmen's compensation law.

7. To *bodily injury* to a fellow employee of an *insured* (other than *you*) injured in the course of his employment if the *bodily injury* arises from the use of an auto in the business of his employer, and if benefits are payable under a workmen's compensation policy.

8. To an *owned auto* while used by a person (other than *you* or a *relative* or *your* or *your relative's* partner, agent or employee) when he is employed or otherwise engaged in the *auto business*.

9. To a *non-owned auto* while maintained or used by a person while he is employed or otherwise engaged in any *auto business*.

   However, coverage does apply to a *non-owned private passenger auto* used by *you*, *your* chauffeur or a domestic servant, while engaged in the business of an *insured*.

10. To damage:

    (a) To property owned, or transported by an *insured*; or

    (b) To property rented to or in charge of an *insured*. This exclusion does not apply to a residence or private garage.

11. To an auto acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.

12. To:

    (a) The United States of America or any of its agencies;

    (b) Any person, including *you*, if protection is afforded under the provisions of the Federal Tort Claims Act.

13. To any liability assumed under any contract or agreement.

14. To *bodily injury* or property damage caused by the *insured* in participation and/or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

**15.** To punitive or exemplary damages, regardless of any other provision of this policy.

## PERSONS INSURED

**Who Is Covered**

Section I applies to the following as *insureds* with regard to an *owned auto*:

1. *You;*
2. Any other person using the auto with *your* permission to the extent of that permission;
3. Any other person or organization for his or its liability because of acts or omissions of an *insured* under **1.** or **2.** above.

Section I applies to the following as *insureds* with regard to a *non-owned auto*:

1. *You* and *your relatives* when driving the *non-owned auto.* Such use must be with the permission, or reasonably believed to be with the permission, of the owner and to the extent of that permission.
2. A person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under **1.** above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of compliance with the Florida financial responsibility law for the future, this liability insurance will comply with the provisions of that law.

## OUT OF STATE COVERAGE

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. We will not provide Bodily Injury Liability Coverage under this provision if that coverage is not purchased and shown in the policy declarations. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.
2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.
3. The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of damage to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.
4. If this policy covers two or more autos, the LIMITS OF LIABILITY apply separately to each. An auto and attached *trailer* are considered to be one auto.

## OTHER INSURANCE

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

If the *insured* has other applicable insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

## CONDITIONS

The following conditions apply to Section I:

1. **NOTICE**

   As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:

   (a) The identity of the *insured*;
   (b) The time, place and details of the occurrence;
   (c) The names and addresses of the injured, and of any witnesses; and
   (d) The names of the owners and the description and location of any damaged property.

   If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

2. **ASSISTANCE AND COOPERATION OF THE *INSURED***

   The *insured* will cooperate and assist us, if requested:

   (a) in the investigation of the occurrence;

(b) In making settlements;
(c) In the conduct of suits;
(d) In enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage;
(e) At trials and hearings;
(f) In securing and giving evidence; and
(g) By obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

3. **ACTION AGAINST US**

No suit will lie against us:

(a) Unless the *insured* has fully complied with all the policy's terms and conditions, and
(b) Until the amount of the *insured's* obligation to pay has been finally determined, either:
   (i) By a final judgment against the *insured* after actual trial; or
   (ii) By written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine *insured's* liability.

Bankruptcy or insolvency of the *insured* or of his estate will not relieve us of our obligations.

4. **SUBROGATION**

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise *recover* the loss from anyone else who may be held responsible.

When a person has been paid damages by us under this policy and also recovers from another, that person shall:

(a) Hold in trust for us the amount recovered; and
(b) Reimburse us to the extent of our payment.

---

**SECTION II: PART I -PERSONAL INJURY PROTECTION AND PART IV-AUTOMOBILE MEDICAL PAYMENTS**

**(Automobile Medical Payments Coverage applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)**

---

**PART I - PERSONAL INJURY PROTECTION**

**DEFINITIONS**

The definitions of the terms *insured* and *you* under Section I apply to Section II also.

1. *Bodily injury* means bodily injury, sickness, or disease to a person, caused by accident, including resulting sickness, disease or death resulting therefrom. All claims for damages arising from *bodily injury* to a person from a single loss shall be considered one *bodily injury*.

2. *Insured motor vehicle* means a *motor vehicle*:

   (a) Of which *you* are the *owner*, and
   (b) With respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law, and
   (c) For which a premium is charged, or which is a trailer, other than a mobile home, designed for use with a *motor vehicle*.

3. (a) *Medical expenses* means reasonable expenses for *medically necessary* medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person. Reimbursement for *medical expenses* shall be limited to and shall not exceed 80% of the schedule of maximum charges as set forth in Florida Statute § 627.736(5) (a) 2.

   (b) However, the medical benefits shall provide reimbursement only for such services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under Florida Statutes, Title 32, chapter 458 or chapter 459, a dentist licensed under Florida Statutes, Title 32, chapter 466, or a chiropractic physician licensed under Florida Statutes, Title 32, chapter 460 or that are provided by any of the following persons or entities:

      1. A hospital or ambulatory surgical center licensed under Florida Statutes, Title 29, chapter 395.
      2. A person or entity licensed under Florida Statutes Title 29, chapters 401.2101-401.45 that provides emergency transportation and treatment.

3. An entity wholly owned by one or more physicians licensed under Florida Statutes Title 32, chapter 458 or chapter 459, chiropractic physicians licensed under Florida Statutes, Title 32, chapter 460, or dentists licensed under Florida Statutes, Title 32, chapter 466 or by such practitioner or practitioners and the spouse, parent, child, or sibling of that practitioner or those practitioners.

4. An entity wholly owned, directly or indirectly, by a hospital or hospitals.

5. A health care clinic licensed under Florida Statute Title 29, chapters 400.990-400.995 that is :
   a. Accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission of Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc.; or
   b. A health care clinic that;
      (i) Has a medical director licensed under chapter Florida Statute Title 32, chapter 458, chapter 459, or chapter 460;
      (ii) Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and
      (iii) Provides at least four of the following medical specialties:
         (A) General medicine.
         (B) Radiography.
         (C) Orthopedic medicine.
         (D) Physical medicine.
         (E) Physical therapy.
         (F) Physical rehabilitation.
         (G) Prescribing or dispensing outpatient prescription medication.
         (H) Laboratory services.

4. *Medically necessary* refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:
   (a) In accordance with generally accepted standards or medical practice;
   (b) Clinically appropriate in terms of type, frequency, extent, site, and duration; and
   (c) Not primarily for the convenience of the patient, physician, or other health care provider.

5. *Motor vehicle* means any self-propelled vehicle of four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle.
   A *motor vehicle* does not include:
   (a) Any *motor vehicle* which is used in mass transit other than public school transportation and designed to transport more than five passengers exclusive of the operator of the *motor vehicle* and which is owned by a municipality, a transit authority, or a political subdivision of the state; or
   (b) A mobile home.

6. *Occupying* means in or upon or entering into or alighting from;

7. *Owner* means a person or organization who holds the legal title to a *motor vehicle*, and also includes:
   (a) A debtor having the right to possession, in the event a *motor vehicle* is the subject of a security agreement, and
   (b) A lessee having the right to possession, in the event a *motor vehicle* is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and
   (c) A lessee having the right to possession, in the event a *motor vehicle* is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance;

8. *Pedestrian* means a person while not an occupant of any self-propelled vehicle;

9. *Relative* means a person related to *you* by blood, marriage or adoption (including a ward or foster child) who is usually a resident of the same household as *you*;

10. *Replacement services expenses* means with respect to the period of disability of the injured person all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his household;

11. *Work loss* means with respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person.

**PAYMENTS WE WILL MAKE**

The Company will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law, to or for the benefit of the injured person:

(a) 80% of *medical expenses*; which are *medically necessary*, pursuant to the following schedule of maximum charges contained in the Florida Statute § 627.736(5) (a) 2:

   1. For emergency transport and treatment by providers licensed under Florida Statutes, Title 29, chapter 401, 200 percent of medicine.

   2. For emergency services and care provided by a hospital licensed under Florida Statutes, Title 29, chapter 395, 75 percent of the hospital's usual and customary charges.

   3. For emergency services and care as defined by Florida Statutes Title 29 chapter 395.002(9) provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

   4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

   5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

   6. For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B, we may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes Title 31, chapter 440.13 rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

(b) 60% of *work loss*; and

(c) *Replacement services expenses*; and

(d) Death benefits.

The above benefits will be provided for injuries incurred as a result of *bodily injury*, caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle* and sustained by:

(1) *You* or any *relative* while *occupying* a *motor vehicle* or, while a *pedestrian* through being struck by a *motor vehicle*; or

(2) Any other person while *occupying* the *insured motor vehicle* or, while a *pedestrian*, through being struck by the *insured motor vehicle*.

**EXCLUSIONS**

Section II - Part I does not apply:

1. To *you* or any *relative* injured while *occupying* any *motor vehicle* owned by *you* and which is not an *insured motor vehicle* under this insurance;

2. To any person while operating the *insured motor vehicle* without *your* express or implied consent;

3. To any person, if such person's conduct contributed to his *bodily injury* under any of the following circumstances:
   (i) Causing *bodily injury* to himself intentionally;
   (ii) While committing a felony;

4. To *you* or any dependent *relative* for *work loss* if an entry in the schedule or declarations indicates such coverage does not apply;

5. To any *pedestrian*, other than *you* or any *relative*, not a legal resident of the State of Florida;

6. To any person, other than *you*, if such person is the *owner* of a *motor vehicle* with respect to which security is required under the Florida Motor Vehicle No-Fault law, as amended;

7. To any person, other than *you* or any *relative*, who is entitled to personal injury protection benefits from the *owner* or *owners* of a *motor vehicle* which is not an *insured motor vehicle* under this insurance or from the *owner's* insurer; or

8. To any person who sustains *bodily injury* while *occupying* a *motor vehicle* located for use as a residence or premises.

## LIMIT OF LIABILITY; APPLICATION OF DEDUCTIBLE; OTHER INSURANCE

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law, as amended, from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains *bodily injury* as the result of any one accident shall be $10,000; provided that payment for death benefits included in the foregoing shall be equal to the lesser of $5,000 or the remainder of unused personal injury protection benefits per individual.

After the deductible is met, each *insured* is eligible to receive up to $10,000 in total benefits described. The amount of any deductible stated in the declarations shall be deducted from all expenses or losses as described in FL Stat. § 627.739 with respect to all *medical expenses, replacement services expenses* and *work loss* incurred by or on behalf of each person to whom the deductible applies and who sustains *bodily injury* as the result of any one accident. Such deductible will not apply to the death benefit.

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workmen's compensation laws of any state or the federal government.

If benefits have been received under the Florida Motor Vehicle No-Fault Law, as amended, from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

## POLICY PERIOD - TERRITORY

The insurance under this Section applies only to accidents which occur during the policy period:

    (a)  In the State of Florida;

    (b)  As respects *you* or a *relative*, while *occupying* the *insured motor vehicle* outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

    (c)  As respects *pedestrians* injured when struck by the *insured motor vehicle* in the State of Florida, if they are not the *owner* of a *motor vehicle* for which coverage is required to be maintained under the Florida No-Fault Law.

## CONDITIONS

1.  **NOTICE**

    In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2.  **ACTION AGAINST THE COMPANY**

    No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance, and in accordance with, and subject to the terms, conditions, and exclusions of, the Florida Motor Vehicle No-Fault Law, as amended.

3.  **PROOF OF CLAIM; MEDICAL REPORTS AND EXAMINATIONS; PAYMENT OF CLAIM WITHHELD**

    As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examination, we will not be liable for subsequent personal injury protection benefits.

    Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

    If requested by us an *insured* , or any other person or organization making a claim or seeking payment, must submit to examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require.

    This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO. If requested by us an *insured* , or any other person or organization making a claim or seeking payment, if the person unreasonably refuses to submit to an EUO, we will not be liable for personal injury protection benefits.

4.  REIMBURSEMENT AND SUBROGATION

In the event of payment to or for the benefits of any injured person under this insurance:

(a)  The Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

(b)  The Company providing personal injury protection benefits on a private passenger motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the *owner* or insurer of the *owner* of a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while *occupying*, or while a *pedestrian* through being struck by, such commercial motor vehicle.

5.  SPECIAL PROVISION FOR RENTED OR LEASED VEHICLES

Notwithstanding any provision of this coverage to the contrary, if a person is injured while *occupying*, or through being struck by, a *motor vehicle* rented or leased under a rental or lease agreement, within the state of Florida, which does not specify otherwise in at least 10 point type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary. Personal injury protection coverage offered under this policy will not apply to a vehicle rented, operated, used, or leased outside the state of Florida.

## PART II - MODIFICATION OF POLICY COVERAGES

Any Automobile Medical Payments insurance, any Uninsured Motorists coverage or any excess Underinsured Motorists coverage afforded by the policy shall be excess over any Personal Injury Protection benefits paid or available for payment or which would be available but for the application of a deductible.

Regardless of whether the full amount of Personal Injury Protection benefits have been exhausted, any Medical Payments insurance afforded by this policy shall pay the portion of any claim for Personal Injury Protection *medical expenses* which are otherwise covered but not available for payment due to the limitation of 80% of *medical expenses* contained in Part I but shall not be payable for the amount of the deductible selected.

## PART III - PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law, as amended, providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists Insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the named insured pursuant to the Florida Motor Vehicle No-Fault Law, as amended, with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations, the insured shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

## PART IV - AUTOMOBILE MEDICAL PAYMENTS COVERAGE

(Automobile Medical Payments coverage applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)

## DEFINITIONS

The definitions of the terms *insured* and *you* under Section I apply to Section II - Part IV also. The definitions under Section II - Part I also apply to Section II - Part IV.

*Usual and customary medical charges* as used in this Part means charges that are otherwise covered under Section II, Part I of the policy.

*Medically necessary* as used in this Part means all services which would be covered under Section II, Part I of the policy.

## PAYMENTS WE WILL MAKE

Under Automobile Medical Payments coverage, the Company will pay the *usual and customary charges* for *bodily injury*, caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle* and sustained by:

(1)  *You* or any *relative* while *occupying* a *motor vehicle* or, while a *pedestrian* through being struck by a *motor vehicle*; or

(2)  Any other occupants of the *insured motor vehicle* injured in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

In addition, we will pay, subject to the coverage limit:

(a)  The portion of any claim for Personal Injury Protection medical expense benefits otherwise covered but not payable due to the coinsurance provision of the Personal Injury Protection provision. This is the 20% of *medical expenses* not covered in Part I - Payments We Will Make, item (a);

(b) *Usual and customary charges* incurred for *medically necessary* services that exceed the Personal Injury Protection medical expense coverage paid and when Personal Injury Protection coverage is exhausted; and

(c) *Usual and customary charges* incurred by *you* or any *relative* for *medically necessary* services that result from injuries received while *occupying a motor vehicle* or as a *pedestrian* in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

## EXCLUSIONS

Automobile Medical Payments coverage does not apply:

1.  To *you* or any *relative* injured while *occupying* any *motor vehicle* owned by *you* or a *relative* and which is not an *insured motor vehicle* under this insurance;

2.  To any person while operating the *insured motor vehicle* without *your* express or implied consent;

3.  To any person, if such person's conduct contributed to his *bodily injury* under any of the following circumstances:

    (i)   Causing *bodily injury* to himself intentionally;
    (ii)  While committing a felony;

4.  To any *pedestrian*, other than *you* or any *relative*; or

5.  To any person, other than *you*, if such person is the *owner* of a *motor vehicle* with respect to which security is required under the Florida Motor Vehicle No-Fault Law, as amended;

6.  To any person, other than *you* or a *relative*, who is entitled to personal injury protection benefits from the *owner* or *owners* of a *motor vehicle* which is not an *insured motor vehicle* under this insurance or from the *owner's* insurer;

7.  To any person who sustains *bodily injury* while *occupying* a *motor vehicle* located for use as a residence or premises;

8.  To *bodily injury* sustained by *you* or a *relative* that results from war of any kind;

9.  To *bodily injury* sustained by *you* or a *relative* that results from exposure to fungi;

10. To *bodily injury* sustained by *you* or a *relative* that results from:

    (i)   Nuclear reaction;
    (ii)  Radiation or radioactive contamination from any source;
    (iii) The intentional or accidental detonation of, or release of radiation from any nuclear or radioactive device;

11. To *bodily injury* sustained by *you* or a *relative* while *occupying* a *motor vehicle*, or while a *pedestrian* through being struck by a *motor vehicle* while being employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles. However, this exclusion does not apply to *you* or a *relative*, or an agent or employee of *you* or a *relative*, when using the *insured motor vehicle*.

12. To *bodily injury* sustained by *you* or a *relative* caused by the *insured* in participation and/or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

## LIMITS OF LIABILITY

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of Automobile Medical Payments benefits available from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains *bodily injury* as the result of any one accident is the amount listed in the declarations page.

## OTHER INSURANCE

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workmen's compensation or other similar laws of any state or the federal government.

If benefits have been received under any similar coverage from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim. This coverage will coordinate with any applicable Personal Injury Protection benefits but will not duplicate any benefits available for payment. The coverage of the occupied vehicle is primary.

Any Uninsured Motorist Coverage or any excess Underinsured Motorist Coverage afforded by this policy shall be excess over any Automobile Medical Payments benefits paid or available for payment or which would be available but for the application of a deductible; and subject to the terms and conditions of the Uninsured/Underinsured Motorist coverage.

## POLICY PERIOD - TERRITORY

The insurance under this Part applies only to accidents which occur during the policy period:

(a) In the State of Florida; and

(b) We will cover *you* or any *relative* for injuries incurred while *occupying a motor vehicle* or as a *pedestrian* in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada. This coverage is excess over any other valid and collectible insurance provided with respect to the occupied *motor vehicle*.

**CONDITIONS**

1. **NOTICE**

   In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2. **PROOF OF CLAIM; MEDICAL REPORTS AND EXAMINATIONS; PAYMENT OF CLAIM WITHHELD**

   As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the *bodily injury* and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examination, we will not be liable for subsequent Automobile Medical Payment benefits.

   Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

   We also have the right to determine if incurred charges and treatment are reasonable, *medically necessary* and causally related to a *bodily injury* sustained in an accident. This determination may be made by use of utilization review, peer reviews, medical bill reviews or medical examination. We will also have the right to determine if incurred charges are *usual and customary charges* and if treatment is *medically necessary.*

   If requested by us an *insured* , or any other person or organization making a claim or seeking payment, must submit to examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require.

   This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO. If requested by us an *insured,* or any other person or organization making a claim or seeking payment, if the person unreasonably refuses to submit to an EUO, we will not be liable for medical payments benefits.

3. **ACTION AGAINST THE COMPANY**

   No action shall lie against us:

   (a) Unless the insured has fully complied with all the policy's terms and conditions; and

   (b) Until 30 days after the required notice of accident and reasonable proof of claim has been filed with us; and

   (c) Unless we receive written notice of the intent to initiate litigation and within 30 days after receipt of such notice we do not:

      (i) Pay the claim; or

      (ii) Mail to the person filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice.

   Payment or our written statement of agreement to pay for treatment shall be treated as being made on the date a draft, or other valid instrument that is equivalent payment, or the written statement of agreement to pay, is placed in the United States mail properly addressed posted envelope or if not so posted, on the date of delivery.

   The written notice of intent to initiate litigation must state that it is a demand letter for Automobile Medical Payments coverage and contain the following information:

   (a) The name of the insured for whom benefits are being sought including a copy of the assignment giving rights to the claimant if the claimant is not the insured;

   (b) The claim number and or policy number upon which the claim was originally submitted; and

   (c) To the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and each exact amount, the date of treatment, service or accommodation and the type of benefits claimed to be due. A health insurance claim form (CMS-1500) or UB 92 form or any other standard form approved by the Department of Financial Services, may be used as the itemized statement.

   The written notice must be delivered to us by United States Certified or Registered mail, Return Receipt Requested, at the address we have filed with and that is made available by the office of the Florida Chief Financial Officer on its Internet website.

4.  SUBROGATION

In the event of payment to or for the benefits of any *injured person* under this insurance the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

When an *injured person* has been paid by us and also recovers from another, the amount recovered will be held by the *injured person* in trust for us and reimbursed to us to the extent of our payment. If we are not reimbursed, we may pursue recovery of that amount directly against the *injured person*.

## SECTION III – PHYSICAL DAMAGE COVERAGES
### Your Protection For Loss Or Damage To Your Car

## DEFINITIONS

The definitions of the terms *auto business, farm auto, non-owned auto, private passenger auto, relative, temporary substitute auto, utility auto, you, your,* and *war* under Section I apply to Section III also. Under this Section, the following special definitions apply:

1.  *Actual cash value* is the replacement cost of the auto or property less *depreciation* or *betterment.*
2.  *Betterment* is improvement of the auto or property to a value greater than its pre-loss condition.
3.  *Collision* means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.
4.  *Comprehensive* means *loss* caused other than by *collision* and includes the following causes:

    (a)  Missiles;
    (b)  Falling objects;
    (c)  Fire;
    (d)  Lightning;
    (e)  Theft;
    (f)  Larceny;
    (g)  Explosion;
    (h)  Earthquake;
    (i)  Windstorm;
    (j)  Hail;
    (k)  Water;
    (l)  Flood;
    (m)  Malicious mischief;
    (n)  Vandalism;
    (o)  Riot;
    (p)  Civil commotion; or
    (q)  Colliding with a bird or animal.

5.  *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:

    (a)  Are permanently installed or attached; or
    (b)  Alter the appearance or performance of a vehicle.

    This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the *owned auto* or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

6.  *Depreciation* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.:

7.  *Insured* means:

    (a)  Regarding the *owned auto:*

        (i)  *You* and *your relatives;*
        (ii)  A person or organization maintaining, using or having custody of the auto with *your* permission, if his use is within the extent of that permission.

    (b)  Regarding a *non-owned auto, you* and *your relatives,* when driving the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the extent of that permission.

8. *Loss* means direct and accidental loss of or damage to:
   (a) An *owned* or *non-owned auto*, including its equipment; or
   (b) Other property insured under this section.
9. *Owned auto* means:
   (a) Any vehicle described in this policy for which a specific premium charge indicates there is physical damage coverage;
   (b) A *private passenger, farm* or *utility auto* or a *trailer*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more, if
      (i) It replaces an *owned auto* as described in (a) above, or
      (ii) We insure all *private passenger, farm,* and *utility autos* owned by *you* on the date of the acquisition and *you* ask us to add it to the policy no more than 30 days later;
   (c) A *temporary substitute auto.*
10. *Trailer* means a trailer designed to be towed by a *private passenger auto* and not used as a home, residence, office, store, display or passenger trailer. *Trailer* does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

## LOSSES WE WILL PAY

### Comprehensive (Excluding Collision)

1. We will pay for each *loss*, less the applicable deductible, caused other than by *collision* to the *owned* or *non-owned auto*. This includes glass breakage.

   No deductible will apply to *loss* to windshield glass.

   At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to:
   (a) Fire;
   (b) Lightning;
   (c) Flood;
   (d) Falling objects;
   (e) Earthquake;
   (f) Explosion; or
   (g) Theft of the entire automobile.

   The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto.*

3. *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

### Collision

1. We will pay for *collision loss* to the *owned auto* for the amount of each *loss* less the applicable deductible and to the *non-owned auto* for the amount of each *loss* less the applicable deductible when driven by *you* or a *relative*.

2. We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*. The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto.*

3. *Losses* involving one *owned auto*, arising out of a single occurrence shall be subject to no more than one deductible.

4. If more than one *owned auto* or *non-owned auto* is involved in a *collision loss*, any deductible will apply separately to each *owned auto* or *non-owned auto.*

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

1. We will reimburse the *insured* for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the *loss*.

   Reimbursement will not exceed $30.00 per day nor $900.00 per *loss*.

2. We will pay general average and salvage charges for which the *insured* becomes legally liable when the auto is being transported.

## EXCLUSIONS

### Section III Does Not Apply:

1. To an auto used to carry passengers or goods for hire is not covered. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2. To *loss* due to *war.*

3. To *loss* to a *non-owned auto* when used by the *insured* in the *auto business*.

4. To *loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

5. To road damage to tires.

6. To *loss* due to radioactivity.

7. To *loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound.

8. To *loss* to any radar detector.

9. To any vehicle or *trailer* when used for business or commercial purposes other than a *farm auto*.

10. To *loss* for *custom parts or equipment* unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

11. To any liability assumed under any contract or agreement.

12. To any *loss* resulting from:
    (a) The acquisition of a stolen vehicle;
    (b) Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle; or
    (c) Any confiscation, seizure or impoundment of a vehicle by governmental authorities.
    (d) The sale of an *owned auto*.

13. To the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a *relative* or a permissive user of the vehicle in illegal activity.

14. To any *loss* caused by the *insured* in participation and/or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

## LIMIT OF LIABILITY

The limit of our liability for *loss*:

1. Is the *actual cash value* of the property at the time of the *loss*;

2. Will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price;

3. To personal effects arising out of one occurrence is $200;

4. To a *trailer* not owned by *you* is $500;

5. For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.

   *Actual cash value* or *betterment* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

6. If this policy covers two or more autos or *trailers* any deductibles will apply separately to each.

## OTHER INSURANCE

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro rata share of the total coverage available. Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

## CONDITIONS

The following conditions apply only to the Physical Damage coverages:

1. NOTICE

   As soon as possible after a *loss*, written notice must be given us or our authorized agent stating:
   (a) The identity of the *insured*;
   (b) A description of the auto or *trailer*;
   (c) The time, place and details of the *loss*; and
   (d) The names and addresses of any witnesses.

   In case of theft, the *insured* must promptly notify the police.

2. **ASSISTANCE AND COOPERATION OF THE *INSURED***

The *Insured* will cooperate and assist us, if requested:

(a) In the investigation of the *loss;*
(b) In making settlements;
(c) In the conduct of suits;
(d) In enforcing any right of subrogation against any legally responsible person or organization;
(e) At trials and hearings;
(f) In securing and giving evidence; and
(g) By obtaining the attendance of witnesses.

3. **ACTION AGAINST US**

Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of *loss* is filed and the amount of *loss* is determined.

If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.

4. **INSURED'S DUTIES IN EVENT OF LOSS**

In the event of *loss* the *Insured* will:

(a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *Insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
(b) File with us, within 91 days after *loss*, his sworn proof of *loss* including all information we may reasonably require.
(c) At our request, the *Insured* will exhibit the damaged property and submit to examination under oath.

5. **APPRAISAL**

If we and the *Insured* do not agree on the amount of *loss*, either may, within 60 days after proof of *loss* is filed, request an appraisal of the *loss*. Both parties must agree to the appraisal at the time of dispute. In that event, we and the *Insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *Insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire. We will not waive our rights by any of our acts relating to appraisal.

6. **PAYMENT OF *LOSS***

We may at our option:

(a) Pay for the *loss;* or
(b) Repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *Insured* or the owner of the property.

7. **NO BENEFIT TO BAILEE**

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

8. **SUBROGATION**

When payment is made under this policy, we will be subrogated to all the *Insured's* rights of recovery, to the extent of our payment against others. The *Insured* will help us to enforce these rights. The *Insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

9. **ASSIGNMENT**

With respect to Section III, Physical Damage Coverages, an Assignment of Interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

## SECTION IV - UNINSURED MOTORIST COVERAGE

### Protection For *You* And *Your* Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorist

UNLESS AMENDED WITH THE STACKED OR NON-STACKED UNINSURED/UNDERINSURED AMENDMENT, YOU ELECTED NOT TO PURCHASE CERTAIN VALUABLE COVERAGE, WHICH WOULD HAVE PROTECTED YOU AND YOUR FAMILY WHEN INVOLVED, IN A COVERED LOSS WITH AN UNINSURED/ UNDERINSURED MOTORIST.

**THIS POLICY DOES NOT PROVIDE UNINSURED/UNDERINSURED MOTORISTS BENEFITS.**

Uninsured/underinsured motorist benefits are designed to provide protection when *you* or *your* family are involved in an accident with an uninsured/underinsured motorist.

## SECTION V- GENERAL CONDITIONS

### These conditions Apply To all coverages In This Policy

1.  **TERRITORY - POLICY PERIOD**

    This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories and possessions, or Canada and while an *owned auto* is being transported between ports thereof.

    Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at *your* address stated in the declarations.

2.  **PREMIUM**

    When *you* dispose of, acquire ownership of, or replace a *private passenger, farm* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

3.  **CHANGES**

    The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

    We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

    The premium for each auto is based on the information we have in *your* file. *You* agree:

    (a) That we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.
    (b) That *you* will cooperate with us in determining if this information is correct and complete.
    (c) That *you* will notify us of any changes in this information.

    Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

4.  **ASSIGNMENT**

    Assignment of interest under this policy will not bind us without our consent.

    If *you* die, this policy will cover:

    (a) *Your* surviving spouse;
    (b) The executor or administrator of *your* estate, but only while acting within the scope of his duties;
    (c) Any person having proper temporary custody of the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate; and
    (d) Under the Medical Payments coverage, a person who was a *relative* at the time of *your* death, if a premium is shown on the Policy Declarations for Medical Payments.

5.  **CANCELLATION BY THE *INSURED***

    *You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

    However, *you* may not cancel during the first two months immediately following *your* policy's effective date except:

    (a) Upon total destruction of all of the *owned autos*;
    (b) Upon transfer of ownership of all of the *owned autos*;
    (c) If *you* obtained a replacement policy covering an *owned auto* elsewhere; or
    (d) When we notify *you* that the premium charged must be increased to comply with our rate filings or the applicable laws of Florida, *you* have the following options:

    1.  Upon receipt of *your* bill *you* may pay the difference in premium and keep the policy as it stands with the corrected premium; or
    2.  *You* may cancel this policy within 10 days from the receipt of our notice and receive a refund of any unearned premium; or
    3.  *Your* failure to respond timely or pay the additional premium charged will result in the cancellation of *your* policy when all paid premiums are exhausted.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals.

6.  **CANCELLATION BY US**

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective. This notice will be mailed by United States Post Office certificate of mailing.

We will mail this notice:

(a)  10 days in advance if the proposed cancellation is for nonpayment of premium or any of its installments when due;

(b)  45 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals.

Payment or tender of unearned premium is not a condition of cancellation.

7.  **CANCELLATION BY US IS LIMITED**

After this policy has been in effect for 60 days or, if the policy is a renewal, effective immediately, we will not cancel unless:

(a)  *You* do not pay the premiums for this policy or any installment when due to us or our agent; or

(b)  Any *insured* has had his driver's license or motor vehicle registration under suspension or revocation; either:

    (i)  During the current policy period; or

    (ii)  During the preceding 180 days if this is a new policy; or

(c)  There has been fraud or material misrepresentation under the policy in *your* application or in making a claim.

We will not cancel a new policy during the first 60 days immediately following the effective date of the policy for nonpayment of premium unless the reason for the cancellation is the issuance of a payment for the premium that is dishonored for any reason. If the initial payment on the policy is dishonored, we will not declare the policy void without providing *you* with notice of *your* right to cure the nonpayment as required by Florida law.

Nothing in this section will require us to renew this policy.

8.  **RENEWAL**

We guarantee to renew this policy for *private passenger, farm* or *utility autos* as long as all the following conditions are met:

1.  *You* (or *your* spouse) are at least 50 years old and *you* (or *your* spouse) are a principal operator of an auto insured under this policy. There are no principal or occasional operators under the age of 25.

2.  *You* and all operators of autos insured under this policy must be physically and mentally able to safely operate an auto. We may require an operator to provide certification of this from a doctor acceptable to us.

3.  The autos insured are principally located in a state which has approved the use of this condition, and that state continues to approve the use on this condition.

4.  The representations provided in *your* application for this policy were true.

If these requirements are not met, the guaranteed renewal condition does not apply. We reserve the right to terminate this guaranty in any state in which conditions require that we discontinue writing new and renewal policies for all our *insureds*. Should we choose not to renew, we will mail to *you*, at the address shown in this policy, written notice of our refusal to renew at least 45 days prior to the expiration date. This notice will be mailed by United States Post Office certificate of mailing. The mailing or delivery of this notice will be sufficient proof of notice.

If *you*:

(1)  do not pay the premium as required to renew this policy; or

(2)  have informed us or our agent that *you* wish the policy cancelled or not renewed; or

(3)  do not accept our offer to renew;

it will be construed to mean that *you* have refused our renewal offer and the policy will expire without notice.

If this policy has been in effect for 5 years or more we will not refuse to renew solely because an *insured* was involved in a single traffic accident.

9.  **NON-RENEWAL**

We agree that we will not refuse to renew or continue this policy unless a written notice of our refusal to renew or continue is mailed to *you*, at the address shown in the policy, at least 45 days prior to the expiration notice. This notice will be mailed by United States Post Office certificate of mailing. The mailing or delivery of this notice will be sufficient proof of notice.

**10.** MEDIATION OF CLAIMS

In the event of a claim for *bodily injury* amounting to $10,000 or less, or any property damage claim, either party may demand mediation of the claim, provided that suit has not yet been filed. Only one mediation may be demanded for each claim, unless both parties agree to more than one mediation. Mediation is not binding on either party.

A request for mediation shall be filed with the Department of Financial Services on a form approved by the Department. The request for mediation shall state the reason for the request and the issues in dispute which are to be mediated. The Department of Financial Services will appoint the mediator to conduct the mediation. Each party may once reject the mediator selected by the Department, either originally or after the opposing side has exercised its option to reject a mediator. Each party participating in the mediation must have the authority to make a binding decision. All parties must mediate in good faith.

The cost of the mediation, as set by the Department of Financial Services is shared equally by the parties. Costs incurred by a party in preparing for or attending the mediation are paid by the party incurring that cost.

**11.** OTHER INSURANCE

If other insurance is obtained on *your owned auto*, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

**12.** ACTION AGAINST US

Persons other than the *insured* covered by this policy, may not name us as a defendant prior to first obtaining a judgment against an *insured*.

**13.** DIVIDEND PROVISION

*You* are entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

**14.** DECLARATIONS

By accepting this policy, *you* agree that:

(a) The statements in *your* application and in the declarations are *your* agreements and representations;
(b) This policy is issued in reliance upon the truth of these representations; and
(c) This policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

**15.** FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

1. At the time application is made; or
2. At any time during the policy period; or
3. In connection with the presentation or settlement of a claim.

**16.** EXAMINATION UNDER OATH (EUO)

The *Insured*, or any other person or organization seeking coverage under this policy must submit to examination under oath by any person named by us when, where and as often as we may reasonably require. This provision includes providing a copy of any documents, forms, records, or materials requested to be provided as part of the EUO request whether the request is made before, during or after the EUO.

**17.** TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Florida are amended to conform to those statutes.

**18.** CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Florida.

## SECTION VI- AMENDMENTS AND ENDORSEMENTS

**1.** SPECIAL ENDORSEMENT UNITED STATES GOVERNMENT EMPLOYEES

**A.** Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

1. Motor vehicles owned or leased by the United States Government or any of its agencies, or
2. Rented motor vehicle used for United States Government business,

when such use is with the permission of the United States Government. Subject to the limits describe in paragraph B. below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

**B.** The following limits apply to this coverage:

1. A $100 deductible applies to each occurrence.
2. For vehicles described in A.1. above, our liability shall not exceed the lesser of the following:

    (a) The *actual cash value* of the property at the time of its occurrence; or
    (b) The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
    (c) Two months basic pay of the *insured*; or
    (d) The limit of Property Damage liability coverage stated in the declarations.

3. For vehicles described in A.2. above, our liability shall not exceed the lesser of the following:

    (a) The *actual cash value* of the property at the time of the occurrence; or
    (b) The cost to repair or replace the property, or any of it parts with other of like kind and quality; or
    (c) The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

W. C. E. Robinson
Secretary

O. M. Nicely
President

IN THE CIRCUIT COUR OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

KERRY ROTH, on behalf of herself and all
others similarly situated,

CASE NO: 16-016030

CLASS REPRESENTATION

      Plaintiff,

vs.

GEICO GENERAL INSURANCE
COMPANY; GOVERNMENT EMPLOYEES
INSURANCE COMPANY;
GEICO INDEMNITY COMPANY; and
GEICO CASUALTY COMPANY;

      Defendants.
_____/

### PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

The Plaintiff KERRY ROTH, on behalf of herself and all others similarly situated, files

this Class Action Complaint against GEICO GENERAL INSURANCE COMPANY;

GOVERNMENT EMPLOYEES INSURANCE COMPANY; GEICO INDEMNITY COMPANY;

and GEICO CASUALTY COMPANY as follows:

### I. NATURE OF THE ACTION

1.     This is a class action lawsuit by Plaintiff who was the named insured under a

GEICO GENERAL INSURANCE COMPANY, (hereinafter also identified as "GEICO

GENERAL"), automobile policy issued for private passenger auto physical damage requiring

payment of "Actual Cash Value" ("ACV"), including sales tax, and state and local regulatory

fees, for covered total loss leased vehicles.

1

2.     The Defendant GEICO GENERAL's standardized policy language, which is also present in the Florida policies issued by GOVERNMENT EMPLOYEES INSURANCE COMPANY; GEICO INDEMNITY COMPANY; and GEICO CASUALTY COMPANY shows that sales tax equal to at least six percent[1] of the cash value of the insured vehicle at the time of loss (the "ACV Sales Tax"), is included in a total loss vehicle coverage, as are state and local regulatory fees.

3.     This lawsuit is brought on behalf of Plaintiff KERRY ROTH and on behalf of similarly situated insureds who have suffered damages due to the Defendants' policy and practice of refusing to pay full ACV Sales Tax and state and local regulatory fees, on insured leased vehicles, in the case of total loss, notwithstanding that, as set forth above, the Defendants' standardized policy language provides coverage for said ACV Sales Tax and fees.

## II. JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over Plaintiff's claims since the Plaintiff's and Classes' claims exceed $15,000.00.

5.     Venue is proper in this Court pursuant to §47.051 *Fla. Stat.* since the Defendants have agents or representatives doing business in this county.

## III. THE PARTIES

6.     At all times material hereto, the Plaintiff KERRY ROTH, is and was a person residing in Boca Raton, Florida.

7.     At all times material hereto, the Defendant GEICO GENERAL is and was a

---

[1]Florida's sales tax is 6%. In addition, some counties impose a local sales tax of up to 1.5% in addition to the 6% state sales tax.

foreign corporation authorize to transact insurance in the State of Florida, and one of the largest, if not the largest, motor vehicle insurer in Florida. The Defendants GOVERNMENT EMPLOYEES INSURANCE COMPANY; GEICO INDEMNITY COMPANY; and GEICO CASUALTY COMPANY are also foreign corporations authorized to transact insurance in Florida.

## IV. FACTUAL ALLEGATIONS

8.      At all times material hereto, the Plaintiff ROTH was a lessee of a 2015 Audi A3 Sedan, VIN number WAUACGFF7F1092286, financed through  VW Credit, Inc.

9.      At all times material hereto, the Plaintiff ROTH insured the 2015 Audi A3 under a Florida Family Automobile Insurance Policy with GEICO GENERAL (a copy of said policy is attached hereto as Exhibit A).

10.     On or about June 18, 2016, the Plaintiff ROTH was involved in an accident while operating the 2015 Audi A3.  As a result of said accident, ROTH filed a claim for property damage with GEICO GENERAL,  claim number 05590116-0101-012.

11.     Following the filing of said claim, GEICO GENERAL determined that the 2015 Audi A3 was a total loss with an ACV of $23,947.00.  GEICO GENERAL then paid the aforementioned sum to the lienholder, VW Credit Inc., minus the GEICO GENERAL policy's deductible of $1,000.00, for a total of $22,947.00.

12.     In paying the aforementioned amount, GEICO GENERAL indicated that because the vehicle was leased, no ACV Sales Tax or state or local regulatory fees were owed under the GEICO GENERAL policy.

## V. THE GEICO GENERAL POLICY
3

13.     The GEICO GENERAL policy, under Section III, entitled PHYSICAL DAMAGE

COVERAGE, (page 14 of Form A-70 FL(03-11), states:

**LOSSES WE WILL PAY**

*               *               *

*Collision*

1. We will pay for *collision loss* to the *owned auto* for the amount of each *loss* less the applicable deductible and to the *non-owned auto* for the amount of each *loss* less the applicable deductible when driven by *you* or a *relative*.

14.     The GEICO GENERAL policy, in Section III, under the provision entitled **LIMIT OF LIABILITY,** (page 15 of Form A-70FL (03-11)), states:

The limit of our liability for *loss* :

1. Is the *actual cash value* of the property at the time of the *loss*.

15.     Finally, the **DEFINITIONS** provision of the GEICO GENERAL policy (page 13 of form A-70FL (03-11)), states:

1. *Actual cash value* is the replacement cost of the auto or property less *depreciation* or *betterment*.

16.     Clearly, the policy language, which is identical to the language contained in the Florida policies issued by GOVERNMENT EMPLOYEES INSURANCE COMPANY; GEICO INDEMNITY COMPANY; and GEICO CASUALTY COMPANY; does not include: (1) any provision excluding sales tax or state and local regulatory fees from ACV; (2) any provision deferring payment of the ACV Sales Tax and state or local regulatory fees for any purpose

4

whatsoever; (3) any provision requiring an insured to lease a replacement vehicle; (4) any

provision requiring the insured to first lease a replacement vehicle as a condition precedent to

receiving a ACV Sales Tax or state and regulatory fees; and (5) any provision linking the

amount of ACV Sales Tax or state and regulatory fees to the lease of a replacement vehicle and

the corresponding sales tax or state or regulatory fees on said replacement vehicle.

## VI. CLASS ALLEGATIONS

17.     The Plaintiff brings this action seeking representation of two classes pursuant to

Florida Rule of Civil Procedure 1.220(b)(2) and 1.220(b)(3).

18.     Plaintiff's claims are typical to those of all class members because members of

the class are similarly affected by the Defendant's failure to pay ACV Sales Tax and state and

local regulatory fees upon the total loss of insured leased vehicles. The material policy terms

for each class member are identical to the terms of the Plaintiff's policy.

19.     Plaintiff's interests are not antagonistic to those of other class members nor is the

Plaintiff subject to any unique defenses.

20.     The claim of the representative Plaintiff ROTH, raises questions of law and fact

that are common to all members of the classes, within the meaning of Florida Rule of Civil

Procedure 1.220.   Said common questions include, but are not limited to, the following: (a)

whether under the Defendant's standardized policy language Plaintiff and the class members

are owed ACV Sales Tax and state and local regulatory fees upon the total loss of an insured

leased vehicle; and (b) whether the Defendants have breached their insurance contracts with

the Plaintiff and the class members by failing to pay ACV Sales Tax and state and local

regulatory fees upon the total loss of an insured leased vehicle.

21.     The claims of the Plaintiff are typical of the claims of all other members of the

5

classes because all such claims arise from the alleged improper failure of the Defendant to pay ACV Sales Tax and state and local regulatory fees upon the total loss of insured leased vehicles.

22.     The Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the classes.

23.     The Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions.

24.     Defendants have acted and refused to act on grounds generally applicable to the class, thereby making appropriate final declaratory relief with respect to the class as a whole pursuant to Rule 1.220(b)(2).

25.     This action is properly maintained as class action pursuant to Florida Rule of Civil Procedure 1.220(b)(3) in that questions of law and fact, common to claims of the Plaintiff and the members of the classes, will predominate over questions of law or fact, affecting only individual members of the classes, such that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

26.     The Plaintiff brings this action pursuant to Rules 1.220(b)(2) and 1.220(b)(3) of the Florida Rules of Civil Procedure as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

## CLASS A

All insureds, under a policy issued by Geico General Insurance Company in the State of Florida, covering a leased vehicle, who sustained a

total loss to said vehicle and who, within the five year time period prior to the date on which this lawsuit was filed till the date of any certification order, received payment from Geico General Insurance Company for said loss, which payment did not include ACV Sales Tax or state and local regulatory fees for the loss of said vehicle.

## CLASS B

All insureds, under policies issued by Geico General Insurance Company; Government Employees Insurance Company; Geico Indemnity Company; and Geico Casualty Company; in the State of Florida, covering a leased vehicle, who sustained a total loss to said vehicle, and who, within the five years time period prior to the date on which this lawsuit was filed to the date of any certification order, received payment from any of the aforementioned insurance companies, which payment did not include ACV Sales Tax or state and local regulatory fees for the loss of said vehicle.

27.    The issues relating to the claim of the Plaintiff do not vary from the issues relating to the claims of the other members of the classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

28.    Certification of the above classes under Florida Rule of Civil Procedure 1.220 is also supported by the following considerations:

(a) The relatively small amount of damages that members of the classes have suffered on an individual basis would not justify the prosecution of separate lawsuits.

(b) Counsel in this class action is not aware of any previously filed litigation against the Defendants in which any of the members of the classes are a party and which any question of law or fact in the

7

subject action is to be adjudicated.

(c) No difficulties would be encountered in the management of the Plaintiff's claim on a class action basis because the classes are readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

29.     Finally, although the precise number of class members is unknown to Plaintiff at this time, and can only be determined through appropriate discovery, the Plaintiff believes that since the Defendants collectively are one of the largest, if not the largest, motor vehicle insurer in the State of Florida, the classes of persons affected by the Defendants' unlawful practice consists of thousands of individuals or the classes of persons affected are otherwise so numerous, that joinder of all class members is impractical.   The unlawful practice alleged herein is a standardized uniform practice, employed by the Defendants, pursuant to standardized insurance policy language, resulting in the retention by the Defendants of insurance benefits and monies properly owed to the Plaintiff and the class members.

<u>**COUNT I - BREACH OF CONTRACT FOR CLASSES A AND B**</u>

30.     The allegations contained in paragraphs 1 through 29 above are incorporated herein by reference.


31.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured leased vehicles, the Plaintiff and the class members were owed the actual cash value of the vehicle which would include ACV Sales Tax and state and local regulatory fees.

32.     The Defendants failure to provide coverage for the aforementioned ACV Sales Tax and state and local regulatory fees, constitutes a breach of said contractual provisions. As a

8

result of said breaches, the Plaintiff and the class members are entitled to sums representing the benefits owed for ACV Sales Tax and state and local regulatory fees, under the Defendants' insurance policies, as well as costs, prejudgment and post judgment interest and other relief as is appropriate.

33.    In addition, the Plaintiff and the class members are entitled to an award of attorney fees pursuant to §627.428 Fla. Stat.

WHEREFORE, the Plaintiff KERRY ROTH, individually and on behalf of Classes A and B, seeks an award of compensatory damages as outlined above, pre and post judgment interest, costs, attorney fees and such other relief deemed appropriate.  In addition, the Plaintiff ROTH seeks trial by jury of all issues so triable.

## COUNT II – DECLARATORY RELIEF FOR CLASSES A AND B

34.    The allegations in paragraphs 1 through 29 above are incorporated herein by reference.

35.    This is a class action for declaratory relief against the Defendants pursuant to 86.011 et. seq. Fla. Stat.  The question of law and fact common to the claim of the representative party ROTH, and the Classes, is whether the Defendants were obligated to provide coverage for ACV Sales Tax and state and local regulatory fees under the Defendants' insurance contracts issued to ROTH and the class members.

36.    It is ROTH's and the class members position that pursuant to the Defendants policies, ROTH and the class members are entitled to ACV Sales Tax and state and local regulatory fees, while it is the Defendants' position that coverage for the aforementioned is not owed under the Defendants' policies.

37.    Accordingly, ROTH and the class members request a declaratory degree that the

Defendants are obligated to provide coverage for ACV Sales Tax and state and local regulatory fees, under the insurance policies issued to the Class Members.

WHEREFORE, the Plaintiff ROTH, individually and on behalf of the class members, requests the following relief: (a) a declaratory degree that the Defendants are obligated to provide coverage under the Defendants' policies for ACV Sales Tax and state and local regulatory fees for the benefit of ROTH and the class members; (b) attorneys fees pursuant to §627.428 Fla. Stat.; (c) costs allowed by law; (d) any other supplementary relief deemed just and proper under 86.061 Fla. Stat.; and (e) trial by jury of all issues so triable.

> Christopher J. Lynch, P.A.
> Attorney for Plaintiff
> 6915 Red Road, Suite 208
> Coral Gables, Florida 33143
> Telephone: (305) 443-6200
> Facsimile: (305) 443-6204
> Clynch@hunterlynchlaw.com
> Lmartinez@hunterlynchaw.com
>
> By:  /s/ Christopher J. Lynch
> CHRISTOPHER J. LYNCH
> FBN 331041
>
>
> Edmund A. Normand, Esq.
> FBN: 0865590
> Normand Law PLLC
> 62 W. Colonial Drive,
> Suite 209
> Orlando, FL 32801
> Ed@EdNormand.com
>
> By: /s/ Edmund A. Normand

10

EDMUND A. NORMAND

11

# GEICO

ONE GEICO PLAZA
Washington, D. C. 20076-0001
Telephone: 1-800-841-3000

---

# Florida
# Family
# Automobile
# Insurance
# Policy

---

GEICO GENERAL INSURANCE COMPANY



EXHIBIT
" A "

A-70FL (03-11)

# YOUR POLICY INDEX

Page

**SECTION I - Liability Coverages**
**Your Protection Against Claims From Others**

Definitions..................................................3
Losses We Will Pay For You......................3
Additional Payments We Will Make Under
  The Liability Coverages........................4
    Legal Expenses And Court Costs
    Bail And Appeal Bonds
    First Aid Expenses
Exclusions: When Section I Does Not Apply...........4
Persons Insured:  Who Is Covered.........................5
Financial Responsibility Laws................................5
Out of State Coverage ......................................5
Limits Of Liability ...........................................5
Other Insurance.................................................5
Conditions ..........................................................5
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Subrogation

**SECTION II - Personal Injury Protection Coverage**

Personal Injury Protection (Part I)......................6
Definitions..............................................................6
Payments We Will Make ......................................8
Exclusions ...........................................................8
Limits Of Liability; Application Of Deductible;
  Other Insurance..............................................9
Policy Period; Territory ...................................9
Conditions...........................................................9
    Notice
    Action Against The Company
    Proof Of Claim; Medical Reports and
      Examinations; Payment of Claim Withheld
    Reimbursement And Subrogation
    Special Provisions For Rented Or Leased Vehicles
Modification Of Policy Coverages (Part II) .........10
Provisional Premium (Part III)..........................10
Automobile Medical Payments Coverage
(Part IV)............................................................10

**SECTION III - Physical Damage Coverages**
**Your Protection For Loss Of Or Damage To Your Car**

Definitions...........................................................13
Losses We Will Pay ..........................................14
    Comprehensive(Excluding Collision)...............14
    Collision ....................................................14
Additional Payments We Will Make Under The
    Physical Damage Coverages.........................14
    Car Rental If Your Car Is Stolen  ...............14

Page

Exclusions:  When The Physical Damage
    Coverages Do Not Apply....................................14
Limit Of Liability .................................................15
Other Insurance....................................................15
Conditions...........................................................15
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Insured's Duties In Event Of Loss
    Appraisal
    Payment Of Loss
    No Benefit To Bailee
    Subrogation
    Assignment

**SECTION IV - Uninsured Motorists Coverage**
**Your Protection For Injuries Caused By**
**Uninsured And Hit-And-Run Motorists**.............17

**SECTION V - General Conditions**
**The Following Apply To All Coverages In This Policy**
Territory - Policy Period..........................17
Premium....................................................17
Changes.....................................................17
Assignment...............................................17
Cancellation By The Insured........................17
Cancellation By Us....................................18
Cancellation By Us Is Limited......................18
Renewal.....................................................18
Non Renewal.............................................18
Mediation Of Claims..................................19
Other Insurance........................................19
Action Against Us......................................19
Dividend Provision....................................19
Declarations..............................................19
Fraud And Misrepresentation....................19
Examination Under Oath.............................19
Terms Of Policy Conformed To Statutes.............19
Choice of Law............................................19

**SECTION VI -  Amendments And Endorsements**

Special Endorsement
United States Government Employees..................20

Whenever "he," "his," "him," or "himself" appears in this policy, you may read "she," "her," "hers," or "herself."

## AGREEMENT

We, the Company named in the declarations attached to this policy, make this agreement with *you* , the policyholder. Relying on the information you have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:

## SECTION I - LIABILITY COVERAGES

### Bodily Injury Liability And Property Damage Liability
### *Your* Protection Against Claims From Others

## DEFINITIONS

The words bolded and italicized in Section I of this policy are defined below.

1. *Auto business* means the business of selling, repairing, servicing, storing, transporting or parking of autos.
2. *Bodily injury* means bodily injury to a person, caused by accident, including resulting sickness, disease or death. All claims for damages arising from bodily injury to a person from a single loss shall be considered one bodily injury.
3. *Farm auto* means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.
4. *Insured* means a person or organization described under **PERSONS INSURED.**
5. *Non-owned auto* means a *private passenger, farm* or *utility auto* or *trailer* not owned by, furnished or available for regular use of either *you* or *your relative*, other than a *temporary substitute auto.* An auto rented or leased for more than 30 days will be considered as furnished or available for regular use.
6. *Owned auto* means:
   (a) A vehicle described in this policy for which a premium charge is shown for these coverages;
   (b) A *trailer* owned by *you;*
   (c) A *private passenger, farm* or *utility auto*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more, if
      (i) It replaces an *owned auto* as defined in (a) above; or
      (ii) We insure all *private passenger, farm* and *utility autos* owned by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;
   (d) A *temporary substitute auto.*
7. *Private passenger auto* means a four-wheel private passenger, station wagon or jeep-type auto, including a *farm* or *utility auto* as defined.
8. *Relative* means a person related to *you* by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as *you.*
9. *Temporary substitute auto* means a *private passenger, farm* or *utility auto* or *trailer*, not owned by *you* or *your relative*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction. This vehicle will no longer qualify as a *temporary substitute auto:*
   (a) Five (5) days after the *owned auto* is deemed by us to be a total loss, and
   (b) We pay the applicable limit of liability under Section III.
10. *Trailer* means a vehicle designed to be towed by a *private passenger auto.* If the vehicle is being used for business or commercial purposes, it is a trailer only while used with a *private passenger, farm* or *utility auto. Trailer* also means a farm wagon or farm implement used with a *farm auto.*
11. *Utility auto* means a vehicle, other than a *farm auto,* with gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.
12. *War* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.
13. *You* and *your* means the named insured shown in the declarations or his or her spouse if a resident of the same household.

## LOSSES WE WILL PAY FOR YOU

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

1. *Bodily injury*, sustained by a person, and

2. Damage to or destruction of property,

arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto.*

We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit. We have no duty to investigate or defend any claims which are not covered under the terms of this policy. Our duty to defend ends when the limits of liability for bodily injury liability have been exhausted by payments of judgments or settlements.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. All investigative and legal costs incurred by us.
2. Interest calculated on that part of a judgment that is within our limit of liability and accruing:
   (a) Before the judgment, where owed by law, and until we pay, offer to pay, or deposit in court the amount due under this coverage;
   (b) After the judgment, and until we pay, offer to pay, or deposit in court, the amount due under this coverage.
3. Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of our liability.
4. We will upon request for an *insured*, provide reimbursement for the following items:
   (a) Costs incurred by any *insured* for first aid to others at the time of an accident involving an *owned auto* or *non-owned auto.*
   (b) Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.
   (c) All reasonable costs incurred by an *insured* at our request.
   (d) Premiums for bail bonds paid by an *insured* due to traffic law violations arising out of the use of an *owned auto*, not to exceed $250 per bail bond.

## EXCLUSIONS

### Section I Does Not Apply:

1. To any *bodily injury* to any *insured* or *relative* of an *insured's* family residing in the *insured's* household.
   This exclusion does not apply if the *insured* or *relative* of the *insured* is injured as a passenger in a motor vehicle insured under this policy while that vehicle is being driven by a person who is not a *relative*, nor *you.*
2. To any vehicle used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.
3. To liability coverage for any person who intentionally causes *bodily injury* or property damage.
4. To *bodily injury* or property damage that is insured under a nuclear liability policy. This exclusion applies even if the limits of that policy are exhausted.
5. To *bodily injury* or property damage arising from the operation of farm machinery.
6. To *bodily injury* to an employee of an *insured* arising out of and in the course of employment by an *insured.*
   However, *bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workmen's compensation law.
7. To *bodily injury* to a fellow employee of an *insured* (other than *you*) injured in the course of his employment if the *bodily injury* arises from the use of an auto in the business of his employer, and if benefits are payable under a workmen's compensation policy.
8. To an *owned auto* while used by a person (other than *you* or a *relative* or *your* or *your relative's* partner, agent or employee) when he is employed or otherwise engaged in the *auto business.*
9. To a *non-owned auto* while maintained or used by a person while he is employed or otherwise engaged in any *auto business.*
   However, coverage does apply to a *non-owned private passenger auto* used by *you*, *your* chauffeur or a domestic servant, while engaged in the business of an *insured.*
10. To damage:
    (a) To property owned, or transported by an *insured;* or
    (b) To property rented to or in charge of an *insured*. This exclusion does not apply to a residence or private garage.
11. To an auto acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.
12. To:
    (a) The United States of America or any of its agencies;
    (b) Any person, including *you*, if protection is afforded under the provisions of the Federal Tort Claims Act.
13. To any liability assumed under any contract or agreement.
14. To *bodily injury* or property damage caused by the *insured* in participation and/or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

15. To punitive or exemplary damages, regardless of any other provision of this policy.

**PERSONS INSURED**

Who Is Covered

Section I applies to the following as *insureds* with regard to an *owned auto*:

1. *You*;
2. Any other person using the auto with *your* permission to the extent of that permission;
3. Any other person or organization for his or its liability because of acts or omissions of an *insured* under **1.** or **2.** above.

Section I applies to the following as *insureds* with regard to a *non-owned auto*:

1. *You* and *your relatives* when driving the *non-owned auto*. Such use must be with the permission, or reasonably believed to be with the permission, of the owner and to the extent of that permission.
2. A person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under **1.** above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

**FINANCIAL RESPONSIBILITY LAWS**

When this policy is certified as proof of compliance with the Florida financial responsibility law for the future, this liability insurance will comply with the provisions of that law.

**OUT OF STATE COVERAGE**

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. We will not provide Bodily Injury Liability Coverage under this provision if that coverage is not purchased and shown in the policy declarations. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

**LIMITS OF LIABILITY**

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.
2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.
3. The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of damage to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.
4. If this policy covers two or more autos, the LIMITS OF LIABILITY apply separately to each. An auto and attached *trailer* are considered to be one auto.

**OTHER INSURANCE**

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

If the *insured* has other applicable insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

**CONDITIONS**

The following conditions apply to Section I:

1. **NOTICE**

   As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:

   (a) The identity of the *insured*;
   (b) The time, place and details of the occurrence;
   (c) The names and addresses of the injured, and of any witnesses; and
   (d) The names of the owners and the description and location of any damaged property.

   If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

2. **ASSISTANCE AND COOPERATION OF THE *INSURED***

   The *insured* will cooperate and assist us, if requested:

   (a) In the investigation of the occurrence;

(b) In making settlements;

(c) In the conduct of suits;

(d) In enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage;

(e) At trials and hearings;

(f) In securing and giving evidence; and

(g) By obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

3. **ACTION AGAINST US**

No suit will lie against us:

(a) Unless the *insured* has fully complied with all the policy's terms and conditions, and

(b) Until the amount of the *insured's* obligation to pay has been finally determined, either:

  (i) By a final judgment against the *insured* after actual trial; or

  (ii) By written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or of his estate will not relieve us of our obligations.

4. **SUBROGATION**

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

When a person has been paid damages by us under this policy and also recovers from another, that person shall:

(a) Hold in trust for us the amount recovered; and

(b) Reimburse us to the extent of our payment.

---

**SECTION II: PART I –PERSONAL INJURY PROTECTION AND PART IV–AUTOMOBILE MEDICAL PAYMENTS**

(Automobile Medical Payments Coverage applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)

---

**PART I - PERSONAL INJURY PROTECTION**

**DEFINITIONS**

The definitions of the terms *insured* and *you* under Section I apply to Section II also.

1. *Bodily injury* means bodily injury, sickness, or disease to a person, caused by accident, including resulting sickness, disease or death resulting therefrom. All claims for damages arising from *bodily injury* to a person from a single loss shall be considered one *bodily injury*.

2. *Insured motor vehicle* means a *motor vehicle*:

   (a) Of which *you* are the *owner*, and

   (b) With respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law, and

   (c) For which a premium is charged, or which is a trailer, other than a mobile home, designed for use with a *motor vehicle*.

3. (a) *Medical expenses* means reasonable expenses for *medically necessary* medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person. Reimbursement for *medical expenses* shall be limited to and shall not exceed 80% of the schedule of maximum charges as set forth in Florida Statute § 627.736(5) (a) 2.

   (b) However, the medical benefits shall provide reimbursement only for such services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under Florida Statutes, Title 32, chapter 458 or chapter 459, a dentist licensed under Florida Statutes, Title 32, chapter 466, or a chiropractic physician licensed under Florida Statutes, Title 32, chapter 460 or that are provided by any of the following persons or entities:

     1. A hospital or ambulatory surgical center licensed under Florida Statutes, Title 29, chapter 395.

     2. A person or entity licensed under Florida Statutes Title 29, chapters 401.2101-401.45 that provides emergency transportation and treatment.

3. An entity wholly owned by one or more physicians licensed under Florida Statutes Title 32, chapter 458 or chapter 459, chiropractic physicians licensed under Florida Statutes, Title 32, chapter 460, or dentists licensed under Florida Statutes, Title 32, chapter 466 or by such practitioner or practitioners and the spouse, parent, child, or sibling of that practitioner or those practitioners.
4. An entity wholly owned, directly or indirectly, by a hospital or hospitals.
5. A health care clinic licensed under Florida Statute Title 29, chapters 400.990-400.995 that is :
   a. Accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission of Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc.; or
   b. A health care clinic that;
     (I) Has a medical director licensed under chapter Florida Statute Title 32, chapter 458, chapter 459, or chapter 460;
     (II) Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and
     (III) Provides at least four of the following medical specialties:
        (A) General medicine.
        (B) Radiography.
        (C) Orthopedic medicine.
        (D) Physical medicine.
        (E) Physical therapy.
        (F) Physical rehabilitation.
        (G) Prescribing or dispensing outpatient prescription medication.
        (H) Laboratory services.

4. *Medically necessary* refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:
   (a) In accordance with generally accepted standards or medical practice;
   (b) Clinically appropriate in terms of type, frequency, extent, site, and duration: and
   (c) Not primarily for the convenience of the patient, physician, or other health care provider.
5. *Motor vehicle* means any self-propelled vehicle of four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle.
   A *motor vehicle* does not include:
   (a) Any *motor vehicle* which is used in mass transit other than public school transportation and designed to transport more than five passengers exclusive of the operator of the *motor vehicle* and which is owned by a municipality, a transit authority, or a political subdivision of the state; or
   (b) A mobile home.
6. *Occupying* means in or upon or entering into or alighting from;
7. *Owner* means a person or organization who holds the legal title to a *motor vehicle*, and also includes:
   (a) A debtor having the right to possession, in the event a *motor vehicle* is the subject of a security agreement, and
   (b) A lessee having the right to possession, in the event a *motor vehicle* is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and
   (c) A lessee having the right to possession, in the event a *motor vehicle* is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance;
8. *Pedestrian* means a person while not an occupant of any self-propelled vehicle;
9. *Relative* means a person related to *you* by blood, marriage or adoption (including a ward or foster child) who is usually a resident of the same household as *you*;
10. *Replacement services expenses* means with respect to the period of disability of the injured person all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his household;
11. *Work loss* means with respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person.

**PAYMENTS WE WILL MAKE**

The Company will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law, to or for the benefit of the injured person:

(a) 80% of *medical expenses*, which are *medically necessary*, pursuant to the following schedule of maximum charges contained in the Florida Statute § 627.736(5) (a) 2:

1. For emergency transport and treatment by providers licensed under Florida Statutes, Title 29, chapter 401, 200 percent of medicine.

2. For emergency services and care provided by a hospital licensed under Florida Statutes, Title 29, chapter 395, 75 percent of the hospital's usual and customary charges.

3. For emergency services and care as defined by Florida Statutes Title 29 chapter 395.002(9) provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

6. For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B, we may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes Title 31, chapter 440.13 rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

(b) 60% of *work loss*; and

(c) *Replacement services expenses*; and

(d) Death benefits.

The above benefits will be provided for injuries incurred as a result of *bodily injury*, caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle* and sustained by:

(1) *You* or any *relative* while *occupying a motor vehicle* or, while a *pedestrian* through being struck by a *motor vehicle*; or

(2) Any other person while *occupying* the *insured motor vehicle* or, while a *pedestrian*, through being struck by the *insured motor vehicle*.

**EXCLUSIONS**

Section II - Part I does not apply:

1. To *you* or any *relative* injured while *occupying* any *motor vehicle* owned by *you* and which is not an *insured motor vehicle* under this insurance;

2. To any person while operating the *insured motor vehicle* without *your* express or implied consent;

3. To any person, if such person's conduct contributed to his *bodily injury* under any of the following circumstances:

   (i) Causing *bodily injury* to himself intentionally;

   (ii) While committing a felony;

4. To *you* or any dependent *relative* for *work loss* if an entry in the schedule or declarations indicates such coverage does not apply;

5. To any *pedestrian*, other than *you* or any *relative*, not a legal resident of the State of Florida;

6. To any person, other than *you*, if such person is the *owner* of a *motor vehicle* with respect to which security is required under the Florida Motor Vehicle No-Fault law, as amended;

7. To any person, other than *you* or any *relative*, who is entitled to personal injury protection benefits from the *owner* or *owners* of a *motor vehicle* which is not an *insured motor vehicle* under this insurance or from the *owner's* insurer; or

8. To any person who sustains *bodily injury* while *occupying* a *motor vehicle* located for use as a residence or premises.

**LIMIT OF LIABILITY; APPLICATION OF DEDUCTIBLE; OTHER INSURANCE**

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law, as amended, from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains *bodily injury* as the result of any one accident shall be $10,000; provided that payment for death benefits included in the foregoing shall be equal to the lesser of $5,000 or the remainder of unused personal injury protection benefits per individual.

After the deductible is met, each *insured* is eligible to receive up to $10,000 in total benefits described. The amount of any deductible stated in the declarations shall be deducted from all expenses or losses as described in FL Stat. § 627.736 with respect to all *medical expenses, replacement services expenses* and *work loss* incurred by or on behalf of each person to whom the deductible applies and who sustains *bodily injury* as the result of any one accident. Such deductible will not apply to the death benefit.

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workmen's compensation laws of any state or the federal government. If benefits have been received under the Florida Motor Vehicle No-Fault Law, as amended, from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

**POLICY PERIOD - TERRITORY**

The insurance under this Section applies only to accidents which occur during the policy period:

    (a) In the State of Florida;

    (b) As respects *you* or a *relative*, while *occupying* the *insured motor vehicle* outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

    (c) As respects *pedestrians* injured when struck by the *insured motor vehicle* in the State of Florida, if they are not the *owner* of a *motor vehicle* for which coverage is required to be maintained under the Florida No-Fault Law.

**CONDITIONS**

1. **NOTICE**

   In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2. **ACTION AGAINST THE COMPANY**

   No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance, and in accordance with, and subject to the terms, conditions, and exclusions of, the Florida Motor Vehicle No-Fault Law, as amended.

3. **PROOF OF CLAIM; MEDICAL REPORTS AND EXAMINATIONS; PAYMENT OF CLAIM WITHHELD**

   As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examination, we will not be liable for subsequent personal injury protection benefits.

   Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

   If requested by us an *insured*, or any other person or organization making a claim or seeking payment, must submit to examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require.

   This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO. If requested by us an *insured*, or any other person or organization making a claim or seeking payment, if the person unreasonably refuses to submit to an EUO, we will not be liable for personal injury protection benefits.

4. **REIMBURSEMENT AND SUBROGATION**

In the event of payment to or for the benefits of any injured person under this insurance:

(a) The Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

(b) The Company providing personal injury protection benefits on a private passenger motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the *owner* or insurer of the *owner* of a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while *occupying*, or while a *pedestrian* through being struck by, such commercial motor vehicle.

5. **SPECIAL PROVISION FOR RENTED OR LEASED VEHICLES**

Notwithstanding any provision of this coverage to the contrary, if a person is injured while *occupying*, or through being struck by, a *motor vehicle* rented or leased under a rental or lease agreement, within the state of Florida, which does not specify otherwise in at least 10 point type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary. Personal injury protection coverage offered under this policy will not apply to a vehicle rented, operated, used, or leased outside the state of Florida.

## PART II - MODIFICATION OF POLICY COVERAGES

Any Automobile Medical Payments insurance, any Uninsured Motorists coverage or any excess Underinsured Motorists coverage afforded by the policy shall be excess over any Personal Injury Protection benefits paid or available for payment or which would be available but for the application of a deductible.

Regardless of whether the full amount of Personal Injury Protection benefits have been exhausted, any Medical Payments insurance afforded by this policy shall pay the portion of any claim for Personal Injury Protection *medical expenses* which are otherwise covered but not available for payment due to the limitation of 80% of *medical expenses* contained in Part I but shall not be payable for the amount of the deductible selected.

## PART III - PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law, as amended, providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the named insured pursuant to the Florida Motor Vehicle No-Fault Law, as amended, with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations, the insured shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

## PART IV - AUTOMOBILE MEDICAL PAYMENTS COVERAGE
**(Automobile Medical Payments coverage applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)**

## DEFINITIONS

The definitions of the terms *Insured* and *you* under Section I apply to Section II - Part IV also. The definitions under Section II - Part I also apply to Section II - Part IV.

*Usual and customary medical charges* as used in this Part means charges that are otherwise covered under Section II, Part I of the policy.

*Medically necessary* as used in this Part means all services which would be covered under Section II, Part I of the policy.

## PAYMENTS WE WILL MAKE

Under Automobile Medical Payments coverage, the Company will pay the *usual and customary charges* for *bodily injury*, caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle* and sustained by:

(1) *You* or any *relative* while *occupying* a *motor vehicle* or, while a *pedestrian* through being struck by a *motor vehicle*; or

(2) Any other occupants of the *insured motor vehicle* injured in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

In addition, we will pay, subject to the coverage limit:

(a) The portion of any claim for Personal Injury Protection medical expense benefits otherwise covered but not payable due to the coinsurance provision of the Personal Injury Protection provision. This is the 20% of *medical expenses* not covered in Part I - Payments We Will Make, item (a);

(b) **Usual and customary charges** incurred for **medically necessary** services that exceed the Personal Injury Protection medical expense coverage paid and when Personal Injury Protection coverage is exhausted; and

(c) **Usual and customary charges** incurred by **you** or any **relative** for **medically necessary** services that result from injuries received while **occupying** a **motor vehicle** or as a **pedestrian** in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

## EXCLUSIONS

Automobile Medical Payments coverage does not apply:

1. To **you** or any **relative** injured while **occupying** any **motor vehicle** owned by **you** or a **relative** and which is not an **insured motor vehicle** under this insurance;

2. To any person while operating the **insured motor vehicle** without **your** express or implied consent;

3. To any person, if such person's conduct contributed to his **bodily injury** under any of the following circumstances:
   (i) Causing **bodily injury** to himself intentionally;
   (ii) While committing a felony;

4. To any **pedestrian**, other than **you** or any **relative**; or

5. To any person, other than **you**, if such person is the **owner** of a **motor vehicle** with respect to which security is required under the Florida Motor Vehicle No-Fault Law, as amended;

6. To any person, other than **you** or a **relative**, who is entitled to personal injury protection benefits from the **owner** or **owners** of a **motor vehicle** which is not an **insured motor vehicle** under this insurance or from the **owner's** insurer;

7. To any person who sustains **bodily injury** while **occupying** a **motor vehicle** located for use as a residence or premises;

8. To **bodily injury** sustained by **you** or a **relative** that results from war of any kind;

9. To **bodily injury** sustained by **you** or a **relative** that results from exposure to fungi;

10. To **bodily injury** sustained by **you** or a **relative** that results from:
    (i) Nuclear reaction;
    (ii) Radiation or radioactive contamination from any source;
    (iii) The intentional or accidental detonation of, or release of radiation from any nuclear or radioactive device;

11. To **bodily injury** sustained by **you** or a **relative** while **occupying** a **motor vehicle**, or while a **pedestrian** through being struck by a **motor vehicle** while being employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles. However, this exclusion does not apply to **you** or a **relative**, or an agent or employee of **you** or a **relative**, when using the **insured motor vehicle.**

12. To **bodily injury** sustained by **you** or a **relative** caused by the **insured** in participation and/or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

## LIMITS OF LIABILITY

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of Automobile Medical Payments benefits available from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains **bodily injury** as the result of any one accident is the amount listed in the declarations page.

## OTHER INSURANCE

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workmen's compensation or other similar laws of any state or the federal government.

If benefits have been received under any similar coverage from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim. This coverage will coordinate with any applicable Personal Injury Protection benefits but will not duplicate any benefits available for payment. The coverage of the occupied vehicle is primary.

Any Uninsured Motorist Coverage or any excess Underinsured Motorist Coverage afforded by this policy shall be excess over any Automobile Medical Payments benefits paid or available for payment or which would be available but for the application of a deductible; and subject to the terms and conditions of the Uninsured/Underinsured Motorist coverage.

## POLICY PERIOD - TERRITORY

The insurance under this Part applies only to accidents which occur during the policy period:

(a) in the State of Florida; and

(b) We will cover *you* or any *relative* for injuries incurred while *occupying* a *motor vehicle* or as a *pedestrian* in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada. This coverage is excess over any other valid and collectible insurance provided with respect to the occupied *motor vehicle*.

## CONDITIONS

1. **NOTICE**

   In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2. **PROOF OF CLAIM; MEDICAL REPORTS AND EXAMINATIONS; PAYMENT OF CLAIM WITHHELD**

   As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the *bodily injury* and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examination, we will not be liable for subsequent Automobile Medical Payment benefits.

   Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

   We also have the right to determine if incurred charges and treatment are reasonable, *medically necessary* and causally related to a *bodily injury* sustained in an accident. This determination may be made by use of utilization review, peer reviews, medical bill reviews or medical examination. We will also have the right to determine if incurred charges are *usual and customary charges* and if treatment is *medically necessary*.

   If requested by us an *insured*, or any other person or organization making a claim or seeking payment, must submit to examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require.

   This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO. If requested by us an *insured*, or any other person or organization making a claim or seeking payment, if the person unreasonably refuses to submit to an EUO, we will not be liable for medical payments benefits.

3. **ACTION AGAINST THE COMPANY**

   No action shall lie against us:

   (a) Unless the insured has fully complied with all the policy's terms and conditions; and
   (b) Until 30 days after the required notice of accident and reasonable proof of claim has been filed with us; and
   (c) Unless we receive written notice of the intent to initiate litigation and within 30 days after receipt of such notice we do not:
      (i) Pay the claim; or
      (ii) Mail to the person filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice.

   Payment or our written statement of agreement to pay for treatment shall be treated as being made on the date a draft, or other valid instrument that is equivalent payment, or the written statement of agreement to pay, is placed in the United States mail properly addressed posted envelope or if not so posted, on the date of delivery.

   The written notice of intent to initiate litigation must state that it is a demand letter for Automobile Medical Payments coverage and contain the following information:

   (a) The name of the insured for whom benefits are being sought including a copy of the assignment giving rights to the claimant if the claimant is not the insured;
   (b) The claim number and or policy number upon which the claim was originally submitted; and
   (c) To the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and each exact amount, the date of treatment, service or accommodation and the type of benefits claimed to be due. A health insurance claim form (CMS-1500) or UB 92 form or any other standard form approved by the Department of Financial Services, may be used as the itemized statement.

   The written notice must be delivered to us by United States Certified or Registered mail, Return Receipt Requested, at the address we have filed with and that is made available by the office of the Florida Chief Financial Officer on its internet website.

4. **SUBROGATION**

In the event of payment to or for the benefits of any injured person under this insurance the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

When an injured person has been paid by us and also recovers from another, the amount recovered will be held by the injured person in trust for us and reimbursed to us to the extent of our payment. If we are not reimbursed, we may pursue recovery of that amount directly against the injured person.

## SECTION III – PHYSICAL DAMAGE COVERAGES
### Your Protection For Loss Or Damage To Your Car

## DEFINITIONS

The definitions of the terms *auto business, farm auto, non-owned auto, private passenger auto, relative, temporary substitute auto, utility auto, you, your,* and *war* under Section I apply to Section III also. Under this Section, the following special definitions apply:

1. *Actual cash value* is the replacement cost of the auto or property less *depreciation* or *betterment.*
2. *Betterment* is improvement of the auto or property to a value greater than its pre-loss condition.
3. *Collision* means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.
4. *Comprehensive* means *loss* caused other than by *collision* and includes the following causes:

    (a) Missiles;
    (b) Falling objects;
    (c) Fire;
    (d) Lightning;
    (e) Theft;
    (f) Larceny;
    (g) Explosion;
    (h) Earthquake;
    (i) Windstorm;
    (j) Hail;
    (k) Water;
    (l) Flood;
    (m) Malicious mischief;
    (n) Vandalism;
    (o) Riot;
    (p) Civil commotion; or
    (q) Colliding with a bird or animal.

5. *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:

    (a) Are permanently installed or attached; or
    (b) Alter the appearance or performance of a vehicle.

    This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the *owned auto* or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

6. *Depreciation* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.:

7. *Insured* means:

    (a) Regarding the *owned auto*:

        (i) *You* and *your relatives;*
        (ii) A person or organization maintaining, using or having custody of the auto with *your* permission, if his use is within the extent of that permission.

    (b) Regarding a *non-owned auto, you* and *your relatives,* when driving the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the extent of that permission.

A-70FL (03-11)    Page 13 of 20

8. **Loss** means direct and accidental loss of or damage to:
   (a) An **owned** or **non-owned auto**, including its equipment; or
   (b) Other property insured under this section.

9. **Owned auto** means:
   (a) Any vehicle described in this policy for which a specific premium charge indicates there is physical damage coverage;
   (b) A **private passenger, farm** or **utility auto** or a **trailer**, ownership of which **you** acquire during the policy period or for which **you** enter into a lease during the policy period for a term of six months or more, if
      (i) It replaces an **owned auto** as described in (a) above, or
      (ii) We insure all **private passenger, farm**, and **utility autos** owned by **you** on the date of the acquisition and **you** ask us to add it to the policy no more than 30 days later;
   (c) A **temporary substitute auto**.

10. **Trailer** means a trailer designed to be towed by a **private passenger auto** and not used as a home, residence, office, store, display or passenger trailer. **Trailer** does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

## LOSSES WE WILL PAY

### Comprehensive (Excluding Collision)

1. We will pay for each **loss**, less the applicable deductible, caused other than by **collision** to the **owned** or **non-owned auto**. This includes glass breakage.
   No deductible will apply to **loss** to windshield glass.
   At the option of the **insured**, breakage of glass caused by **collision** may be paid under the Collision coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less the applicable deductible, for **loss** to personal effects due to:
   (a) Fire;
   (b) Lightning;
   (c) Flood;
   (d) Falling objects;
   (e) Earthquake;
   (f) Explosion; or
   (g) Theft of the entire automobile.
   The property must be owned by **you** or a **relative**, and must be in or upon an **owned auto**.

3. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

### Collision

1. We will pay for **collision loss** to the **owned auto** for the amount of each **loss** less the applicable deductible and to the **non-owned auto** for the amount of each **loss** less the applicable deductible when driven by **you** or a **relative**.

2. We will pay up to $200 per occurrence, less the applicable deductible, for **loss** to personal effects due to a **collision**. The property must be owned by **you** or a **relative**, and must be in or upon an **owned auto**.

3. **Losses** involving one **owned auto**, arising out of a single occurrence shall be subject to no more than one deductible.

4. If more than one **owned auto** or **non-owned auto** is involved in a **collision loss**, any deductible will apply separately to each **owned auto** or **non-owned auto**.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

1. We will reimburse the **insured** for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the **loss**.
   Reimbursement will not exceed $30.00 per day nor $900.00 per **loss**.

2. We will pay general average and salvage charges for which the **insured** becomes legally liable when the auto is being transported.

## EXCLUSIONS

### Section III Does Not Apply:

1. To an auto used to carry passengers or goods for hire is not covered. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2. To **loss** due to **war**.

3. To *loss* to a *non-owned auto* when used by the *Insured* in the *auto business*.
4. To *loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.
5. To road damage to tires.
6. To *loss* due to radioactivity.
7. To *loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound.
8. To *loss* to any radar detector.
9. To any vehicle or *trailer* when used for business or commercial purposes other than a *farm auto*.
10. To *loss* for *custom parts or equipment* unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.
11. To any liability assumed under any contract or agreement.
12. To any *loss* resulting from:
    (a) The acquisition of a stolen vehicle;
    (b) Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle; or
    (c) Any confiscation, seizure or impoundment of a vehicle by governmental authorities.
    (d) The sale of an *owned auto*.
13. To the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a *relative* or a permissive user of the vehicle in illegal activity.
14. To any *loss* caused by the *insured* in participation and/or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

**LIMIT OF LIABILITY**

The limit of our liability for *loss*:

1. Is the *actual cash value* of the property at the time of the *loss*;
2. Will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price;
3. To personal effects arising out of one occurrence is $200;
4. To a *trailer* not owned by *you* is $500;
5. For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.

   *Actual cash value* or *betterment* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.
6. If this policy covers two or more autos or *trailers* any deductibles will apply separately to each.

**OTHER INSURANCE**

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro rata share of the total coverage available. Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

**CONDITIONS**

The following conditions apply only to the Physical Damage coverages:

1. **NOTICE**

   As soon as possible after a *loss*, written notice must be given us or our authorized agent stating:

   (a) The identity of the *insured*;
   (b) A description of the auto or *trailer*;
   (c) The time, place and details of the *loss*; and
   (d) The names and addresses of any witnesses.

   In case of theft, the *insured* must promptly notify the police.

2.  **ASSISTANCE AND COOPERATION OF THE *INSURED***

The *insured* will cooperate and assist us, if requested:

(a)  In the investigation of the *loss*;
(b)  In making settlements;
(c)  In the conduct of suits;
(d)  In enforcing any right of subrogation against any legally responsible person or organization;
(e)  At trials and hearings;
(f)  In securing and giving evidence; and
(g)  By obtaining the attendance of witnesses.

3.  **ACTION AGAINST US**

Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of *loss* is filed and the amount of *loss* is determined.

If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.

4.  ***INSURED'S* DUTIES IN EVENT OF LOSS**

In the event of *loss* the *insured* will:

(a)  Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
(b)  File with us, within 91 days after *loss*, his sworn proof of *loss* including all information we may reasonably require.
(c)  At our request, the *insured* will exhibit the damaged property and submit to examination under oath.

5.  **APPRAISAL**

If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of *loss* is filed, request an appraisal of the *loss*. Both parties must agree to the appraisal at the time of dispute. In that event, we and the *insured* will each select a competent and disinterested appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire. We will not waive our rights by any of our acts relating to appraisal.

6.  **PAYMENT OF *LOSS***

We may at our option:

(a)  Pay for the *loss*; or
(b)  Repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

7.  **NO BENEFIT TO BAILEE**

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

8.  **SUBROGATION**

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery, to the extent of our payment against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

9.  **ASSIGNMENT**

With respect to Section III, Physical Damage Coverages, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

## SECTION IV - UNINSURED MOTORIST COVERAGE
### Protection For *You* And *Your* Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorist

UNLESS AMENDED WITH THE STACKED OR NON-STACKED UNINSURED/UNDERINSURED AMENDMENT, YOU ELECTED NOT TO PURCHASE CERTAIN VALUABLE COVERAGE, WHICH WOULD HAVE PROTECTED YOU AND YOUR FAMILY WHEN INVOLVED, IN A COVERED LOSS WITH AN UNINSURED/ UNDERINSURED MOTORIST.

THIS POLICY DOES NOT PROVIDE UNINSURED/UNDERINSURED MOTORISTS BENEFITS.

Uninsured/underinsured motorist benefits are designed to provide protection when *you* or *your* family are involved in an accident with an uninsured/underinsured motorist.

## SECTION V- GENERAL CONDITIONS
### These conditions Apply To all coverages in This Policy

1. **TERRITORY - POLICY PERIOD**

   This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories and possessions, or Canada and while an *owned auto* is being transported between ports thereof.

   Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at *your* address stated in the declarations.

2. **PREMIUM**

   When *you* dispose of, acquire ownership of, or replace a *private passenger, farm* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

3. **CHANGES**

   The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

   We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

   The premium for each auto is based on the information we have in *your* file. *You* agree:

   (a) That we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

   (b) That *you* will cooperate with us in determining if this information is correct and complete.

   (c) That *you* will notify us of any changes in this information.

   Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

4. **ASSIGNMENT**

   Assignment of interest under this policy will not bind us without our consent.

   If *you* die, this policy will cover:

   (a) *Your* surviving spouse;

   (b) The executor or administrator of *your* estate, but only while acting within the scope of his duties;

   (c) Any person having proper temporary custody of the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate; and

   (d) Under the Medical Payments coverage, a person who was a *relative* at the time of *your* death, if a premium is shown on the Policy Declarations for Medical Payments.

5. **CANCELLATION BY THE *INSURED***

   *You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

   However, *you* may not cancel during the first two months immediately following *your* policy's effective date except:

   (a) Upon total destruction of all of the *owned autos*;

   (b) Upon transfer of ownership of all of the *owned autos*;

   (c) If *you* obtained a replacement policy covering an *owned auto* elsewhere; or

   (d) When we notify *you* that the premium charged must be increased to comply with our rate filings or the applicable laws of Florida, *you* have the following options:

   1. Upon receipt of *your* bill *you* may pay the difference in premium and keep the policy as it stands with the corrected premium; or

   2. *You* may cancel this policy within 10 days from the receipt of our notice and receive a refund of any unearned premium; or

   3. *Your* failure to respond timely or pay the additional premium charged will result in the cancellation of *your* policy when all paid premiums are exhausted.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals.

**6.   CANCELLATION BY US**

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective. This notice will be mailed by United States Post Office certificate of mailing.

We will mail this notice:

(a)   10 days in advance if the proposed cancellation is for nonpayment of premium or any of its installments when due;

(b)   45 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals.

Payment or tender of unearned premium is not a condition of cancellation.

**7.   CANCELLATION BY US IS LIMITED**

After this policy has been in effect for 60 days or, if the policy is a renewal, effective immediately, we will not cancel unless:

(a)   *You* do not pay the premiums for this policy or any installment when due to us or our agent; or

(b)   Any *insured* has had his driver's license or motor vehicle registration under suspension or revocation; either:

(i)    During the current policy period; or

(ii)   During the preceding 180 days if this is a new policy; or

(c)   There has been fraud or material misrepresentation under the policy in *your* application or in making a claim.

We will not cancel a new policy during the first 60 days immediately following the effective date of the policy for nonpayment of premium unless the reason for the cancellation is the issuance of a payment for the premium that is dishonored for any reason. If the initial payment on the policy is dishonored, we will not declare the policy void without providing *you* with notice of *your* right to cure the nonpayment as required by Florida law.

Nothing in this section will require us to renew this policy.

**8.   RENEWAL**

We guarantee to renew this policy for *private passenger, farm* or *utility autos* as long as all the following conditions are met:

1.   *You* (or *your* spouse) are at least 50 years old and *you* (or *your* spouse) are a principal operator of an auto insured under this policy. There are no principal or occasional operators under the age of 25.

2.   *You* and all operators of autos insured under this policy must be physically and mentally able to safely operate an auto. We may require an operator to provide certification of this from a doctor acceptable to us.

3.   The autos insured are principally located in a state which has approved the use of this condition, and that state continues to approve the use on this condition.

4.   The representations provided in *your* application for this policy were true.

If these requirements are not met, the guaranteed renewal condition does not apply. We reserve the right to terminate this guaranty in any state in which conditions require that we discontinue writing new and renewal policies for all our *insureds*. Should we choose not to renew, we will mail to *you*, at the address shown in this policy, written notice of our refusal to renew at least 45 days prior to the expiration date. This notice will be mailed by United States Post Office certificate of mailing. The mailing or delivery of this notice will be sufficient proof of notice.

If *you*:

(1)   do not pay the premium as required to renew this policy; or

(2)   have informed us or our agent that *you* wish the policy cancelled or not renewed; or

(3)   do not accept our offer to renew;

it will be construed to mean that *you* have refused our renewal offer and the policy will expire without notice.

If this policy has been in effect for 5 years or more we will not refuse to renew solely because an *insured* was involved in a single traffic accident.

**9.   NON-RENEWAL**

We agree that we will not refuse to renew or continue this policy unless a written notice of our refusal to renew or continue is mailed to *you*, at the address shown in the policy, at least 45 days prior to the expiration notice. This notice will be mailed by United States Post Office certificate of mailing. The mailing or delivery of this notice will be sufficient proof of notice.

**10. MEDIATION OF CLAIMS**

In the event of a claim for *bodily injury* amounting to $10,000 or less, or any property damage claim, either party may demand mediation of the claim, provided that suit has not yet been filed. Only one mediation may be demanded for each claim, unless both parties agree to more than one mediation. Mediation is not binding on either party.

A request for mediation shall be filed with the Department of Financial Services on a form approved by the Department. The request for mediation shall state the reason for the request and the issues in dispute which are to be mediated. The Department of Financial Services will appoint the mediator to conduct the mediation. Each party may once reject the mediator selected by the Department, either originally or after the opposing side has exercised its option to reject a mediator. Each party participating in the mediation must have the authority to make a binding decision. All parties must mediate in good faith.

The cost of the mediation, as set by the Department of Financial Services is shared equally by the parties. Costs incurred by a party in preparing for or attending the mediation are paid by the party incurring that cost.

**11. OTHER INSURANCE**

If other insurance is obtained on *your owned auto*, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

**12. ACTION AGAINST US**

Persons other than the *insured* covered by this policy, may not name us as a defendant prior to first obtaining a judgment against an *insured.*

**13. DIVIDEND PROVISION**

*You* are entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

**14. DECLARATIONS**

By accepting this policy, *you* agree that:

(a) The statements in *your* application and in the declarations are *your* agreements and representations;

(b) This policy is issued in reliance upon the truth of these representations; and

(c) This policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

**15. FRAUD AND MISREPRESENTATION**

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

1. At the time application is made; or
2. At any time during the policy period; or
3. In connection with the presentation or settlement of a claim.

**16. EXAMINATION UNDER OATH (EUO)**

The *insured*, or any other person or organization seeking coverage under this policy must submit to examination under oath by any person named by us when, where and as often as we may reasonably require. This provision includes providing a copy of any documents, forms, records, or materials requested to be provided as part of the EUO request whether the request is made before, during or after the EUO.

**17. TERMS OF POLICY CONFORMED TO STATUTES**

Any terms of this policy in conflict with the statutes of Florida are amended to conform to those statutes.

**18. CHOICE OF LAW**

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Florida.

## SECTION VI- AMENDMENTS AND ENDORSEMENTS

1. SPECIAL ENDORSEMENT UNITED STATES GOVERNMENT EMPLOYEES

A. Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

    1. Motor vehicles owned or leased by the United States Government or any of its agencies, or
    2. Rented motor vehicle used for United States Government business,
    when such use is with the permission of the United States Government. Subject to the limits describe in paragraph B. below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

B. The following limits apply to this coverage:

    1. A $100 deductible applies to each occurrence.
    2. For vehicles described in A.1. above, our liability shall not exceed the lesser of the following:

        (a) The *actual cash value* of the property at the time of the occurrence; or
        (b) The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
        (c) Two months basic pay of the *insured*; or
        (d) The limit of Property Damage liability coverage stated in the declarations.

    3. For vehicles described in A.2. above, our liability shall not exceed the lesser of the following:

        (a) The *actual cash value* of the property at the time of the occurrence; or
        (b) The cost to repair or replace the property, or any of it parts with other of like kind and quality; or
        (c) The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

W. C. E. Robinson
Secretary

O. M. Nicely
President