UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

KERRY ROTH, on behalf of herself and            Case No. 16-62942-Civ-DIMITROULEAS
all others similarly situated,

    Plaintiff,

vs.

GEICO GENERAL INSURANCE
COMPANY,

    Defendant.
_____/

## PLAINTIFF'S AMENDED FIRST SET OF REQUESTS FOR PRODUCTION

COMES NOW, the Plaintiff, KERRY ROTH, on behalf of herself and all others similarly situated, and pursuant to the Federal Rules of Civil Procedure (specifically Rules 26 and 34 of the Federal Rules of Civil Procedure), and requests that the Defendant, GEICO General Insurance Company, respond to the following First Set of Requests for Production of Documents within thirty (30) days after service of the same.

## INSTRUCTIONS

1. Prior to the deadline above and prior to providing requested production the parties should meet and confer and mutually agree on delivery method of records and the digital format(s). If, however, no agreement is reached the requested production must be served on or before the above deadline.

2. All definitions, instructions and rules of construction set forth in Rule 34 of the Federal Rules of Civil Procedure are incorporated herein by reference.

3. This request is intended to cover all items in possession of the Defendant, or subject to its custody and/or control, regardless of location. In complying with these Requests for Production of Documents, you are required to produce all documents specified herein that are in your possession, custody, or control, or are otherwise available to you.

4. If in response to any document demand Defendant has refused to produce a document because of a claim of confidentiality or privilege or for any other reason, Defendant shall set forth in detail the facts or the circumstances upon which Defendant purports to rely. In addition, Defendant is required to produce a privilege log with sufficiently detailed information so as to allow Plaintiff to understand the basis of any asserted claim of privilege.

5. These requests for production are considered to be continuing in nature, and, therefore, Plaintiffs responses shall be supplemented or modified as Plaintiff acquires or discovers further information or documents prior to trial in this case.

## DEFINITIONS

"**Actual cash value**" or "**ACV**" means the replacement cost of an auto or property insured under a policy of the Defendant less depreciation (the decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes) or betterment (the improvement of an auto or property to a value greater than its pre-loss condition) or other formula for ACV in Defendant's policies and procedures in the relevant time period.

"**And**" as well as "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests any information which might otherwise be construed to be outside its scope. The terms "and" and "or" are used interchangeably (rather than relying on the less exact and sometimes more ambiguous term "and/or").

"**Any**" and "**all**" shall be construed to include "each" and "each and every" and vice versa, so as to acquire the broadest meaning possible.

"**Attachment(s)**" means files or data that are physically or logically associated with or embedded into email, and should be identified by mapping to their parent by the Document or Production number. If attachments and embedded files are combined with their parent documents, then "BeginAttach" and "EndAttach" fields listing the unique beginning and end number for each attachment or embedded document must be included.

"**Class**" or "**class members**" means any and all alleged members of the putative class defined in the Complaint.

"**Color**" means that if an original document contains color, the producing party may produce black and white image(s) for each such document. The parties agree that color copies of documents will be produced on an as-needed basis when specified by a party, upon a showing of good cause, and only when the color original is readily accessible. The requesting party will provide a specific Bates range for documents it wishes to be produced in color.

"**Communication**" means or refers to the transmittal of information, facts, or ideas including but not limited to communications in the form of any discussion, conversation, inquiry, negotiation, agreement, understanding, meeting, telephone conversation, letter, correspondence, note, memorandum, e-mail message, telegram, advertisement, or other form of exchange of words, whether oral or written.

"**Complaint**" means Plaintiff's Second Amended Class Action Complaint filed on November 16, 2016.

"**Computer**" and "**computer equipment**" means all data processing equipment including but not limited to central processing units (CPUs), whether contained in a server or free standing computer, laptop, PDA, or similar device that may contain data storage capabilities, irrespective of whether such computing platform, infrastructure, or storage is virtualized, whether that data be structured or unstructured, and including any equipment where computer files (including without limitation, records, documents, logs, and any other contiguous or non-contiguous bit strings), hidden system files or metadata presently reside such as hard disk drives, optical disk drives, removable media, such as floppy disk drives, CD-ROM and DVD drives, Zip drives, Jaz drives, Maxtor drives, or snap drives, data processing cards, computer magnetic tapes, backup tapes, drum and disk storage devices, or any other similar electronic storage media or system of whatever name or description. "Computer or computer equipment" also means all digital image evidence that may be stored on any type of hardware used to store or manipulate electronic images, including but not limited to microfilm, microfiche and their repositories and readers, or design or engineering computer systems, and regardless of any digital image's format, including .jpg, .bmp, or some other advanced or proprietary form of digital image format, such as CAD layered drawings. "Computer or computer equipment" also refers to sources of digital evidence that may not presently be in use by your company, or may have been deleted from your active systems, whether the source is a backup tape or disk, some other data retention system, or some form of disaster recovery system. "Computer or computer equipment" also refers to places where digital evidence may reside that may have been deleted from your active files, and which may not be readily recoverable from a backup medium, such as metadata.

"**Computer system**" refers to free standing servers, computers, and laptops, and also refers to the network infrastructure and computer support systems of the Defendant or subject to the Defendant's possession, custody, or control; such as its subsidiaries, predecessors, successors, assigns, joint ventures, partners, parents, agents, or affiliates (in this country or throughout the world), including but not limited to the following: Defendant's LAN, WAN, or other network systems, regardless of methods of connectivity (e.g., by T1, T3, or optical lines), domains, including PDCs, network OS (such as Novell, Microsoft, UNIX, Citrix, or some other similar type) or protocols, backup, and disaster recovery hardware and media, regardless of the physical location of those electronic storage systems.

Defendant's email servers and any repository of email (including within the inbox, sent box, deleted box, or some similar file of the computers of employees or management), or in any backup form whatsoever, regardless of whether you use Microsoft Exchange, Outlook, Outlook Express, Lotus Notes, or some combination of email management software, or some alternative commercial or proprietary email management software.

Defendant's IS administrative offices, including backup and disaster recovery restoration plans and repositories, data retention plans and repositories, purge plans and repositories, training plans and repositories, and libraries of hardcopy materials of any description (regardless of where located) and online training and operation manuals that have been scanned to disk.

All offsite technology and service bureau support and provisioning systems, including but not limited to cloud or virtualized application, platform, infrastructure, or storage schema, and including without limitation any support, scanning or data conversion support, offsite data storage or archive support schema in connection therewith.

Web hosting and administration services, including intranet and extranet sites, regardless of whether they are now publicly posted or exist in English, or some other language.

"**Correspondence**" means or refers to all written and unwritten but recorded communications, including non-duplicate drafts, versions not sent, and copies that differ only in margin notes or annotations, including memos, letters, analog or digital recordings, voicemail, email, computer files, computer disks, or other correspondence or things sent or received by you to or from any entity, including correspondence or files maintained or exchanged internally within your business or with your employees.

"**Date**" means the exact year, month, and date, if known, or if not known, your best approximation thereof.

"**Describe**" when used in relation to any process, policy, act or event means explain the process, policy, act, or event in complete and reasonable detail, stating the time, date, and location, identifying all persons participating or present, and identifying all documents relating thereto.

"**Document**" or "**documents**" includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, including ESI—stored in any medium from which information can be obtained. Additionally, the word "document" is intended to include all "writings and recordings" and "photographs," as those terms are defined in Rule 1001 of the Federal Rules of Evidence. The word "document" is also intended to include all that within and defined by Federal Rule of Civil Procedure 34(a)(1)(A) and (B), including Comments to the Rule and case law interpreting the rule.

"**Duplicates**" means exact duplicate ESI documents. Only documents where the main document and the attachments are exactly the same will be considered exact duplicates. ESI with differing file names but identical hash values shall not be considered duplicates. Exact duplicate shall mean bit-for-bit identicality with both document content and any associated metadata. Where any such documents have attachments, hash values must be identical for both the document—plus the attachment (including associated metadata), as well as for any attachment (including associated metadata) standing alone.

"**Electronically stored information**" or "ESI" as used herein, means and refers to computer generated information or data, of any kind, stored on computers, file servers, disks, tapes, or other devices or media, or otherwise evidenced by recording on some storage media, whether real virtual, or cloud based. ESI includes any associated Metadata.

"**First party private auto**" or "**FPPA**" means first-party motor vehicle total loss coverage provided by Defendant in Florida in the relevant time period.

"**Her**" or "**his**" means both "his" and "her" and is not limited to the masculine or feminine, but includes both.

"**Identify**," when used with respect to a natural person, means to state the person's full name, present or last known business affiliation and position, home address and past position and business affiliation, if any, with any of the parties herein.

"**Identify**," when used with respect to a company or other business entity, means to state the company's legal name, the names under which it does business, its form (e.g., partnership, corporation, etc.), the address of its principal place of business, and to identify its principal proprietors, officers or directors.

"**Identify**," when used in reference to an event, transaction, or occurrence, means to describe the act in complete and reasonable detail; state the time, date, location; identify all persons participating or present; and identify all documents relating thereto.

"**Include(s)**" and "**including**" means "including, but not limited to;" "includes" means "includes, but not limited to."

"**Media**" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

**"Metadata"** means and refers to data about data, including without limitation, information embedded in a native file or other data that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, which describes the characteristics, origins, usage and validity of the electronic file, as well as information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system. METADATA includes, without limitation, file, application, and system metadata, and includes the following fields (to the extent available): Document number or production number (including the document start and document end numbers). This should use the standard Bates number in accordance with those used in previous productions.

**"Native data format"** means and refers to the format of ESI, whether structured or unstructured, in which it was generated and as used by the producing party in the usual course of its business and in its regularly conducted activities.

**"Person"** means or refers to any natural person, corporation, partnership, association, organization, joint ventures, or other entity of any type or nature.

**"Personal identifying information"** means any data that could potentially identify a specific individual or any information that could be used to distinguish one person from another or any information that could be used on its own or with other information to identify, contact, or locate a single person.

**"Plaintiff"** or **"Plaintiffs"** means KERRY ROTH or any person or entity similarly situated.

**"Policy"** means or refers to any policy, contract, or agreement effecting and evidencing insurance that, unless otherwise specified, includes coverage for first-party motor vehicle total losses in Florida in the relevant time period.

**"Production of paper documents"** means production of paper-based original documents (i.e., documents which were not first generated by a computer, such as hand written memoranda) shall be produced in hard copy manner.

**"Relating to,"** including its various forms such as "relates to," or "relating to" or "concerning" means to consist of, concern, discuss, mention, regard, refer to, reflect, or be in any way logically, factually, or legally connected, directly or indirectly, with the matter described and are intended broadly, but not in a way designed to seek information that is irrelevant, or beyond the scope authorized by Rule 26(b)(1). Accordingly, the terms should be understood and read in their common, dictionary-sense as meaning "to have to do with, to be of importance to, to involve, or to in some manner, direct or indirect, to evidence, define, describe, or explain." Any objection to an interrogatory on the ground that it is overbroad, based solely on the use of one or the other of these terms, is therefore not appropriate.

"**Relevant time periods**" means the five (5) years prior to the date the Complaint was filed in the Federal District Court until the present. Unless otherwise indicated, all DOCUMENT and ESI production and interrogatory requests shall mean for the RELEVANT TIME PERIOD.

"**Sales tax data**" means the actual cash value, the amount of sales tax due on the insured vehicle, and the amount of sales tax actually paid to the insured as calculated by Defendant and/or any agent, employee, vendor, subsidiary, related company or other such entity.

"**Sales tax**" or State and local sales tax", means the mandatory sales tax collected or assessed by the State of Florida and any of its political subdivisions and any Florida county, when a vehicle is leased, purchased or sold.

"**Tag and title fees**" or "**regulatory fees**", sometimes referred to as "DMV fees", means any mandatory fee, other than sales tax, collected or assessed by the State of Florida when a vehicle is leased, purchased or sold and includes, but is not limited to, motor vehicle registration fees (commonly referred to as "licence plate fees" or "tag fees") and motor vehicle title fees (commonly referred to as "title fees" or title transfer fees").

"**You**," "**your**," "**Defendant**," or "GEICO" or "GEICO GENERAL INSURANCE COMPANY" means or refers to Defendant, GEICO GENERAL INSURANCE COMPANY, and its divisions, subsidiaries, related companies, predecessors, and successors, including but not limited to all related corporate entities listed on your Rule 26 disclosures in the instant action and to include all present and former officers, directors, agents, attorneys, employees, and all persons acting or purporting to act on behalf of any of them.

## REQUESTS FOR PRODUCTION

1. Produce the Policy between GEICO and Plaintiff ROTH, including declarations, endorsements, applications and supplements relating to same.

2. Produce a copy of each form policy of automobile insurance policy issued by Defendants in Florida, since January 1, 2011, including a copy of each form of any addendum, amendment or endorsement to the forms, that relate in any way, to the payment or nonpayment of ACV sales tax or tag and title fees on leased vehicle total loss covered claims.

3. Produce GEICO's claim file(s) for Plaintiff ROTH.

4. Produce all correspondence between GEICO and Plaintiff ROTH and correspondence between Plaintiff's agents and GEICO relating to Plaintiff's insurance policy(s).

5. Produce any and all documents, communications, and ESI relating to Plaintiff ROTH.

6. Produce all documents, communications, and ESI regarding when and how Defendant's Policies require payment of the full amount of sales tax and tag and title fees upon payment of ACV for a FPPA covered owned or leased vehicle, regardless of whether that amount is actually incurred.

7

7. Produce all documents, communications, and ESI regarding when and how Defendant's Policies require payment of the full amount of sales tax and tag and title fees upon payment of ACV for a FPPA covered vehicle, when sales tax is actually incurred in the replacement of the vehicle.

8. Produce documents, communications, and ESI that identify your parent or subsidiary or related Geico entities other than the Defendant that write or wrote FPPA in Florida in the relevant time period.

9. Produce all documents, communications, and ESI relating to investigations, complaints, citations, fines, rebukes or penalties from or by municipal, state or federal agencies, including but not limited, to any state government agencies overseeing FPPA auto coverage insurance, regarding your sales taxes and tag and title fee payments to insureds in first-party motor vehicle total loss claims and business practices related thereto.

10. Produce all documents evidencing any communication at any time between any Defendant and the Florida Office of Insurance Regulation addressing whether the Defendant is obligated to pay sales tax or tag and title fees to Florida insureds for the total loss of an insured leased vehicle in the relevant time period.

11. Produce current and past inquiries from and responses to policyholder complaints / notices / inquiries regarding treatment of sales tax and tag and title fees in total loss cases for leased and non leased vehicles.

12. Produce all certificates of authority applied for by you or issued to you to do business in Florida or any other state and to include the identity of employers of adjusters or of entities authorized to adjust claims pursuant to said authority in Florida.

13. Produce all documents, communications, ESI, manuals, guides, instructions, current and past internal operating procedures, or other documents regarding policies and procedures relating to the payment of first-party motor vehicle total losses and sales tax and computation of ACV for owned or leased vehicle related to FPPA coverage.

14. Produce all documents, communications, ESI, manuals, guides, instructions, current and past internal operating procedures, or other documents regarding policies and procedures relating to the payment of first-party motor vehicle total losses and tag and title fees and computation of ACV for owned or leased vehicle related to FPPA coverage.

15. Produce all documents, communications, ESI, manuals, guides, instructions, current and past internal operating procedures, or other documents regarding policies and procedures relating to the payment of sales tax or tag and title fees on first party total loss claims for Florida insureds for the total loss of a leased vehicle under form A-70 FL (03-11), including any emails or other writings in claims and underwriting communications regarding whether and when the Policy requires payment of sales tax or tag and title fees.

16. Produce all emails, claims and underwriting communications regarding whether and when the Policy form A-70 FL (03-11) or any other of Defendant's auto policies in the relevant time frame require(s) payment of sales tax or payment of tag and title fees.

17. Produce all documents, communications, and ESI related to § 626.9743, Fla. Stat. as applied to GEICO policy, payments or practices for payment of sales taxes as to total loss vehicles.

18. Produce all documents, communications, and ESI related to § 626.9743, Fla. Stat. as applied to GEICO policy, payments or practices for paying title fees and license plate fees as to total loss vehicles.

19. Produce all documents, communications, and ESI related to what section of § 626.9743, Fla. Stat. that GEICO utilizes as settlement methods for sales tax payments in total loss vehicles under FPPA coverage in Florida.

20. Produce all documents, communications, and ESI related to claims adjustment and settlement practices, pursuant to § 626.9743, Fla. Stat.

21. Produce all documents, communications, and ESI regarding the history of Defendants policies and procedures regarding when and how it makes sales tax payments as part of total loss claim payments under FPPA coverage in Florida.

22. Produce all documents, communications, and ESI provided to GEICO regarding regulations, directions, advice and interpretations of § 626.9743, Fla. Stat.

23. Produce a copy of all form communication(s) and format of disclosures made by Defendants to policy insureds relating to total loss claims for leased vehicles insured under Florida policies in the relevant time frame that reference sales tax payments or tag and title fee payments as part of total loss claim payments under FPPA coverage in Florida..

24. Produce all documents evidencing training to claim representatives and/or adjusting representatives during the relevant time period relating to coverage and payments for ACV, sales tax or tag and title fees on leased and owned vehicles in total loss claims under FPPA coverage.

25. Produce all documents relating to or evidencing the consideration of, and/or implementation of, the decision of Defendant to pay or not pay Actual Cash Value Sales Tax or tag and title fees on first party total loss covered claims for leased or owned vehicles which are covered by Defendant under Florida policies.  Responsive documents should include all memoranda and communications relating to such decision and all communications to claim representatives and sale representative relating to payment of sales tax and tag and title fees for total loss leased vehicles pursuant to FPPA coverages.

26. Produce all letters and correspondence to Defendant's insureds regarding physical damage to the insured's vehicles that were or may have been a total loss.

27. Produce all letters and correspondence to Defendant's insureds related to determining the amount of your ACV claim payment including sales tax and tag and title fees for total loss owned and leased vehicles pursuant to FPPA coverages.

28. Produce each and every document evidencing or relating to each and every formal or informal complaint or inquiry from insureds who made a first party covered total loss claim on a leased Florida vehicle, and relating to the Defendant's payment of or refusal to pay sales tax or tag and title fees.

29. Produce the market valuation reports for FFPA physical damage total loss claims.

30. Produce the name and contact information of every company or organization that provided a market valuation report for FFPA physical damage total loss claims in Florida during the relevant time period.

31. Produce any agreements or contracts you have with CCC Information Services Inc. or CCC One.

32. Produce the following data (the responsive data is expected to be produced in a spreadsheet or other similar format) for each FFPA physical damage total loss claim:
    a. Claim number or identification,
    b. Name of owner of loss vehicle,
    c. Contact information of owner of loss vehicle,
    d. Name of policyholder,
    e. Policyholder contact information,
    f. Policy number,
    g. Insured name,
    h. Insured contact information,
    i. Any other reference number,
    j. Adjuster ID,
    k. Adjuster name,
    l. Adjuster contact info,
    m. Date claim was submitted,
    n. Date claim was last updated,
    o. Loss location,
    p. Type of loss,
    q. Date of loss,
    r. Loss vehicle information,
    s. Loss vehicle VIN number,
    t. Loss vehicle odometer at time of loss,
    u. Payment(s),
    v. Vehicle's actual cash value,
    w. Who determine the actual cash value,
    x. Actual cash value data,
    y. Appraiser,

      z. Sales tax estimate,
     aa. Sales tax paid,
     bb. Sales tax calculation data,
     cc. Partial or prior payments,
     dd. Title fee paid,
     ee. License plate fee paid,
     ff. Any other state and regulatory fees paid,
     gg. Comprehensive deductible,
     hh. Net total paid,
     ii. Claims payment data,
     jj. Data stored in an ACV total loss offer including all data fields (including all of the surrogate key information, as well as all data contained in data allocation fields),
     kk. And other claims data used in documenting and determining FPPA total loss claims in the relevant time period.

33. Produce the data fields, and field definitions for the FFPA physical damage total loss claims and title fees and license plate fees including data fields and definitions for responsive claims data.

34. Produce all data or other fields and identify same that Defendant maintains for first party total loss claims.

35. Produce all data or other fields that Defendant maintains relating to sales tax paid or estimated on insured total loss vehicles with the data to include various surrogate keys to identify the details about the total loss offer including the Actual Cash Value pre total loss amount, total loss settlement USD amount, and other related or relevant information. Each surrogate key in this fact table can be joined with surrogate keys in various dimension tables and should be identified and described.

36. Produce all data or other fields that Defendant maintains that describe or contain information as to the reasons for payments and other information. This data may identify tax payments, or assist (by process of elimination) with the identification of tax payments.

37. Produce the following metadata relating to any electronically stored information (ESI) produced or provided (This metadata is not burdensome to produce. The most basic production tools and software for producing ESI in discovery easily provides this requested metadata information as a matter of course without any additional time or expense):
    a. Beginning Production Number
    b. Ending Production Number
    c. Beginning Attachment Range
    d. Ending Attachment Range
    e. Custodian
    f. Original Location Path
    g. Email Folder Path
    h. Document Type
    i. Author

      j. File Name
      k. File Size
      l. MD5 Hash
      m. Date Last Modified
      n. Date Created
      o. Date Last Accessed
      p. Date Sent
      q. Date Received
      r. Recipients
      s. Copyees
      t. Blind Copyees
      u. Email Subject
      v. Path to Native File

38. Produce all documents, communications, and ESI that identify or list your insured customers with first-party motor vehicle total losses in the last five (5) years.

39. Produce all documents, communications, and ESI that identify and describe the Sales tax data and relevant payouts of first-party motor vehicle total losses.

40. Produce all documents, communications, and ESI concerning prior lawsuits, in the relevant time period, filed against you concerning sales taxes payments or tag and title fee payments to insured in first-party motor vehicle total loss settlements.

41. Produce all documents, communications, and ESI relating to complaints made by customers (or their attorneys) relating to sales taxes payments (or lack thereof) or tag and title fee payments (or lack thereof) to insured in first-party motor vehicle total loss

42. Produce all documents, communications, and ESI related to your practice of paying title fees and license plate fees included as part of the cost of buying a comparable vehicle in total loss settlements.

43. Produce all documents, communications, and ESI that show GEICO policy of paying the actual cash value of the covered vehicle.

44. Apart from the policy, produce all documents, communications, and ESI, GEICO's practice of paying the actual cash value of the covered vehicle.

45. Produce any demands or requests to policyholders to repay excess of actual cash value proceeds paid in excess of your payment made based on the estimate(s) of the ACV or as to what it would cost to buy a vehicle comparable to the covered vehicle.

46. Produce all documents, communications, and ESI identifying other states where GEICO withholds sales tax payments in FPPA property damage settlements in the states where a statute or regulation specifically permits it to do so.

47. Produce all documents, communications, and ESI identifying other states where GEICO withholds tag and title fee payments in FPPA property damage settlements in the states where a statute or regulation specifically permits it to do so.

48. Produce all documents, communications, and ESI identifying other states where GEICO pays sales tax upfront with the ACV settlement in the remaining states and the District of Columbia that have a sales tax but no statute or regulation dictating how sales tax is to be calculated.

49. Produce all documents, communications, and ESI related to practices of other insurers including any and all insurance companies related to Geico in Florida regarding payments of sales tax upfront in first party total loss vehicles.

50. Produce all documents, communications, and ESI related to practices of other insurers including any and all insurance companies related to Geico in Florida regarding payments of tag and title fees upfront in first party total loss vehicles.

51. Produce all claims or other documents that show or support the number of putative class claims that make up this class action lawsuit.

52. Provide data field lists and definitions for Defendant's data systems for first party total loss claims.

53. Produce claims, payee data for payments relating to the claims that make up the putative class, and sales tax calculations data for first party total loss vehicles.

54. Produce claims data, including actual cash value data for all claims related to first party total loss vehicles.

55. Produce payee data for payments relating to the claims that make up the putative class.

56. Produce sales tax calculations data for all claims related to the payment in first party total loss vehicle claims.

57. Produce the data showing the actual cash value for claims making up the putative class.

58. Produce data and analysis related to the actual cash value, the amount of sales tax due on the insured vehicle, and the amount of sales tax actually paid to insureds for both the one year period before and the one year period after the lawsuit was filed.

59. Produce all sales tax data claims and payment information and data for the putative class claims

60. Produce all insured vehicle sales tax calculations made for every first party total loss claim (simply the multiplication of the actual cash value by the applicable sales tax percentages).

61. Produce all payee data, payment request data, payment approval data, payment invoice data, and payment limits data for FPPA claims including payments to the insured or lienholders to include actual cash value, title, license plate, branch processing, and sales tax minus deductible and all other FPPA fees.

62. Produce a claim list of all reinspections for FPPA physical damage total loss claims in the Class Period regardless of whether a reinspector found an exception, and regardless of whether a reinspector believed the claim should have been handled differently and produce the number of claim/reinspection files to be randomly selected and timing of production.

63. Produce and identify the source of re-inspection data purporting to question the reliability of their original vehicle valuations.

64. Produce all exhibits that you propose or intend to introduce at trial.

65. Produce all documents, communications, and ESI identifying any expert that you propose to call at trial or use for certification issues.

66. Produce all documents, communications, and ESI supporting any affirmative defense you assert or may assert in this action.

67. Produce all documents evidencing or supporting any assertion that the Plaintiff's policy does not require that the Defendant pay sales tax or tag and title fees in the case of a total loss of an insured leased vehicle.

68. Produce all documents, communications, and ESI on https://www.geico.com that the general public would have the ability to see that is any way related to total loss payments of actual cash value and state fees and taxes for the past 10 years.

Date: February 23, 2017

Respectfully Submitted,

 /s/ Edmund A. Normand
Edmund A. Normand
FBN: 0865590
Normand Law PLLC
62 W. Colonial Drive, Suite 209
Orlando, FL 32801
Telephone: 407-603-6031
Fax: 888-974-2175
Ed@ednormand.com
Firm@ednormand.com
*Attorney for Plaintiff*

Christopher J. Lynch
FBN 331041
Christopher J. Lynch, P.A.
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Fax: (305) 443-6204
Clynch@hunterlynchlaw.com
Lmartinez@hunterlynchaw.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing was served upon all attorneys and parties of record listed in the attached Service List via electronic mail on this the 23rd day of February, 2017.

    /s/ Edmund A. Normand
Edmund A. Normand
FBN: 0865590
Normand Law PLLC
62 W. Colonial Drive Suite 209
Orlando, FL 32801
Telephone: 407-603-6031
Fax: 888-974-2175
Ed@ednormand.com
Firm@ednormand.com
*Attorney for Plaintiff*

Christopher J. Lynch
FBN 331041
Christopher J. Lynch, P.A.
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Fax: (305) 443-6204
Clynch@hunterlynchlaw.com
Lmartinez@hunterlynchaw.com
*Attorney for Plaintiff*

SERVICE LIST

| | |
|---|---|
| Amelia Toy Rudolph | Kymberly Kochis (*pro hac vice*) |
| Florida Bar No. 57015 | Alexander Fuchs (*pro hac vice*) |
| 999 Peachtree Street, N.E. | Sutherland Asbill & Brennan LLP |
| Suite 2300 | The Grace Building, 40th Floor |
| Atlanta, Georgia 30309 | 1114 Avenue of the Americas |
| Tel: (404) 853-8000 | New York, NY 10036 |
| Fax: (404) 853-8806 | Telephone: (212) 389-5068 |
| amelia.rudolph@sutherland.com | Facsimile: (212) 389-5099 |
| *Attorney for Defendants* | kymberly.kochis@sutherland.com |
| | alex.fuchs@sutherland.com |
| | *Attorneys for Defendants* |