**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**Case No. 16-62942-Civ-DIMITROULEAS / SNOW**

KERRY ROTH, on behalf of herself and
all others similarly situated,

      Plaintiff,

v.

GEICO GENERAL INSURANCE
COMPANY,

      Defendant.

---

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
AND INCORPORATED MEMORANDUM OF LAW**

---

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ...................................................................................3

    A.   Florida Insureds Are Entitled to Payment of Replacement Costs Such as Mandatory Taxes and Fees Under Their Total Loss Policies with GEICO General........................3

    B.   Defendant's Insurance Policies Treat Owned and Lease Vehicles the Same, and Set Actual Cash Value for Total Loss of Each Vehicle as Its Replacement Cost. ........4

    C.   The Insurance Policies Applicable to Ms. Roth and the Members of the Putative Class Are Identical in All Material Respects. ................................................5

    D.   Despite Policy Language that Treats Owned and Leased Vehicles Identically for Total Loss Claims, GEICO General *Always* Pays TLVV Sales Tax on *Owned* Total Losses but *Never* Pays TLVV Sales Tax on *Leased* Total Losses. ......................6

    E.   Leased Vehicle Total Loss Claims Are Ascertainable. .................................................8

    F.   Breach of Contract for Failure to Pay Sales Tax Damages Will Be Determined By Formula. ...........................................................................................9

    G.   GEICO General Also Breached Its Insurance Contracts with Ms. Roth and the Putative Class Members By Failing to Pay Title Fees on Total Loss Leased Vehicles...........................................................................................10

III.    THE PROPOSED CLASS .....................................................................................11

IV.     THE CLASS REPRESENTATIVE ........................................................................11

V.      THE COURT SHOULD CERTIFY PLAINTIFF'S PROPOSED CLASS ...................12

    A.   The Legal Standard for Class Certification. ................................................................12

    B.   The Class Meets All of the Requirements of Fed. R. Civ. 23(a). ...............................13

        1.   The Class is So Numerous that Joinder of All Members is Impracticable. ...........13

        2.   There Are Questions of Law or Fact Common to the Class. ................................13

        3.   The Claims or Defenses of the Representative Parties Are Typical of the Claims or Defenses of the Putative Class. ..........................................................15

4.   The Representative Parties will Fairly and Adequately Protect the Interests of the Class. ........................................................................................................16

C.   The Putative Class Should Be Certified Pursuant to Fed. R. Civ. P. 23(b)(3). ..........16

1.   Questions of Law and Fact Common to Class Members Predominate Over Any Questions Affecting Only Individual Members. ...........................................16

2.   A Class Action is the Superior Method of Adjudication. .....................................18

(a)   The Class Members' Interests Are Supported By Class Certification, Not By Individually Controlling the Prosecution or Defense of Separate Small Claims Actions. ...............................................................................................19

(b)   This is the First Litigation Concerning this Controversy As To Leased Vehicles By or Against Class Members. ........................................................19

(c)   Concentrating the Litigation of the Claims in this Forum is Desirable. ..........19

(d)   This Class Action is Manageable. ..................................................................20

VI.   CONCLUSION ..............................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.,* 321 F.R.D. 677 (M.D. Fla. 2017) ........................................................................................................................13

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688 (S.D. Fla. 2017)  15

*Anderson v. Boeing Co.*, No. 02 CV 0196 CVE FHM, 2006 WL 2990383 (N.D. Okla. Oct. 18, 2006) ........................................................................................................................8

*Bastian et al. v. USAA Casualty Insurance Company et al.*, No. 3:13-cv-01454-TJC-MCR (M.D. Fla) ........................................................................................................................2, 9

*Bowe v. Pub. Storage*, 318 F.R.D. 160 (S.D. Fla. 2015)  ...................................................13, 16

*Burton v. Mountain W. Farm Bureau Mut. Ins. Co.,* 214 F.R.D. 598 (D. Mont. 2003) ...14, 17

*Cty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659 (S.D. Fla. 2010) ......................20

*City of St. Petersburg v. Total Containment, Inc.,* 265 F.R.D. 630 (S.D. Fla. 2010) ............18

*Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546 (11th Cir. 1986)  ...........................13, 17

*Eastwood v. Southern Farm Bureau Case. Ins. Co.,* 291 F.R.D. 273 (2013) ..................15, 17

*Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 F. App'x 930 (11th Cir. 2016) ...........................18

*Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir. 1997) ...........................16, 17

*Johnson v. Midland Credit Mgmt. Inc.*, No. 1:05 CV 1094, 2012 WL 5996391 (N.D. Ohio Nov. 29, 2012) ........................................................................................................................8

*Jones v. Jeld-Wen, Inc.,* 250 F.R.D. 685 (S.D. Fla. 2008) .....................................................18

*Leszczynski v. Allianz Ins.,* 176 F.R.D. 659 (S.D. Fla. 1997)  .....................................14, 17, 19

*Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504 (S.D. Fla. 2013) ..............................................20

*Payne v. Travenol Lab., Inc.,* 565 F.2d 895 (5th Cir. 1979) ..................................................12

*Piazza v. Ebsco Indus., Inc.,* 273 F.3d 1341 (11th Cir. 2001)  ..............................................15

*Powers v. Govt. Employees Ins. Co.,* 192 F.R.D. 313 (S.D. Fla. 1998)  ..........................14, 17

*Prado-Steiman v. Bush*, 221 F.3d 1266 (11th Cir. 2000)  ......................................................12

*Ramirez v. Fid. Nat. Title Ins. Co.*, No. CV-09-00230-TUC-JGZ, 2013 WL 5493023 (D. Ariz. Sept. 11, 2013) ........................................................................................................................8

*Sos v. State Farm Mut. Auto. Ins. Co.*, No. 6:17-cv-00890-PGB-KRS (M.D. Fla.).................2

*Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67 (E.D.N.Y. 2004) .........................15, 17

*Sullivan v. GEICO General Indemnity Co.*, No. 6:17-cv-891-PGB-KRS (M.D. Fla.) ...........19

*Thompson v. State Farm Fire & Cas. Co.*, No. 5:14-CV-32 (MTT), 2016 WL 951537 (M.D.
    Ga. Mar. 9, 2016), *reconsideration denied,* No. 5:14-CV-32 (MTT), 2016 WL 2930958
    (M.D. Ga. May 19, 2016) .....................................................................................15, 17

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) .................................................13

*Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566 (11th Cir. 1992) .........12

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................................13

*Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350 (11th Cir. 2009) ...................................13, 15

## **STATUTES**

Fla. Stat. 319.32 ......................................................................................................................10

Fla. Stat. 319.34 ......................................................................................................................10

## **RULES**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

S.D.F.L. Local Rule 23.1 .................................................................................................. *passim*

Plaintiff Kerry Roth ("Ms. Roth" or "Plaintiff") files this Motion for Class Certification and Incorporated Memorandum of Law, respectfully stating as follows:[1]

## I.    **INTRODUCTION**

This case is ideal for class treatment.  It involves a straightforward breach of contract claim arising out of uniform insurance policy language contained within identical policies applicable to Plaintiff and each member of the putative class.  In sum, Defendant GEICO General Insurance Company ("GEICO General" or "Defendant") breached its private passenger auto ("PPA") insurance policies covering "total loss claims" for leased vehicles -- which require GEICO General to pay the full "replacement cost" to insureds suffering a total loss of their leased vehicle -- by failing to pay the costs of (1) sales taxes and (2) title transfer fees ("title fees") incurred on the replacement of leased vehicles which were a total loss.

The insurance policies covering Plaintiff's and all putative class members' total loss claims (the "Policies") have identical material terms.  The Policies require GEICO General to pay "actual cash value" on total losses.  The Policies define "actual cash value" as "the **replacement cost** of the auto or property less depreciation or betterment." (Ex. A, Policy form, at 12, emphasis added.)

---

[1] On December 22, 2017, Plaintiff filed a Motion to Amend the Scheduling Order or, in the Alternative, for Extension of Time to File Motion for Class Certification because Defendant had not yet produced key data and documents despite Plaintiff's repeated requests. (*See* Doc. 41.) The Court has not yet ruled on this Motion, and Plaintiff therefore files the instant Motion for Class Certification consistent with the deadlines set forth in the operative Scheduling Order. (*See* Doc. 31.) Concurrent with the filing of this Motion, Plaintiff is also filing a Motion for Leave to file a Supplemental Memorandum in support of class certification in order to bring to the Court's attention key data and documents once they are obtained in subsequent discovery.  Although Plaintiff believes the Court can and should certify this class on the current record, should the Court wish to have complete discovery before making a certification determination, Plaintiff would respectfully request postponement of such determination pending the completion of discovery. *See* Local Rule 23.1(c) (the Court "may order postponement of the [class certification] determination pending discovery or such other preliminary procedures as appear appropriate and necessary in the circumstances").

Because sales tax and title fees are mandatory costs of the purchase or lease of any replacement vehicle following a total loss, such fees are part of the "replacement cost" of the insured vehicle and must be paid under the clear terms of the policy.[2]  Indeed, it is undisputed that GEICO General (1) pays sales tax based on the adjusted total loss vehicle value ("TLVV Sales Tax")[3] on total loss claims for owned (vs. leased) vehicles;[4] (2) has represented, through its Regional Office shared with affiliates, to the Florida Office of Insurance Regulation that GEICO pays sales tax and title fees under the same policy language as Ms. Roth's policy because such taxes and fees "are mandatory fees involved with the purchase of the vehicle;"[5] (3) publishes, through its "Claim Center" website (geico.com) that it pays all "applicable state fees and taxes" on total loss claims;[6] and (4) ██████ ███████████████████████████████████████

---

[2] This case is strikingly similar to *Sos v. State Farm Mut. Auto. Ins. Co*., No. 6:17-cv-00890-PGB-KRS (M.D. Fla.) (putative Florida and nationwide class action against State Farm for failure to pay *sales tax on leased vehicle total loss claims*, based on the definition of "actual cash value," in which State Farm *admitted liability for State Farm insureds in Florida -- i.e., that it owed TLVV sales tax and title fees for leased vehicle total loss claims*); and *Bastian et al. v. USAA Casualty Insurance Company et al.*, No. 3:13-cv-01454-TJC-MCR (M.D. Fla.) (class action in which USAA Casualty Insurance Company settled post-certification with a requirement that USAA *pay full "actual cash value" sales tax* (plus eight percent to cover prejudgment interest) *to all leased vehicle* and owned vehicle *total loss claimants*).

[3] TLVV Sales Tax is the sales tax applied by GEICO General on first-party owned vehicle total loss claims.  It is determined by GEICO General by applying the applicable six percent state sales tax (plus any applicable local discretionary sales tax) to the adjusted vehicle value of the total loss vehicle.  The TLVV is designed to apply the sales tax that would be paid on the replacement and purchase of a total loss vehicle with another vehicle of the same value.  (Ex. E, McCatharen at 9.)

[4] (Ex. B, Baer GEICO General Corp. Rep. Dep. at 57 to 58 ████████████████████ ████████████)

[5] (Ex. C, Letter of 12/23/13 from GEICO Assistant Vice President Carl A. Tims to Michael Hrica, Florida Office of Insurance Regulation (mistakenly identified in letter as Florida Department of Insurance).)

[6] (Ex. D, GEICO Claims Center publication: "Car Is Totaled: Learn About The Total Loss Process" (www.geico.com/claims/claimsprocess/total-loss-process/) (last visited 10/5/17) ("If your policy covers a total loss, GEICO will:  pay the actual cash value of the vehicle (plus applicable state fees and taxes) less any deductible. . . .")

████████[7] Yet, inexplicably, Defendant refused to pay replacement TLVV Sales Tax and title fees to Ms. Roth and other putative class members on their *leased* vehicle total loss covered claims.

On this record, certification of a class of leased vehicle insureds for whom GEICO General failed to pay total loss vehicle replacement costs (*i.e.*, mandatory taxes and fees) as required under the insurance policy makes good sense.  The value of individual claims is small, and resolving them on an individual basis would be inefficient and unfair to individual insureds who lack resources commensurate to GEICO General.  A class action is a far superior mechanism for resolving their uniform claims, which involve common questions of contract interpretation and which will be proven through common proof.  Ms. Roth's breach of contract claim is typical of the claims of the putative class members, and class membership is easily ascertainable from GEICO General's own records.  Class certification is the proper, and, indeed, the best mechanism for making Ms. Roth and the putative class members whole for the losses they have suffered due to GEICO General's uniform breach of contract.

## II.   FACTUAL BACKGROUND

### A.   Florida Insureds Are Entitled to Payment of Replacement Costs Such As Mandatory Taxes and Fees Under Their Total Loss Policies with GEICO General.

Floridians who have valid auto insurance with GEICO General deserve the benefit of their bargain.  This lawsuit seeks to remedy the breaches of contract by GEICO General whereby insureds with leased vehicle total loss claims are provided *less coverage* than insureds with owned vehicle total loss claims.  This reduction in coverage is arbitrary and is not based on any difference in insurance policy terms, a lower premium, or any increased risk associated with leased vehicle

---

[7] (Ex. B, Baer GEICO General Corp. Rep. Dep. at 17-18 (████████████████████████
████████████████████████████████████████████
████████████████████████████

insureds as opposed to owned vehicle insureds. (Ex. G, Erickson Decl. at ¶¶ 20-21 (premiums and policy terms are the same for leased vs owned vehicles); Ex. E, McCatharen at 5-9 (leased vehicles have lower risk).)  To the contrary, the Policies provide that leased and owned vehicles are treated the same, and the premiums and underwriting auto policies for leased and owned vehicles are the same.  (Ex. G, Erickson Decl. at ¶¶ 12, 15-17, 20-21.)  Moreover, the risk of loss on insured leased vehicles is actually *less* than the risk of loss on insured owned vehicles.  (Ex. E, McCatharen Decl. at 5-9.)  Despite identical policy terms, identical premiums, and lower risk associated with leased vehicles, ███████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████

Likewise, Defendant fails to pay title fees entirely, which are also a mandatory cost for the replacement of any totaled vehicle, including a leased vehicle.

These failures are wrong, and they violate the insurance contract entered into by GEICO General and its insureds.  This is a common violation with a common resolution across the putative class.  The common breach results in a small enough loss to deter insureds from pursuing justice on an individual basis because the transactional costs of litigation exceed the value of each claim.

**B.      Defendant's Insurance Policies Treat Owned and Leased Vehicles the Same, and Set Actual Cash Value for the Total Loss of Each Vehicle as Its Replacement Cost.**

The Policies for Plaintiff and every putative class member provide that a "leased" vehicle insured under the policy is considered an "owned auto" for purposes of physical damage coverage. (Ex. A, Policy Form at 13-14 ("owned auto [is] [a]ny vehicle described in this policy for which a specific premium charge indicates there is physical damage coverage").)[8]

---

[8] Although the policies do offer one coverage for "owned autos" and a different coverage for "non-owned autos," there is no difference between leased and owned vehicles pursuant to the owned

The Policies define "loss" as "direct and accidental loss of or damage to… [a]n owned or non-owned auto, including its equipment," and apply this definition to both collision and comprehensive coverage. (*Id.* at 13.)  The Policies also set the "limit" of liability as "actual cash value of the property at the time of the loss." (*Id.* at 15.)  The Policies in turn define "actual cash value" as "the replacement cost of the auto or property less depreciation or betterment." (*Id.* at 12.)

## C.    The Insurance Policies Applicable to Ms. Roth and the Members of the Putative Class Are Identical in All Material Respects.

Ms. Roth's insurance policy with GEICO General was known as a Form A70 policy.  (*See, e.g.,* Ex. B, Baer Dep. at 11-12.)[9]  The only insurance policy forms used during the proposed class period were Form A70 and Form A30.  (Ex. G, Erickson Decl. at ¶ 14.)[10]  Both of these GEICO form policies contain identical contract language with respect to all material issues raised in this lawsuit, including the definition of "actual cash value" for a total loss vehicle. (Ex. B, Baer at 41 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *compare generally* Ex. A, Form A70 Policy at 12-15, *with* Ex. H, Form A30 Policy at 12-15.)  Therefore, both GEICO General and every putative class member were subject to identical policy language.  (Ex. G, Erickson Decl. at ¶ 14.)  As such, the proper interpretation of this identical policy language is a common issue for all members of the putative class.

---

auto definition for physical damage coverage.  (Ex. A, Policy Form at 13-14.)  If Defendant had intended to offer different coverage between leased and owned vehicles, it certainly could have set that out within the Policies.  It did not.

[9] Matthew Baer was one of the witnesses designated by GEICO General to testify as its corporate representative pursuant to Fed. R. Civ. P. 30(b)(6).

[10] George Erickson is an expert in the insurance industry retained by Plaintiff in this litigation.

**D.    Despite Policy Language that Treats Owned and Leased Vehicles Identically for Total Loss Claims, GEICO General *Always* Pays TLVV Sales Tax on *Owned* Total Losses but *Never* Pays TLVV Sales Tax on *Leased* Total Losses.**

The TLVV Sales Tax is calculated by applying the applicable state and local sales tax to the value of the total loss vehicle.[11]  (*See* Ex. E, McCatharen Decl. at 9.)  Payment of TLVV Sales Tax as part of the replacement cost of the vehicle makes sense because it covers the cost of sales tax that would be due to replace the insured total loss vehicle with another vehicle of the same value.  (*Id.*) ███████████████████████████████████████

███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████[12] Under these procedures, Defendant appears to pay no sales tax on total loss leased vehicles in Florida.  Defendant's Auto Damage Adjuster William Dwyer (who adjusted Ms. Roth's claim) ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████ In fact, GEICO General's Auto Damage Director and corporate representative Matthew Baer testified that

---

[11] State sales tax of six (6) percent is part of the cost of every vehicle replacement.  A local discretionary sales tax of up to 1.5 percent may also apply, depending on the county, to the first $5,000.00 of the vehicle value.  (Ex. I, Harris Dep. at 15.)  Assuming a total loss vehicle is valued at $5,000.00 in a county with a one (1) percent local sales tax, the state and local sales tax of seven (7) percent (six percent state and one percent local) on the $5,000.00 vehicle would be $350.00.

[12] Melinda West was another witness designated by GEICO General to testify as its corporate representative pursuant to Fed. R. Civ. P. 30(b)(6).

███████████████████████████████████████████████████

████████████████████████████████████████████

Another  GEICO  General  corporate  representative,  Melinda  West,  testified  that

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████ ██████

███████████████████████████████████████████████████

███████████████████████ █████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ █

---

[13] Defendant's purported ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

[14] So even using the internal GEICO ████████████████████

███████████████████████████████████████████████████

██████████████████████

[15] GEICO General's Auto Damage Adjuster for Ms. Roth, William Dwyer, ████████████

████████████████████████████████████████████████

[16] Randall McCatharen is Plaintiff's retained expert witness on the subjects of leasing agreements and leasing industry standards and data.

7

E.      **Leased Vehicle Total Loss Claims Are Easily Ascertainable.**

Defendant admits that it ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████ *see also,* Ex. E, McCatharen Decl. at 9) (showing Defendant

pays TLVV Sales Tax on owned vehicle total loss claims).)  Leased vehicle total loss claims can

be easily ascertained by identifying in GEICO General's own claims data those claims for which

TLVV Sales Tax (of at least six percent in state sales tax) was not paid.  (*Id.;* Ex. F, Martin Decl.

at ¶¶ 9, 11, 14.)

Plaintiff's economics and statistics expert Jeffrey Martin analyzed claims data for over

69,000 claims that were recently produced by Defendant, and identified ████████████████

██████████████████████████████████████████████████████████ According to

GEICO General's practices and procedures, ██████████████████████████████████████

████████████████████████████████

Martin identified ████████████████████████████████████████████████████

█████████████████████████ (the minimum TLVV Sales Tax). █████████████████

████████████████████████████████████████████████████████████████████

██████.[17]  (Ex. F, Martin Decl. at ¶¶ 10, 13.)  Moreover, ███████████████████

---

[17] *See Ramirez v. Fid. Nat. Title Ins. Co.*, No. CV-09-00230-TUC-JGZ, 2013 WL 5493023, at *6 n.7 (D. Ariz. Sept. 11, 2013) ("Because human error necessarily occurs any time a large amount of information is processed or sorted, the types of inaccuracies identified by Fidelity are likely inherent in class membership identification and are not a logical basis for decertifying a class based on a lack of commonality."); *Johnson v. Midland Credit Mgmt. Inc.*, No. 1:05 CV 1094, 2012 WL 5996391, at *12 (N.D. Ohio Nov. 29, 2012) ("The class does not need to be perfectly identified, otherwise no class which involved potential human error could ever be created;" and "[t]herefore, the court finds that the class could still be definite enough, even accounting for human error, and that plaintiff has shown an administratively feasible way to identify putative class members."); *Anderson v. Boeing Co.*, No. 02 CV 0196 CVE FHM, 2006 WL 2990383, at *11 (N.D. Okla. Oct. 18, 2006) ("In any form of data - electronic or paper - there is always the potential for human error.

██████████████████████████████. (*Id.* at ¶ 13.)  Plaintiff is requesting more information for those claims and will supplement her briefing with the results of those requests.  ██████████

████████████████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████ Plaintiff just received this data, is in the process of confirming that those total loss payments are proper TLVV Sales Tax payments for owned vehicles, and will provide the Court with her findings.  ███████████████████

████████████████████████████████████████████████████████

██████. (Ex. E, McCatharen Decl. at 10.)

## F.     Breach of Contract for Failure to Pay Sales Tax Damages Will Be Determined By Formula.

Damages for each putative class member are the formulaic difference between TLVV Sales Tax that should have been paid under the Policies and the amount of sales tax that was paid, if any. Defendant's claims data enables the determination of such damages by this simple formula.  (Ex. F, Martin Decl. at ¶ 11.)

If the Court were to determine that the insurance Policies require a different method of determining unpaid sales tax, Plaintiff believes that all of the information necessary for such determinations exists in the data files of Defendant.  Even if the Court determined that a file-by-file review was needed to determine sales tax, such a file-by-file review could easily be determined for the 3,606 claims.  (*Compare, e.g., Bastian et al. v. USAA Casualty Insurance Company et al.*,

---

Merely pointing out that some overtime group data is incomplete and contains errors does not automatically mean that the data is unfit for statistical analysis.").

No. 3:13-cv-01454-TJC-MCR (M.D. Fla) (class action settlement in which Defendants agreed to file-by-file review of *over 25,000 claim files* to determine if sales tax due was on total loss claims).

**G.      GEICO General Also Breached Its Insurance Contracts with Ms. Roth and the Putative Class Members By Failing to Pay Title Fees on Total Loss Leased Vehicles.**

The ███ total loss leased vehicle insureds who were not paid any sales tax also were not paid title fees.  These title fees likewise are mandatory fees for the replacement of any total loss vehicle.  Florida Statute 319.34 makes it illegal to use or operate a motor vehicle without a valid certificate of title.  When an insured replaces a total loss vehicle, he or she is required to transfer the title for the replacement vehicle to the insured's name.  (Ex. L, Declaration of Karen Matera at ¶¶ 13-15.) [18]  The cost of title transfer is therefore part of the cost to replace a total loss vehicle.  It is a mandatory fee imposed by Florida law, part of replacement costs, and required to be paid by GEICO General under it insurance policies.

If an insured replaces a total loss vehicle with a purchased vehicle, the cost to transfer title to the purchased vehicle is, at minimum, $75.25.  *See* Fla. Stat. 319.32; (*see also* Ex. L, Matera Decl. ¶ 14.)  If an insured replaces a total loss vehicle with a leased vehicle, the cost to transfer title to a leased vehicle is, at minimum, $54.25.  (*Id.*)  Because title transfer fees are mandatory fees and costs that must be incurred on the replacement of any total loss vehicle, including a leased vehicle, such fees are part of actual cash value and must be paid under the Policies.  (Ex. A, Policy at 12.)

The interpretation of the insurance policy as to title transfer fees is a common issue across the putative class (including Ms. Roth).  ██████████████████████████
██████████████████████████████████████  The putative class members

---

[18] Karen Materia is Plaintiff's retained expert relating to the issue of title transfer fees.

10

affected by this breach are leased vehicle insureds, who are ascertainable in the manner set out in Section II.E., *supra*.

The calculation of damages for unpaid title fees is a simple formula:  $75.25 for each total loss claim.[19]  (*See* Ex. L, Matera Decl at ¶14; Ex. I, Harris Dep. at 30; Ex. F, Martin Decl. at ¶ 12.)

## III.   THE PROPOSED CLASS

Based on GEICO General's uniform breach of contract, Plaintiff seeks to recover damages on a class-wide basis.  Plaintiff seeks certification of the following class:

> All persons insured by Defendant under a Florida insurance policy for PPA physical damage who suffered a first-party total loss of a covered leased vehicle at any time during the 5 years prior to the filing of this lawsuit, whose claim was adjusted by Defendant as a total loss claim, whose claim resulted in payment by Defendant of a covered claim, and who was not paid the full TLVV Sales Tax or title transfer fees.

The Class is substantially the same as the proposed Class A in the Second Amended Complaint at 6-7 (Doc. Nos. 1-2, at 91-92) but replaces the more general "state and local regulatory fees" with "title transfer fees."

## IV.   THE CLASS REPRESENTATIVE

Plaintiff Roth has standing to bring her claim as a putative class representative because she suffered an injury-in-fact caused by Defendant's breach of contract for failure to include sales tax and title fees in the actual cash value replacement cost determination of her total loss leased claim. Ms. Roth leased a vehicle for which she paid a premium, and that vehicle was insured by Defendant's auto insurance policy.  (See Doc. 1 ¶ 8-9; Ex. A, Policy.)

---

[19] The Court could choose to require GEICO General to pay $54.25, which is the amount it would cost to transfer title of a replacement vehicle that is a leased vehicle, as this would be the *minimum* amount it would cost to replace a total loss vehicle (leased or owned).  (Ex. L, Matera Decl. at ¶¶ 14-15.)  But because more vehicles are purchased than leased, Plaintiff believes the reasonable amount is $75.25, which is the minimum cost to transfer title purchased replacement vehicle.  (*Id.*)

On June 18, 2016, Ms. Roth was involved in a motor vehicle accident and made a covered claim, after which Defendant determined her vehicle to be a total loss.   (*Id*. at ¶ 10-11.) Notwithstanding its contractual obligation to pay the full actual cash value of the total loss vehicle, Defendant declined to include TLVV sales tax and title fees in paying the loss for Ms. Roth's claim.  In doing so, Defendant breached its contract with Ms. Roth.  Because of her injury, Ms. Roth has standing to represent all similarly situated putative class members who suffered the same injury; namely, a breach of their respective insurance contracts with Defendant where Defendant failed to pay TLVV Sales Tax and title fees on the class members' total-loss claims.  *See, e.g., Payne v. Travenol Lab., Inc.,* 565 F.2d 895, 898 (5th Cir. 1979) (to establish standing, plaintiff must show that he has personally suffered injury as a result of defendant's actions); *Prado-Steiman v. Bush*, 221 F.3d 1266 (11th Cir. 2000) (plaintiff must show that she suffered the same injury and possesses the same interest as class members).

## V.    THE COURT SHOULD CERTIFY PLAINTIFF'S PROPOSED CLASS

Federal Rule of Civil Procedure 23 and Local Rule 23.1 govern class actions in this Court. The Court should certify this Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).[20]

### A.    The Legal Standard for Class Certification.

A district court has broad discretion in determining class certification.  *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992).  To certify a class, "the named plaintiff[] must have standing, and the putative class must meet each of the

---

[20] Plaintiff respectfully requests the Court certify the Class and appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(c)(1).  However, should the Court conclude the record is not yet ripe for class certification, Plaintiff respectfully requests it "order postponement of the determination pending discovery or such other preliminary procedures appear to be appropriate and necessary."  Local Rule 23.1(c); *see also supra* n. 1 (noting Plaintiff's previously-filed Motion for Extension of Time to File Motion for Class Certification and forthcoming Motion for Leave to file a Supplemental Memorandum in Support of Class Certification after the close of discovery).

requirements specified in [Rule] 23(a). . . .”  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009).  Rule 23(a) provides that a class may be certified if there is numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. P. 23(a).  If Rule 23(a) is satisfied, then at least one of the requirements of Rule 23(b) must also be satisfied.  *Vega*, 564 F.3d at 1265.

**B.      The Class Meets All of the Requirements of Fed. R. Civ. P. 23(a).**

      **1.      The Class is So Numerous that Joinder of All Members is Impracticable.**

The numerosity requirement generally is satisfied with more than forty (40) class members.  *See Bowe v. Pub. Storage*, 318 F.R.D. 160, 169 (S.D. Fla. 2015) (*citing Cox v. Am. Cast. Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).  Data produced by Defendant shows that there are over ████████████.  (Ex. F, Martin Decl. at ¶¶ 9, 14.)  The numerosity requirement is easily satisfied.

      **2.      There Are Questions of Law or Fact Common to the Class.**

Satisfying the commonality requirement is a “low hurdle” under Rule 23(a)(2).  *See Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009).  “[F]actual differences may exist between class members’ claims without defeating certification, provided common questions of law exist.”  *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 321 F.R.D. 677, 685–86 (M.D. Fla. 2017).  “[F]or purposes of Rule 23(a)(2) even a single question will do. . . .”  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotation omitted).  Commonality is satisfied in this case because there are questions of law common to the class as to whether Defendant breached the insurance policy by failing to pay sales tax and title transfer fees on Florida first-party PPA leased vehicle total loss claims, and a common answer to this question in interpreting the uniform policy language across the putative class.

The same factors supporting Plaintiff's breach of contract claim for unpaid sales tax apply equally to all class members:  (1) the Policies define leased vehicles as an "owned auto" under the Policies; (2) all Policies of the putative class have identical material terms; (3) there is no windfall that will result in Defendant paying sales tax on the leased vehicle total loss claims because the insureds of leased vehicles paid the same premiums paid by owned vehicles under the same Policies; (4) Defendant underwrites and charges the same premium for owned vs. leased vehicles; and (5) the cost to replace a total loss vehicle is the same for owned vehicles and leased vehicles (i.e., an insured may replace an owned vehicle with a leased vehicle, an owned vehicle, or choose not to replace the vehicle at all).  Six percent state sales tax (and applicable local sales tax) apply equally to all payments for an owned auto and all payments for a leased vehicle.

Title transfer fees likewise apply equally across the class, and likewise present a common question of contract interpretation.

Courts have routinely found the commonality requirement has been met in similar cases involving breaches of uniform insurance policies.  *See, e.g., Powers v. Govt. Employees Ins. Co.,* 192 F.R.D. 313, 318 (S.D. Fla. 1998) (finding commonality and certifying Rule 23(b)(3) class where plaintiff alleged that auto insurer breached Florida insurance policies with class members by not refunding the full amount of the deductible after recovering under subrogation claims); *Burton v. Mountain W. Farm Bureau Mut. Ins. Co.,* 214 F.R.D. 598, 611 (D. Mont. 2003) (finding commonality and certifying Rule 23(b)(3) class where plaintiff alleged auto insurer breached its policies with class members by failing to make medical payments on stackable medical pay policies); *Leszczynski v. Allianz Ins.,* 176 F.R.D. 659, 675 (S.D. Fla. 1997) (finding commonality and certifying Rule 23(b)(3) class where plaintiff alleged auto insurer breached its policies with class members by failing to provide coverage to injured occupants of a vehicles leased by

14

Mercedes Benz Credit Corporation); *Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67, 80 (E.D.N.Y. 2004) (finding commonality certifying Rule 23(b)(3) class where plaintiff alleged auto insurer breached its policies with class members by applying betterment deductions to loss claims); *Eastwood v. Southern Farm Bureau Case. Ins. Co.,* 291 F.R.D. 273 (2013) (finding commonality and certifying Rule 23(b)(3) class where plaintiff alleged auto insurer breached its policies with class members by asserting subrogation claims for recoveries the insureds received from third-party tortfeasors); *see also Thompson v. State Farm Fire & Cas. Co.*, No. 5:14-CV-32 (MTT), 2016 WL 951537, at *8 (M.D. Ga. Mar. 9, 2016), *reconsideration denied,* No. 5:14-CV-32 (MTT), 2016 WL 2930958 (M.D. Ga. May 19, 2016) (finding commonality and certifying Rule 23(b)(3) where plaintiff alleged that home insurer breached its insurance policies with class members by not including diminished value in coverage for property damage claims).

### 3.     The Claims or Defenses of the Representative Parties Are Typical of the Claims or Defenses of the Putative Class.

"In order to demonstrate typicality, the plaintiff must generally demonstrate that a 'sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 698 (S.D. Fla. 2017) (citing *Piazza v. Ebsco Indus., Inc.,* 273 F.3d 1341, 1346 (11th Cir. 2001)).  "Stated differently, '[t]he claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Id.* (citing and quoting *Williams,* 568 F.3d at 1356-57).

Here Ms. Roth's claims are typical and have a clear nexus with the claims of each putative class member.  The alleged breach of contract is the same for Ms. Roth and each class member. The insurance Policies at issue have identical material terms.  ███████████████

15

███████████████ *compare generally* Ex. A, Form A70 Policy at 12-15, *with* Ex. H, Form A30 Policy at 12-15.)  Just like Ms. Roth, each putative class member had a claim that Defendant determined to be a covered leased vehicle total loss claim.  For both Ms. Roth and the putative class members, GEICO General declined to pay sales tax and title transfer fees as replacement costs.  In short, Ms. Roth's claims are typical of the claims of the putative class members.

### 4. The Representative Parties will Fairly and Adequately Protect the Interests of the Class.

There is no conflict of interest between the named Plaintiff and the members of the putative class.  To the contrary, their interests are perfectly aligned.  Class counsel is experienced in litigating class actions and other complex litigation, including successfully litigating a class action with similar issues.  (*See generally* Ex. M, Declaration of Edmund Normand.)  Plaintiff and Class Counsel will adequately protect the interests of the class.

### C. The Putative Class Should Be Certified Pursuant to Fed. R. Civ. P. 23(b)(3).

Certification is proper pursuant to Fed. R. Civ. P. 23(b)(3) because "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

### 1. Questions of Law and Fact Common to Class Members Predominate Over Any Questions Affecting Only Individual Members.

"Determining whether common questions of law or fact predominate over questions affecting only individual members . . . requires a showing that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof.'"  *Bowe v. Pub. Storage*, 318 F.R.D. 160, 176 (S.D. Fla. 2015) (quoting *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th

16

Cir. 1997)).  A complete absence of individual issues is not necessary.  *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1557 (11th Cir. 1986).  A plaintiff merely must demonstrate that issues which are subject to generalized proof predominate over issues that require individualized proof.  *See, e.g. Jackson v. Motel 6,* 130 F.3d at 1005.

Courts routinely find predominance in cases such as this where the interpretation of uniform material insurance provisions will determine liability in the case.  *Burton*, 214 F.R.D. at 611 (common issues predominated because the most significant factor was the auto insurer's failure to fully compensate insureds under identical insurance policy provisions applicable to each class member); *Leszczynski*, 176 F.R.D. at 675 ("A legal determination as to whether the [auto] policy in question covers claimants in this factual situation is the predominant question of interest among the class members."); *Steinberg*, 224 F.R.D. at 80 (common issues predominated on auto policy breach of contract claims because the auto "policies are substantially uniform"; and "if common questions of law predominate over individual questions as to liability, courts will generally find Rule 23(b)(3) to be satisfied even if individual damages issues remain."); *Eastwood*, 291 F.R.D. at 286 (common class issues relating to the construction of the auto insurance policies predominate "even though individual issues arising from SFB's assertion of its affirmative defense may present themselves."); *Thompson*, 2016 WL 951537, at **9-10 (breach of contract claim that auto policies required insurer to assess for diminished value predominated over individual issues); *Powers*, 192 F.R.D. at 320 (S.D. Fla. 1998) (common issues predominated for a state class involving an insurer's breach of its policies by recovering under subrogation claims).

Here, questions of law or fact common to class members predominate over any questions affecting only individual members.  The predominate issue is whether Defendant breached the Policies by failing to properly compensate its insureds; this question is common to all class

17

members.  Every class member was insured by Defendant under identical material policy terms.

Defendant breached the Policies by failing to pay TLVV Sales Tax and title fees on leased vehicle

total loss claims.  The answer to this question will be determined by common proof on the meaning

of the subject contract language.

The damages will be determined based on a formula for the sales tax due, and based on a

flat rate for the title fees due.  (Ex. F, Martin Decl. at ¶¶ 11-13; Ex. L, Matera Decl. at ¶¶ 14-15

(title fees are the minimum flat fees mandated and do not require formulaic calculation).)  No file-

by-file review is necessary to determine damages.  But even if damages raise some individualized

issues, such a finding would not defeat class certification.  *See Herrera v. JFK Med. Ctr. Ltd.*

*P'ship*, 648 F. App'x 930, 936 (11th Cir. 2016) ("even if courts must confront some individualized

damages issues, common issues predominate if liability can be determined on a class-wide basis.")

The common contract interpretation questions predominate over all other issues.

### 2.      A Class Action is the Superior Method of Adjudication.

A class action is superior to any other method for a fair and efficient adjudication of

Plaintiff's and the putative class's uniform breach of contract claims.   "To determine if the

superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

(A) the interest of members of the class in individually controlling the prosecution or defense of

separate actions; (B) the extent and nature of the litigation concerning the controversy already

commenced by or against members of the class; (C) the desirability or undesirability of

concentrating the litigation of claims in the particular forum; and (D) the difficulties likely to be

encountered in the management of a class action."  *Jones v. Jeld-Wen, Inc.,* 250 F.R.D. 685, 695

(S.D. Fla. 2008); *see also City of St. Petersburg v. Total Containment, Inc.,* 265 F.R.D. 630, 657

(S.D. Fla. 2010).  Each of these factors supports the superiority of class certification here.

**(a)     The Class Members' Interests Are Supported By Class Certification, Not By Individually Controlling the Prosecution or Defense of Separate Small Claims Actions.**

The average claim of each class member is approximately $1,480.00, which is relatively small when compared to the cost of litigating a breach of contract case against a large insurance company.  (Ex. F, Martin Decl. at ¶¶ 11-13); *see also Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 676 (S.D. Fla. 1997) ("Class actions are particularly appropriate, where… multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs."). Plaintiff is unaware of any other putative class member filing a lawsuit asserting the same claims as asserted in this lawsuit.  This factor favors class certification.

**(b)     This is the First Litigation Concerning this Controversy As To Leased Vehicles By or Against Class Members.**

This is the first case, to Plaintiff's knowledge, by any leased vehicle total loss insured seeking to recover sales tax and title fees on behalf of GEICO General's insureds with leased vehicle total loss claims.  The lawsuit *Sullivan v. GEICO General Indemnity Co.*, No. 6:17-cv-891-PGB-KRS (M.D. Fla.), was filed by owned (not leased) vehicle total loss claimants seeking title and license plate fees for all GEICO total loss insureds, and the *Sullivan* claimants are represented by the same counsel as the present case.  *Sullivan* makes no claim for sales tax, however, because owned vehicle total loss insureds *were* paid sales tax on their total loss claims. This factor favors class certification here.

**(c)     Concentrating the Litigation of the Claims in this Forum is Desirable.**

The present forum is desirable because all claims arise in Florida and under Florida law. The Southern District of Florida is well equipped to handle insurance class actions such as this. Moreover, all of the potential class members currently reside or did reside in Florida during the

class period, and all relevant transactions occurred in Florida. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013) (finding that because all of the subject "transactions occurred in Florida, litigating this case in a Florida federal district court makes sense."). This factor also favors class certification.

### (d)      This Class Action is Manageable.

The crux of this case is the uniform policy provision in question. Damages will be determined by analysis of Defendant's data. On this record, the case is not merely manageable as a class, it is ideal for class treatment. *Cty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 672 (S.D. Fla. 2010) ("Given the number of issues subject to class-wide proof, there will be no unique difficulties in managing this case as a class action, beyond those inherent in complex cases.").

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests the Court grant class certification pursuant to Fed. R. Civ. P. 23. In the alternative, should the Court wish to have complete discovery prior to making its class certification determination, Plaintiff respectfully requests the Court postpone the determination of class certification pending completion of discovery pursuant to Local Rule 23.1(c).

Dated this January 4, 2018.

/s/Jacob Phillips
Edmund A. Normand
Florida Bar No. 0865590
Jacob Phillips
Florida Bar No. 0120130
Normand Law PLLC
62 W. Colonial Drive,
Suite 209
Orlando, FL 32801
Telephone: (407) 603-6031
Facsimile: (888) 974-2175
Ed@EdNormand.com
jacob@ednormand.com

*Trial Counsel*

Christopher J. Lynch
Florida Bar No. 331041
Christopher J. Lynch, P.A.
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Facsimile: (305) 443-6204
Clynch@hunterlynchlaw.com
Lmartinez@hunterlynchaw.com

Bradley W. Pratt
Florida Bar No. 0094300
Pratt Clay, LLC
4401 Northside Parkway, Suite 520
Atlanta, Georgia 30327
Telephone:  (404) 949-8118
Facsimile:  (404) 949-8159
bradley@prattclay.com

Tracy L. Markham
Florida Bar. No. 0040126
Avolio & Hanlon, P.C.
2800 N. 5th Street, Suite 302
St. Augustine, Florida 32084

21

Phone:  (904) 794-7005
Facsimile:  (904) 794-7007
tlmarkhamlaw@gmail.com

Andrew Lampros
Georgia Bar No. 432328
Motion to Appear Pro Hac Vice to be filed
Hall & Lampros, LLP
1230 Peachtree Street, NE, Suite 950
Atlanta, GA 30309
Phone: (404) 876-8100
Facsimile: (404) 876-3477
alampros@hallandlampros.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day, January 4, 2018, I electronically filed the foregoing

**Plaintiff's Motion for Class Certification and Incorporated Memorandum of Law** using the

Court's ECF system which will automatically serve the following counsel of record for

Defendants:

> Alexander Fuchs
> Eversheds Sutherland (US) LLP
> 1114 Avenue of the Americas
> The Grace Building 40th Floor
> New York, NY 10036
> 212-389-5000
> Email: alexfuchs@eversheds-sutherland.com
>
> Amelia Toy Rudolph
> Eversheds Sutherland (US) LLP
> 999 Peachtree Street, N.E.
> Suite 2300
> Atlanta, GA 30309
> (404) 853-8000
> Email: amyrudolph@eversheds-sutherland.com
>
> Kymberly Kochis
> Eversheds Sutherland (US) LLP
> 1114 Avenue of the Americas
> The Grace Building 40th Floor
> New York, NY 10036
> 212-389-5000
> Email: kymberlykochis@eversheds-sutherland.com

*/s/*Jacob Phillips_____