UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-62942-Civ-DIMITROULEAS

KERRY ROTH, on behalf of herself and
all others similarly situated,

    Plaintiff,

  vs.

GEICO GENERAL INSURANCE
COMPANY,

    Defendant.

_____

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE is before the Court upon Plaintiff Kerry Roth ("Roth" or "Plaintiff")'s Motion for Summary Judgment [DE 152] and Defendant GEICO General Insurance Company ("GEICO" or "Defendant")'s Motion for Summary Judgment [DE 151], both filed on April 20, 2018.  The Court has carefully considered the Motions [DE's 151, 152], the Responses [DE's 171, 172], and the Replies [DE's 188, 190], argument by counsel at the hearing on June 8, 2018, and the record herein.  The Court is otherwise fully advised in the premises.

    **I.**    **BACKGROUND**:

This case arises out of GEICO's alleged failure to pay state and local sales tax and title transfer fees in the settlement of total loss claims on leased vehicles.

Plaintiff Roth filed a putative state court class action against Defendant GEICO and related entities in Florida state court on August 30, 2016, which she replaced on November 8,

1

2016 with an Amended Class Action Complaint, and which she replaced on November 16, 2016 with a Second Amended Class Action Complaint. *See* [DE 1-2] at pp. 85-115.  The Second Amended Complaint alleged two counts:  Count I for breach of contract, and Count II for declaratory relief.  Defendants removed the case to federal court on December 14, 2016, pursuant to the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. §§ 1332(d), 1453.

On January 24, 2017, the Court entered an Order Granting Defendants' Partial Motion to Dismiss Plaintiff's Class Action Complaint. *See* [DE 14].  Therein, the Court dismissed all Defendants other than GEICO General Insurance Company for lack of standing, as Plaintiff alleged no contract with any other Defendant. *See id.*  The Court also dismissed Count II for declaratory relief. *See id.*

Accordingly, Plaintiff is proceeding on her breach of contract claim, as set forth in Count I of the Second Amended Complaint, alleging that GEICO does not include sales tax or title transfer fees in its Actual Cash Value payments made to insureds in settlement of total loss claims, in violation of GEICO's policy language.

On May 4, 2018, the Court entered an Order Granting Plaintiff's Motion for Class Certification. *See* [DE 165].  On May 18, 2018, the Court approved the form and manner of class notice. *See* [DE 211].  Plaintiff provided notice to the class by before June 1, 2018, and requests to exclude must be postmarked no later than July 2, 2018. *See* [DE 234].

Both sides now move for summary judgment in this action.  In conjunction with the instant summary judgment motions, the parties have provided in their respective Statements of Material Facts and responses thereto [DE 151-1; DE 183; DE 188-1; DE 153; DE 171-1; DE

2

191]¹ various factual assertions that are supported by the record.  In some instances, the parties have not contested their adversaries' assertions.  The Court will deem any uncontested factual assertions supported by the record to be admitted.  *See* S.D. Fla. L.R. 56.1(b); Fed. R. Civ. P. 56(c), (e).

## II.     LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id*. at 325.  After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must come forward with "specific facts showing a genuine issue for trial." *Matsushita*, 475 U.S. at 587.

---

¹ The parties' Statements of Material Facts and responses thereto [DE 151-1; DE 183; DE 188-1; DE 153; DE 171-1; DE 191] include various citations to specific portions of the record.  Any citations herein to the Statements of Material and responses should be construed as incorporating those citations to the record.

3

"A fact [or issue] is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

### III.    DISCUSSION

On May 14, 2015, Plaintiff Roth entered into a lease agreement for an Audi A3. *See* [DE 152-19]. Plaintiff's leased vehicle was insured by Defendant GEICO's private passenger auto policy (the "Policy"). In June 2016, Plaintiff damaged her vehicle in an automobile accident, and she sought to recover under her GEICO Policy. Plaintiff submitted a claim for physical damage to her vehicle, and GEICO determined Plaintiff's vehicle to be a total loss.

The issue in this case is whether Plaintiff is entitled to sales tax and title transfer fees in addition to what Defendant paid her for the value of her total loss leased vehicle. Plaintiff seeks sales tax damages in the amount of tax she would incur if she were to buy her vehicle and title transfer fee damages in the minimum amount owed for the purchase of an owned vehicle ($75.25).

Defendant argues in its summary judgment motion that GEICO is entitled to summary judgment in its favor because GEICO's insurance policy and Florida law are clear that neither sales tax or title transfer fees are covered and therefore Plaintiff cannot demonstrate a breach of contract or damages. In contrast, Plaintiff argues in her summary judgment motion that she is entitled to summary judgment in her favor because GEICO violated the Policy terms and well-settled Florida law by refusing to pay all replacement costs – specifically, sales tax and title transfer fees –necessary to replace the total loss vehicle. For the reasons set forth below, the Court agrees with Plaintiff and will therefore grant Plaintiff's summary judgment motion and deny Defendant's summary judgment motion.

Under Florida law, to prevail in an action for breach of contract, the plaintiff must prove: (1) a valid contract; (2) a material breach; and (3) damages. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. Dist. Ct. App. 1992)). Additionally, Florida law requires that the Court begin with interpreting the insurance policy with the plain meaning of the policy, and that any ambiguities in the policy shall be construed against the insurer and in favor of the insured and coverage. *See, e.g., Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 832 F.3d 1318, 1322 (11th Cir. 2016);

*Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So.2d 467, 470 (Fla. 1993). Keeping these legal standards in mind, the Court turns to the language of the Policy at issue.

The relevant section of the Policy is "**Section III – PHYSICAL DAMAGE COVERAGES**," subtitled "**Your Protection For Loss Or Damage To Your Car**," which protected Plaintiff against loss or damage to her Vehicle at the time of the Accident. *See* [DE 153-1] at 13. Damage to Plaintiff's Vehicle associated with the Accident was covered under the "Collision" provision of Section III. Pursuant to this provision, GEICO is responsible for paying "collision loss to the owned auto for the amount of each loss less the applicable deductible." The Policy defines a "**Loss**" as "direct and accidental loss of or damage to: (a) An **owned** or **non-owned auto**, including its equipment." *Id*. at 14. In the event of a loss, the Policy provides that the limit of GEICO's liability for the loss:

1. is the **actual cash value** of the property at the time of the **loss**.

2. Will not exceed the prevailing competitive price to repair or replace the property at the time of **loss**, . . . with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the **loss**.

\* \* \*

**Actual cash value** or **betterment** of property will be determined at the time of the **loss** and will include an adjustment for **depreciation/betterment** and for the physical condition of the property.

*Id*. at 15.

The term "actual cash value" (hereinafter, sometimes abbreviated by the Court as "ACV") is defined in the Policy as "the replacement cost of the auto or property less depreciation or betterment." *Id.* at 13. Importantly for the Court's analysis herein, the Policy does not distinguish between the ACV and replacement costs for owned, financed, or leased vehicles, and provides no notice to GEICO's insureds that their leased vehicles will be valued differently

6

based on whether they were leased. Rather, the Policy provides notice of just the opposite: the Policy defines owned, financed, and leased vehicles to all be considered "owned autos" under the Policy. There are no separate provisions in the Policy that apply to owned vehicles only, financed vehicles only, or leased vehicles only. Additionally, GEICO charges its insureds the same premiums under the Policy for owned, financed, and leased vehicles. Furthermore, nothing in the Policy requires a leased vehicle insured to replace their total loss vehicle with another leased vehicle, or even to replace her total loss with any vehicle at all.[2]

Plaintiff asserts that sales tax and title transfer fees are mandatory, necessarily included in the replacement costs of a total loss vehicle, and therefore are components of actual cash value under the Policy. The Court agrees. Sales tax and title transfer fees are mandatory fees imposed by Florida law on the replacement of all vehicles. *See* Fla. Stat. § 212.05 (sales tax); § 319.34 (title transfer fee).[3] Further, settled law in the Eleventh Circuit, applying Florida law, is that when an insurer provides an actual cash value insurance policy covering the cost to repair or replace damaged insured property, it must pay all of the costs that are included in the cost of replacement or repair of the property. *See Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) ("[T]axes are not unambiguously excluded from actual cash value coverage. . . [p]art of 'the cost' of new materials is the taxes paid to purchase those materials").

In the summary judgment decision in *Bastian v. United Services Automobile Assn.*, 150 F. Supp. 3d 1284, 1290 (M.D. Fla. 2015) in favor of the plaintiffs insureds and against defendant insurance company, the district court agreed "with the Eleventh Circuit's easily-reached

---

2 In fact, many leased vehicle insureds replaced their total loss with an owned vehicle.
3 The title transfer fee for purchasing a replacement vehicle is a minimum of $75.25. The title transfer fee for leasing a replacement vehicle is a minimum of $54.25.

7

conclusion [in *Mills*] that state and local taxes are part of the cost of replacing an item."[4] While Defendant is correct that *Bastian* is distinguishable as it involved owned vehicles being replaced with owned vehicles, whereas Plaintiff Roth's vehicle was a leased vehicle and she replaced it with a leased vehicle, the Court finds *Bastian* to be persuasive here.  In *Bastian,* USAA's insurance policy defined "[a]ctual cash value" as "the amount it would cost, at the time of loss, to buy a comparable vehicle. As applied to your covered auto, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition."  *Bastian*, 150 F. Supp. 3d at 1289.  Here, GEICO's Policy defines actual cash value as "the replacement cost of the auto or property less depreciation or betterment." [DE 153-1] at 13.  The relevant policy language at issue in the two cases is comparable in meaning and application.

      The plain language of the Policy explicitly treats all vehicles as "owned."  Moreover, for purposes of ACV and replacement cost under the Policy, the replacement costs for both owned and leased vehicles is based on the price to purchase a replacement vehicle (*i.e*, "the prevailing competitive price to repair or replace the property . . . with other of like kind and quality."). Plaintiff submits GEICO's two Market Valuation Reports for Plaintiff Roth's vehicle.  *Compare* [DE 152-9] *with* [DE 152-11].  The first Market Valuation Report was created before GEICO realized that Plaintiff's vehicle was a lease.  The first report valued Plaintiff's vehicle at $23,947.00 and added sales tax in the amount of 6% of that valuation, an amount of $1,436.82. [DE 152-11].  After determining that Plaintiff's vehicle was a lease, Defendant created a second report, in which it kept the vehicle valuation exactly the same ($23,947.00) -- with the sole

---

[4] Further, a policy's failure to address limitations on the payment of sales tax must be construed in favor of the insured. *See Bastian*, 150 F. Supp 3d at 1295 ("At best, the Policy says nothing on the topic, which the Court should construe in favor of the insured."); *see also Mills,* 511 F.3d at 1305.

exception that it excluded the 6% sales tax.  Thus, pursuant to the Policy, Defendant pays on leased vehicle total loss claim based on the market value on the date of the loss to purchase a replacement vehicle of the same make, model, and condition, not the cost to lease a replacement vehicle.  As explained *supra*, the cost to purchase a replacement vehicle includes all costs necessarily included in the replacement costs of a total loss vehicle *Mills* and *Bastian*.  Accordingly, as sales tax and title transfer fees are mandatory, necessarily included in the replacement costs of a total loss vehicle, the Court concludes that they are components of actual cash value under the Policy and are therefore due to be paid to the insured under the Policy, regardless of whether the vehicle is owned, financed, or leased.[5]  Therefore, GEICO's failure to pay leased vehicle total loss insureds sale tax in the amount of 6% of the value of the vehicle (plus any local taxes) and title transfer fees in the amount of $75.25 constitutes a material breach of contract.

While GEICO complies with its Policy provisions (and the mandates of *Mills* and *Bastian*) by paying sales tax of a minimum of 6% of the total loss vehicle value on vehicles that are owned outright or financed by the insured, GEICO violates its Policy provisions (and the mandates of *Mills* and *Bastian*) by refusing to pay full sales taxes on leased vehicles.[6]  Further, regarding title transfer fees owed under the Policy, GEICO does not pay title transfer fees on any total loss vehicles, regardless of whether the total loss vehicle is leased, owned, or financed, in violation of the Policy provisions defining all vehicles as owned vehicles and requiring payment

---

5 GEICO's reliance on Fla. Stat § 626.9743(9) is unavailing, as that statute cannot limit coverage to less than what is provided for in the Policy. *See, e.g.*, *Bastian*, 150 F. Supp 3d at 1295.
6 GEICO's admitted practice of conditioning the payment of the sales tax component of ACV for leased vehicle total loss claims on whether the insured paid in the past, at lease inception, 100% of sales tax that would be due over the life of the lease is not supported by the Policy terms or Florida law.

of replacement costs be paid as part of ACV, as well as violating the mandates of *Mills* and *Bastian*.

Regarding damages, the third and final element of a breach of contract claim, Defendant contends that Plaintiff did not incur any damages, as she did not purchase the vehicle she totaled nor did she purchase her replacement vehicle. The Court disagrees. As noted by the Court, *supra,* nothing in the Policy requires a leased vehicle insured to replace their total loss vehicle with another leased vehicle, or even to replace her total loss with any vehicle at all. The damage to Plaintiff is the amount that she was underpaid by Defendant compared to the amount owed to her under the Policy.[7] Here, as to Plaintiff Roth, the amount of damages is $1,436.82 in sales tax and $75.25 in title transfer fees.

## IV.     CONCLUSION

Sales tax and title transfer fees are mandatory parts of the replacement cost under the GEICO Policy for Plaintiff Roth's (and the class members') leased total loss vehicle and therefore are components of "actual cash value" under the Policy. Accordingly, GEICO's failure to pay leased vehicle total loss insureds sale tax in the amount of 6% of the value of the vehicle (plus any local taxes) and title transfer fees in the amount of $75.25 constitutes a breach of contract.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.     Plaintiff Kerry Roth's Motion for Summary Judgment [DE 152] is **GRANTED;**

2.     Defendant GEICO General Insurance Company's Motion for Summary Judgment [DE 151] is **DENIED**;

---

[7] While it is not necessary to the Court's analysis of whether Plaintiff was damaged by the breach of contract, the Court notes that Plaintiff submitted record evidence that she paid sales tax and title transfer fees on the replacement of her total loss leased vehicle.

3. Plaintiff Roth is entitled to damages in the amount of $1,436.82 in sales tax, which is 6% of the value of Plaintiff's total loss vehicle; and the amount of $75.25 in title transfer fees, which is the minimum amount of title transfer fees that are due on the purchase of a replacement vehicle.

4. Class members are entitled to damages in the amount of 6% of the value of Plaintiff's total loss vehicle (plus any applicable local taxes); and the amount of $75.25 in title transfer fees.

5. Within sixty (60) days from the expiration of the July 2, 2018 deadline to opt out of the class, the parties shall jointly submit a proposed final judgment to the Court.

6. The July 13, 2018 calendar call is **CANCELLED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 13th day of June, 2018.

*[signature]*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:

Counsel of record