UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-62942-CIV-DIMITROULEAS/SNOW

KERRY ROTH, on behalf of herself
and all others similarly situated,

                    Plaintiff,

vs.

GEICO GENERAL INSURANCE
COMPANY,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Plaintiff's Verified Motion for Attorneys' Fees, Costs and Expenses, and Named Plaintiff's Service Award (ECF No. 301), which was referred to United States Magistrate Judge Lurana S. Snow for a Report and Recommendation. The Motion is fully briefed and an evidentiary hearing was held on September 11, 2019.

## I. BACKGROUND

This case arises out of GEICO's alleged failure to pay state and local sales tax and title transfer fees in connection with the settlement of total loss claims on leased vehicles. Plaintiff Roth filed a putative class action against Defendant GEICO and related entities in Florida state court on August 30, 2016, which she replaced on November 8, 2016 with an Amended Class Action Complaint, followed by a Second Amended Class Action Complaint on November 16, 2016. (ECF No. 1-2 at 85-115) The Second Amended Complaint alleged two counts: Count I for breach of contract, and Count II for declaratory relief. Defendants removed the case to federal court on December 14, 2016, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453.

On January 24, 2017, the Court entered an Order Granting Defendants' Partial Motion to Dismiss Plaintiff's Class Action Complaint. (ECF No. 14) Therein, the Court dismissed for lack of standing all Defendants other than GEICO General Insurance Company, as Plaintiff had alleged no contract with any other Defendant. The Court also dismissed Count II for declaratory relief as duplicative of the claim alleged in Count 1 and because the Plaintiff had an adequate remedy at law in her claim for breach of contract. (ECF No. 14)  Accordingly, the Plaintiff proceeded on her breach of contract claim, as set forth in Count I of the Second Amended Complaint, alleging that GEICO does not include sales tax or title transfer fees in its Actual Cash Value (ACV) payments made to insureds in settlement of total loss claims, in violation of GEICO's policy language.

The Plaintiff filed a motion for class certification on January 4, 2018, which was granted by the Court on May 4, 2018. On May 18, 2018, the Court approved the form and manner of class notice. (ECF No. Nos. 165, 211]. On June 13, 2018, the Court granted the Plaintiff's Motion for Summary Judgment, ruling that the Plaintiff was entitled to damages in the amount of $1,436.82 in sales tax and $75.25 in title transfer fees, and that class members were entitled to damages in the amount of 6% of the value of their total loss vehicles, plus any applicable local taxes, and $75.25 in title transfer fees.  (ECF No. 247)  On November 20, 2018, the Court entered Judgment in favor of the Plaintiff and the Class against the Defendant in the amount of $5,878,259.95 in damages and prejudgment interest.  (ECF No. 281) On March 26, 2019, the Court entered a second judgment in the amount of $657,427.52.  (ECF No. 287) The Defendant appealed the judgments, and that appeal is pending.

In the instant Motion, the Plaintiff seeks attorneys fees based on a lodestar amount

of $3,320,510.15, with a contingency risk multiplier of 2.5, for a total fee award of $8,301,275.38.[1]

The Defendant objects to the hourly rates and time expended by Plaintiff's attorneys and to the

multiplier.  The Plaintiff also seeks an award of non-taxable costs in the amount of $182,998.23,[2]

and an incentive award of $10,000 to the named Plaintiff, both of which would come from the

damages awarded to the class.  The Defendant objects to these proposed awards.

The Plaintiff attempted to obtain by subpoena the billing records of the Defendant's

counsel as a means of countering the Defendant's challenge to the number of hours expended by

counsel for the Plaintiff.  The Defendant responded that it had challenged categories of billing rather

than objecting to specific entries, a task which the Defendant could not perform because the billing

entries had not been grouped according to particular tasks.  The undersigned ruled that the Plaintiff

had not established the relevancy of the subpoenaed documents and that their production would be

unduly burdensome to the Defendant.  (ECF Nos. 315, 318, 320-324) The Defendant did, as required

by the Local Rules, submit under seal the hourly rates charged by its attorneys.  (ECF No. 307)

## II. EVIDENCE PRESENTED

In support of the requests made in the Motion, the Plaintiff has submitted sworn

declarations from the law firms involved in representing the class and from her fee expert, Robert

Josefsberg.  Mr. Josefsberg also testified at the hearing on the Motion. The summaries below do not

contain all of the attorneys' qualifications or each of the tasks they performed, as these are detailed

---

[1]The requested lodestar amount reflects a reduction of approximately $125,000 from the fees originally requested, as a result of reductions made by the Plaintiff's counsel during the pre-filing conferral process. (ECF No. 301 at 11)

[2] This represents a reduced amount from the original claim, based on elimination of certain disputed travel and meal costs.  (ECF No. 312 at 11)

in the declarations themselves.

## A. <u>Declaration of Christopher J. Lynch</u>

Mr. Lynch avers that he is sole practitioner who has practiced law for 38 years.  He has extensive experience in insurance litigation and class actions in Florida and federal courts.  In June 2016, he was contacted by the Plaintiff's son, who was concerned that the Plaintiff had been shortchanged by her insurer, the Defendant, in the settlement of her claim for the total loss of her leased vehicle.  Following a review of the relevant documents, Mr. Lynch concluded that there was a reasonable possibility that sales tax was owed on the actual cash value assessed at the time of the loss.  Mr. Lynch agreed to take the Plaintiff's case on a contingency fee basis.  At that time, he anticipated filing a class action on behalf of similarly situated GEICO insureds.  Mr. Lynch previously had served as class counsel in an action against GEICO and knew it to be a formidable adversary.  (ECF No. 301-1 at 2-4, 7)

Based on his experience in class action litigation, Mr. Lynch knew he needed assistance.  He contacted Edmund Normand of Normand PLLC, who suggested they add a claim for title fees in addition to the claim for sales tax.  Both claims involved issues of first impression.  Owing to the costs and risks involved in class actions, Mr. Lynch would not have accepted the case absent the possibility of a multiplier or a recovery based on a percentage of the sums received.  During the three years of his involvement in the case, Mr. Lynch spent 294.60 hours at a billing rate of $750.00 per hour, for a total lodestar amount of $220,950.00.  This amount does not include time for litigating the issue of fees, travel time, time for litigating unsuccessful claims or time related to prior and pending appeals.  The amount does include .1 hour for each of 655 documented emails unrelated to the tasks excluded.  Mr. Lynch also incurred $9,327.66 in out-of-pocket expenses.  <u>Id.</u>

4

at 4-5.

Attached to Mr. Lynch's declaration are his billing records and expense receipts. The billing records include a single entry for review of all 655 emails. Id. at 17. Expenses consist of the filing fee, service of process, expert fees, travel expenses, costs for certified transcripts and copying costs. Id. at 19-24.

### B. Declaration of Edmund A. Normand

Mr. Normand avers that his law firm was brought into this case by Mr. Lynch. Mr. Normand, Mr. Lynch and an attorney in Mr. Normand's firm, Jacob Phillips investigated the Plaintiff's claim.[3] He stated that although, at the time this case was filed, there was a pending lawsuit against USAA concerning payment of sales tax to total-loss insureds, this case was one of first impression as specifically involving leased vehicles and payment of title transfer fees. (ECF No. 301-2 at 3-4)

Mr. Normand describes in detail the work performed by counsel in investigating and litigating the case. Id. at 4-21. He states that during the course of the case, the Plaintiff took 17 depositions (in four states and the District of Columbia); served 12 sets of written discovery to the Defendant and three third-party subpoenas; made multiple public records requests; purchased and reviewed more than 5,200 motor vehicle title history reports; and reviewed an analyzed 30,000 pages of documents and 19 sets of data, containing more than 1,625,000 rows of information and more than 300 columns, for a total of more than 500 million data inputs. Id. at 10. These efforts resulted in a first judgment of $5,878,259.95 and a second judgment of $657,427.52, for a total of

---

[3]Mr. Phillips filed a Notice of Appearance in this case on December 21, 2017 (ECF No. 39).

$6,535,687.47, representing 100% of the damages alleged.  According to Mr. Normand, there were substantial risks presented in the case, including the facts that both claims were issues of first impression and class certification depended on access to sufficient data to determine liability and damages.  Id. at 22.

Mr. Normand states that in December 2017, three additional law firms were added to the case after it became clear that extensive discovery litigation would be necessary.  This was the result of the slow rollout from the Defendant of various spreadsheets, each of which required analysis and cross-referencing.  Each of the law firms accepted the case on a contingency fee basis. The three law firms added to the Plaintiff's team were the only ones Mr. Normand knew who had successfully litigated total-loss first-party class actions for actual cash value, and these firms also had experience and knowledge about data issues related to insurance companies.  Id. at 23-24.

Mr. Normand served as lead counsel from the outset of the case, with significant input from Mr. Lynch and assistance from Mr. Phillips.  Bradley Pratt, Chris Hall and Mr. Phillips were involved in brief writing, defendant communication and correspondence.  Mr. Hall, with the assistance of Tracy Markham, was primarily responsible for data analysis, review of spreadsheets, discovery litigation and identification of class members.  Andrew Lampros assisted with data analysis and depositions.  Id. at 24-25.

Regarding billing by members of Mr. Normand's law firm, Mr. Normand expended 571.3 hours at an hourly rate of $750.00, for a total of $428,475.00; Mr. Phillips spent a total of 1,011.09 hours at an hourly rate of $475.00, for a total of $480,267.75; paralegal Alex Count spent 30.82 hours at an hourly rate of $325.00, for a total of $10,016.50; paralegal Janna Sherwood spent 3.47 hours at an hourly rate of $195.00, for a total of $676.75; paralegal Michelle Montecalvo spent

21.19 hours at an hourly rate of $125.00, for a total of $2,648.75, legal assistants Spenser Nampon

spent 16.01 hours, Jennifer Doctor spent 6.5 hours and Julie Master spent 2.25 hours, all at an hourly

rate of $75.00, for a total of $1,857.00.[4] Thus, members of Mr. Normand's firm expended 1,662.63

hours, for a total of $923,941.75. The firm also incurred expenses in the amount of $58,521.31. Id.

at 25-26.

    Mr. Normand states that he has received no remuneration for his time or expenses

thus far. He was required to forego other fee and profit-generating opportunities while pursuing this

case. Mr. Normand also states (with examples provided) that he and Mr. Phillips are experienced

in class actions and complex litigation. Mr. Normand has been a member of the Florida Bar since

1990, and Mr. Phillips has been a member since 2015. Mr. Norman also states that the named

Plaintiff, Ms. Roth, devoted substantial time to the case, responding to multiple document requests

and interrogatories, sitting for deposition, appearing at mediation and meeting with counsel. Id. at

27-32. Attached to Mr. Normand's declaration are his firm's billing records and expense receipts.

Id. at 34-153.

### C. Declaration of Christopher B. Hall

    Mr. Hall avers that he is a partner in the law firm of Hall & Lampros, LLP, and that

he and Andrew Lampros served on the Plaintiff's litigation team in this case. An associate, Gordon

Van Remmen also worked on the case. Mr. Hall states that he and Mr. Lampros were concerned

---

   [4]Where the Court's review of the time records revealed a different amount of hours than
those summarized in Mr. Normand's declaration, the Court relied on its own review. For
example, Mr. Normand stated that paralegal Montecalvo billed 21.53 hours, but the record
reflects 21.19 hours. (ECF No. 301-2 at 143-45) And as to legal assistant Nampon, his billing
records reveal 16.01 hours and not 24.76 hours. (ECF No. 301-2 at 145) Other legal assistants
billed a total of 8.75 hours, although they are not named in Mr. Normand's declaration. (ECF No.
301-2)

about the ability to succeed in the lawsuit when they joined the team in late October 2017, and would not have participated without the opportunity for a lodestar multiplier.  (ECF No. 301-3 at 2-3)[5]

        Based on the Defendant's objections and in an effort to compromise, Mr. Hall's firm voluntarily withdrew time entries pertaining to litigating the amount of fees, unsuccessful claims, appellate work and travel time, resulting in a reduction of more than 58 hours.  The firm also provided more detail to counteract objections based on block billing, vagueness/lack of particularity/redactions, excessive time and inappropriate staffing.  The resulting total for work performed by Hall & Lampros' lawyers and paralegals is $1,178,151.25 for 1,725.35 hours, with the following breakdown: 1,066.30 hours by Mr. Hall at the hourly rate of $750.00, for a total of $799,725.00; 290.9 hours by Mr. Lampros at the hourly rate of $750.00, for a total of $218,175.00; 331.6 hours by Mr. Van Remmen at the hourly rate of $475.00, for a total of $157,510.00; 27.8 hours by law clerk Ligia Mensah at the hourly rate of $75.00, for a total of $2,085.00, and 8.75 hours by law clerk Brittany Barto at the hourly rate of $75.00, for a total of $656.25.[6] Additionally, the firm seeks reimbursement of  expenses in the amount of $76,381.10 and future fees and costs of up to $25,000.00 for claims administration.  Id. at 4-6.

        Mr. Hall further avers that owing to the time expended on this case, it was necessary for his firm to forego other fee and profit-generating opportunities.  Mr. Hall spent approximately 40% of his time from January 1, 2018 through April 2019 working on this case.  He has been

---

    [5]Mr. Lampros sought leave to appear in this case *pro hac vice* on January 4, 2018. (ECF No. 44) Mr. Hall sought leave to appear pro hac vice on May 31, 2018. (ECF No. 230)

    [6]Law clerk Barto's time does not appear to have been correctly calculated; for example, she billed 4 hours on November 8, 2018, but the start time was 10:00 am and the end time was 12:00 pm, which is only 2 hours. (ECF No. 301-3, at 81)The Court finds that the billing record only supports 8.75 hours and not 9.4 hours and has adjusted the requested amounts accordingly.

practicing law for more than 22 years, specializing in class action and complex litigation, and with extensive experience in insurance coverage litigation. Mr. Lampros began practicing law in 1999 and has particular expertise in complex data systems and insurance coverage. Mr. Van Remmen has been a practicing lawyer since 2015 and has focused on class action and employment litigation. Id. at 7-10. Attached to Mr. Hall's declaration are billing statements and expense receipts. Id. at 15-120.

### D. **Declaration of Tracy L. Markham**

Ms. Markham avers that she is the founding member and managing attorney of the Southern Atlantic Law Group, PLLC, and first became involved in this case in December 2017, and was named co-counsel for the class on May 3, 2018.[7] She has been practicing law since 1989, specializing in civil litigation. Since 1996, Ms. Markham has focused on representing Plaintiffs in disputes with insurance companies. She has spent 149.3 hours on this case at the hourly rate of $600.00, for a total of $89,580. She did not bill for hundreds of emails or for all of the orders that she reviewed in the case. Lawrence Roselle, Jr., a case manager in Ms. Markham's firm, performed work of a paralegal nature by searching for an analyzing more than 2,122 vehicle titles. Mr. Roselle spent 69 hours at the hourly rate of $150.00, for a total of $10,350.00. The expense associated with the vehicle title search was $6,230.37. Ms. Markham's fee was contingent and she has not received any compensation for her time. (ECF No. 301-4 at 2-7) The billing statements and expense receipts for Ms. Markham's law firm are attached to her declaration. Id. at 16-53.

### E. **Declaration of Bradley W. Pratt**

Mr. Pratt avers that he is a partner in the law firm of Pratt Clay, LLC, and he filed a

---

[7]Ms. Markham filed a Notice of Appearance on December 19, 2017. (ECF No. 38)

Notice of Appearance in this case on January 4, 2018. (ECF No. 43) He was appointed co-counsel

for the class on May 3, 2018.  He has been practicing law since 2004, and was assisted in this case

by two other attorneys in his firm, as well as two paralegals.  During the time period of November

2017 through March 2019, the legal professionals from the firm spent a total of 1,083.80 hours, for

a total of $789,522.50, broken down as follows: 1019.80 hours by Mr. Pratt at the hourly rate of

$750.00, for a total of $764,850.00; 16.90 hours by partner Charles L. Clay, Jr. at the hourly rate of

$750.00, for a total of $12,675.00; 21.50 hours by associate Brian C. Mickelsen at the hourly rate

of $390.00, for a total of $8,385.00; 16.50 hours by paralegal San Gray at the hourly rate of $150.00,

for a total of $2,475.00, and 9.10 hours by paralegal James Leeson at the hourly rate of $125.00, for

a total of $1,137.50.  The firm also incurred expenses in the amount of $30,188.12.  (ECF No. 301-5

at 2-4)

Mr. Pratt states that the fee in this case was contingent and the firm has received no

compensation to date.  It was necessary for the firm to forego other fee and profit-generating

opportunities to pursue the case, and the firm would not have agreed to participate without the

possibility of a contingency risk multiplier.  Mr. Pratt further avers that during the time period of

November 2017 to the June 10, 2019, he devoted approximately 35% of his time to this case.  Mr.

Pratt specializes in complex litigation, and has class action experience in state and federal courts.

Mr. Clay has practiced law for 20 years and has litigated cases in more than 25 states.  Mr. Mickelsen

was admitted to practice in 2016, and has focused on complex litigation, class actions and personal

injury matters.  Ms. Gray has been a paralegal for 17 years and Mr. Leeson has been a paralegal for

6 years.  Id. at 4, 7-9.  Billing entries for appellate work and other entries have been removed,

resulting in a reduction of more than 50 hours.  Expense receipts and billing statements for the firm

are attached to Mr. Pratt's declaration. Id. at 11-13, 15-141.

### F. Declaration and Testimony of Robert C. Josefsberg

In his declaration, Mr. Josefsberg avers that he is a partner in the law firm of Podhurst, Orseck, P.A., and was retained by the Plaintiff as an expert witness on attorneys' fees. He graduated from Yale Law School in 1962 and was admitted to The Florida Bar that same year. He is a Past President and Dean of the International Academy of Trial Lawyers; a fellow of the American College of Trial Lawyers; a fellow of the Litigation Counsel of America (trial lawyer honorary society); Past President of the Peter T. Fay Inns of Court, and a member of the American Board of Trial Advocates. He has tried more than 100 cases, has represented plaintiffs and defendants in class actions, and has been qualified as an attorneys' fees expert on more than 20 occasions. Mr. Josefsberg's customary billing rate is $1100.00 per hour, but he was paid the discounted rate of $800.00 for his expert services in this case. Mr. Josefsberg expended 20.50 hours on the case, resulting in a total expert fee of $16,400.00. (ECF No. 301-13 at 2-3, 16)

After reviewing all of the pertinent documents in the case, including the attorney declarations summarized above, and discussing the case with the attorneys involved in the case and others in the community, Mr. Josefsberg opined that the fees and expenses incurred by counsel were reasonable. Specifically, he stated that (1) the skill necessary to litigate this first-impression class action was significant; (2) the case would preclude other employment by the lawyers involved; (3) the fees charged were within the range of rates charged in this locality for complex litigation and class actions ($400.00 - $1200.00 per hour); (4) deadlines imposed by the Court resulted in the litigation proceeding at a quick pace; (5) the result obtained (100% recovery, with an expected payout of $28 million over 10 years) was impressive; (6) there was no prior relationship between any

of the lawyers and the Plaintiff, and no likelihood of obtaining future business from the Plaintiff, and (7) the lawyers and professionals have very high abilities and experience.  Id. at 4-10.

Mr. Josefsberg also opined that a contingency risk multiplier of 2.5 is reasonable.  He based this opinion on (1) the unlikelihood of obtaining competent counsel without the opportunity for a multiplier, since the case involved significant risk in the form of substantial expenses, novel issues and a formidable opponent; (2) there was no way to mitigate the risk of non-payment owing to the contingency fee arrangement; (3) the factors listed in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), including the amount involved, the results obtained and the type of fee arrangement favor application of the multiplier.  Id. at 11-13.  Mr. Josefsberg also concluded that the hourly rates of each of the legal professionals, together with the amount billed (prior to the reductions listed in the declarations) were reasonable, as were the expenses incurred. Id. at 13-16.

At the evidentiary hearing on the instant Motion, Mr. Josefsberg reiterated his opinion that the hourly rates charged by the Plaintiff's attorneys were reasonable.  He stated that the nature of this case was such that other employment would be precluded, noting also that the attorneys in this case worked many weekend hours.  Mr. Josefsberg testified that the case moved along quickly, creating time pressure for the attorneys; the results were magnificent; there was no prior relationship between any of the law firms and the Plaintiff, and the issues in the case were novel and complex. He stated that pre-litigation examination of the facts was of paramount importance, as was frequent communication among the lawyers.  Transcript (ECF No. 327) at 43-50.

Regarding the multiplier, Mr. Josefsberg testified that he spoke to more than 10 lawyers in the community, each of whom stated that they would not consider taking this case without

12

the possibility of a multiplier.  Mr. Josefsberg explained that a case such as this one places the entire law firm at risk, and a multiplier is a necessary incentive to ensure representation of "the little people."  <u>Id.</u> at 51.  He added that a multiplier was appropriate because there was nothing the Plaintiff's lawyers could do to minimize their risk, and the risk was increased because suing a company like GEICO involved taking on corporate America.  For those reasons, Mr. Josefsberg believed that a multiplier of 2.5 was appropriate.  <u>Id.</u> at 52-53.

Mr. Josefsberg also testified that he had reviewed generally the time entries of the attorneys and found them to be consistent with the best practices in the Southern District of Florida.  He pointed out that lawyers working on a contingency fee basis necessarily are motivated to work efficiently and not waste time.  Mr. Josefsberg also stated that grouping time entries according to the task involved is virtually impossible, and he had never seen it done.  Additionally, he testified that he had reviewed the costs incurred by the Plaintiff's attorneys and found them to be reasonable.  Finally, Mr. Josefsberg opined that at the outset of the case, success was unlikely.  <u>Id.</u> at 53-56.

On cross examination, Mr. Josefsberg conceded that he had not conducted an investigation of each time entry.  However, he stated that in his experience, while there might be up to 5% of errors in the billing entries, there were another 10% that fell through the cracks and were not billed.  He acknowledged that he had not listed the outside attorneys with whom he consulted, nor had he described the methodology of their interviews.  However, counsel for the Defendant declined Mr. Josefberg's offer to provide the names of the attorneys. Mr. Josefsberg also acknowledged hearing that the case had been referred to Chris Lynch and Ed Normand by an attorney from the law firm of Fowler White.  <u>Id.</u> at 58-63.

Mr. Josefsberg admitted that a cumulative charge for 66.5 hours reviewing emails did

not constitute contemporaneous billing, but stated that the Defendant should be required to pay the full amount because although there was some fault involved in the billing, there was no harm done. He also conceded that half an hour billed by two paralegals to review a paperless order was high, and that a billing entry made by an attorney for work done in a different case should be removed. Id. at 65-71.

Mr. Josefsburg acknowledged that the two firms who took the case initially did so at greater risk than the three firms that joined later. He reiterated his opinion that time spent on pre-litigation work and interoffice communications is compensable. Mr. Josefsberg stated that although it was not necessary to involve 5 law firms in this case, the case did require 7 to 15 attorneys (which could have been supplied by one law firm or several small ones). Id. at 74-78.

### III. DISCUSSION

The parties agree that the issue of attorneys' fees is governed by Florida law. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 259 n.31 (1975). The operable Florida statute is Fla. Stat. § 627.428(1), which provides, in pertinent part:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured . . . the trial court . . . shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

In determining the amount of fees to be awarded, Florida has adopted the federal lodestar approach. Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1146 (Fla. 1985). That case established eight criteria to be considered by the court in arriving at a reasonable number of hours for the work performed:

(1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

Id. at 1150.   In establishing a reasonable hourly rate, the court should consider all of these factors except the time and labor required, the novelty and difficulty of the question involved, the results obtained, and whether the fee is fixed or contingent.   The moving party has the burden of establishing the rate charged in the community by lawyers of reasonably comparable skill, experience and reputation for similar services.   Id. at 1150-51.   The number of hours reasonably expended multiplied by the reasonable hourly rate, produces the lodestar.   "Once the court arrives at the lodestar figure, it may add or subtract from the fee based upon a 'contingency risk' factor and the 'results obtained.'"   Id. at 1151.

The method for determining whether a  multiplier is warranted was established in Standard Guar. Ins. Co. v. Quanstrom, 555 So. 2d 828 (Fla. 1990).  There the court held that in tort

and contract cases, the factors to be considered are "(1) whether the relevant market requires a

contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate

the risk of nonpayment in any way; and (3) whether any of the factors set forth in <u>Rowe</u> are

applicable, especially, the amount involved, the results obtained, and the type of fee arrangement

between the attorney and his client." <u>Id.</u> at 834.  As to the quantity of the multiplier to be applied,

the court devised the following formula:

> If the trial court determines that success was more likely than not at
> the outset, it may apply a multiplier of 1 to 1.5; if the trial court
> determines that the likelihood of success was approximately even at
> the outset, the trial judge may apply a multiplier of 1.5 to 2.0; and if
> the trial court determines that success was unlikely at the outset of the
> case, it may apply a multiplier of 2.0 to 2.5.

<u>Id.</u>  However, "the application of a multiplier is not mandatory under <u>Rowe</u> when the prevailing

party's counsel is employed on a contingency fee basis."  <u>Id.</u> at 835.

In <u>Joyce v. Federated Nat'l Ins. Co.</u>, 228 So. 2d 1122 (Fla. 2017), a case involving

the application of Fla. Stat. § 627.428, the Florida Supreme Court observed that "this Court has

never limited the use of contingency fee multipliers to only 'rare' and 'exceptional' circumstances."

<u>Id.</u> at 1131-32.  Instead, the Court had recognized "the importance of contingency fee multipliers to

those in need of legal counsel," and pointed out that "the purpose of section 627.428 is to

'discourage insurance companies from contesting valid claims, and to reimburse insureds for their

attorney's fees incurred when they must enforce in court their contract with the insurance company.'"

<u>Id.</u> at 1132 (quoting <u>Bell v. U.S.B. Acquisition Co., Inc.</u>, 734 So.2d 403, 410 n.10 (Fla. 1999)).

While the lodestar amount is "properly analyzed through the hindsight of the actual outcome of the

case," the contingency fee multiplier, "which is intended to incentivize the attorney to take a

16

potentially difficult or complex case, is properly analyzed through the same lens as the attorney when making the decision to take the case." Id. 1133.

## A. Hourly Rates

As the Plaintiff points out, the Defendant's challenge to her claimed fees focuses on the third Rowe factor: the fee customarily charged in the locality for similar legal services. The Defendant objects to the hourly rates charged by the Plaintiff's attorneys, pointing out that because five very small law firms were involved in the case, work was performed by partners that ordinarily would be handled by associates billing at lower rates. The Defendant argues that for such tasks, partners should have billed at lower, associate-level rates. Also, the Defendant asserts that the Plaintiff and her expert were required to demonstrate that "no other local attorneys could have taken on this matter for lower rates." (ECF No. 308 at 11) In support of this assertion, the Plaintiff relies on Am. Civ. Liberties Union of Ga. v. Barnes, 168 F.3d 423 (11th Cir. 1999).

The Defendant's reliance on Barnes is misplaced. In that case, the Plaintiff sought compensation for its New York attorneys at New York rates, which were substantially higher than the customary rates in the Atlanta community, where the case had been filed. The court first noted that "[a] reasonable hourly rate is 'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation.'" Id. at 436 (quoting Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988)). The Barnes court held that "[i]f a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing to handle his claims." Barnes, 168 F.3d at 437.

In this case, the rates claimed by attorneys from Georgia and other parts of Florida

range from $390.00 to $750.00 per hour, and their paralegals billed at hourly rates ranging from

$125.00 to $325.00.[8] Mr. Josefsberg testified that the range of rates charged by attorneys in the

Southern District of Florida for complex litigation and class actions is $400.00 - $1200 per hour, and

that the prevailing rate for paralegals is $295.00 per hour.  Additionally, the court "is itself an expert

on the question and may consider its own knowledge and experience concerning reasonable and

proper fees." Norman, 836 F.2d at 1303. The range of rates cited by Mr. Josefsberg are consistent

with the undersigned's experience in this District, except that the undersigned finds that the range

charged by paralegals for this type of case ranges from $100.00 to $295.00 per hour.  Thus, the

Plaintiff is not seeking to compensate her attorneys at rates higher than those charged for similar

services by lawyers in this legal community, and she is not required to show that there were no local

lawyers who would have handled this case at a lower rate.

Accordingly, the undersigned finds that the rates claimed by each of the Plaintiff's

attorney's is reasonable, and that the rates for paralegals were reasonable except for that charged by

paralegal Alex Count of Mr. Normand's firm, who billed for 30.82 hours at $325.00 per hour.  Mr.

Count's services should be billed at $295.00 per hour.

While the undersigned agrees with the Plaintiff that if this case had been handled by

a single large law firm rather than five small ones, some of the work performed by partners might

have been accomplished by associates.  However, the undersigned declines to speculate on this issue

or to assign a lower billing rate to some portion of the tasks performed by partners.  Instead, the

undersigned believes that the "top-heavy" nature of the billing in this case can be considered when

---

[8]The Plaintiff's Motion asserts that her paralegals billed at $125 (ECF No. 301 at 13); that statement is contradicted by the billing records and declarations.

addressing the Plaintiff's request for a multiplier.

## B. Time Expended

The Defendant challenges three categories of tasks[9] for which it contends it is not responsible: pre-litigation work, work on unsuccessful motions, and inter-office and intra-office communications.

Regarding pre-litigation work, the Defendant relies on <u>Landmark Am. Ins. Co. v. Hacienda Vill. Homeowners Ass'n, Inc.</u>, No. 2:07-cv-00480-UA-DNF, 2009 WL 10670234, at *4 (M.D. Fla. Aug. 19, 2009), holding that a narrow construction of § 627.428 mandates that "the availability of attorneys' fees for 'prosecuting the suit' includes only those fees incurred after the formal initiation of the litigation; pre-suit fees are excluded."  However, fees associated with the drafting and filing of the complaint are compensable.  <u>Id.</u>  The Defendant objects to 33.7 hours expended by the Plaintiff's lawyers prior to drafting the initial complaint: 15.1 hours by Mr. Normand, 10.1 hours by Mr. Phillips, 8.4 hours by Mr. Lynch and 0.1 hours by Ms. Couch.

The undersigned agrees with the court in <u>Landmark</u> that a statute awarding attorneys' fees is in derogation of common law, and  that such a statute (including § 627.428) must be strictly construed. <u>Ins. Co. of North America v. Lexow</u>, 937 F.2d 569, 573 (11th Cir. 1991). However, the

---

[9] The Defendant asserts that it could object only to categories, rather than specific entries because the Plaintiff's attorneys failed to "group" their entries by subject matter, citing <u>Norman v. Housing Auth. of Montgomery</u>, 836 F.2d 1292, 1303 (11th Cir. 1988), where the court observed that a well-prepared fee petition would "include a summary, grouping the time entries by the nature of the activity or stage of the case."  The undersigned credits Mr. Josefsberg's testimony that in cases such as this one, a complex class action involving multiple attorneys from several law firms, the overlap of issues and tasks makes such grouping virtually impossible.

undersigned does not agree that a strict construction of the statute requires that pre-suit work be excluded, at least in a class action such as the instant case. Mr. Josefsberg emphasized the importance of investigating a complex case prior to initiating a lawsuit, and the undersigned notes that failure to conduct a sufficiently thorough investigation often results in a waste of the courts' and litigants' resources. Moreover, from a common sense perspective, investigation into the relevant facts and viability of a plaintiff's claims must necessarily be conducted at some point, and the plaintiff here should not be penalized because her lawyers prudently pursued that inquiry prior to commencing litigation. Finally, considering the complex nature of this case, the approximately 34 hours of pre-suit work expended by counsel for the Plaintiff was not excessive or unreasonable. Accordingly, the undersigned finds that these hours are compensable under § 627.428.

As to work on unsuccessful motions or unsuccessful claims, the Defendant argues that compensation for the unsuccessful motions for sanctions and for extensions of time should be denied. The Defendant identifies a total of 132.5 hours in this category. The undersigned notes that Mr. Lynch and all members of Mr. Hall's law firm voluntarily removed time entries for work spent on unsuccessful motions or unsuccessful claims. (ECF Nos. 301-1 at 5, 301-3 at 4) (The Defendant attributes 2 hours to Mr. Lynch, 36.7 hours to Mr. Hall and 7 hours to Mr. Lampros of Mr. Hall's firm.) The remaining 86.8 challenged hours are described by the Defendant as 72.3 billed by Mr. Pratt, 5 hours billed by Mr. Clay, 3.5 hours billed by Ms. Markham, 2.9 hours billed by Mr. Phillips, 1.6 hours billed by Ms. Sherwood, 1.3 hours billed by Mr. Mickelsen, and .2 hours billed by Ms. Gray.[10]

---

[10]The correct number of challenged hours for Mr. Phillips is 2.84 hrs. (ECF No. 308-10 at 25)

Generally, federal courts will make adjustments to the lodestar are when a plaintiff obtains only partial or limited success. In such instances, the court "may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion." Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983). However, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," and "the fee should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id. at 435. In the instant case, the result obtained by the Plaintiff clearly was excellent, despite her failure to prevail on the motion for sanctions and various motions for extension of time. The undersigned finds that the elimination of hours for time spent on unsuccessful motions which voluntarily has been done by lawyers in this case is sufficient, and no further reduction is required.

With regard to billing for meetings and telephone calls among the attorneys, the Defendant identifies a total of 532.5 hours in this category. The undersigned agrees with Mr. Josefsberg that regular conferences are essential in a case such as this one, which required the several attorneys involved to regularly discuss strategy, assign tasks and avoid duplication of effort by members of the legal team. While it may be appropriate in other circumstances for the Court to exercise its discretion to reduce compensation for time spent in inter-office and intra-office communication, no such reduction is required in the instant case.

The Defendant also objects to entries which it claims constitute block billing, are vague, or indicate inappropriate staffing (in the form of billing by partners at partners' rates for tasks which could have been performed by associates or support staff). After a review of the billing entries to which the Defendant objects (ECF No. 308 at 14-17), the undersigned finds that no reduction is required. The Defendant argued that Mr. Lynch's claim of .1 hour for each of 665 emails, which

21

were claimed in a consolidated entry (ECF No. 301-1 at 17), should not be allowed. Mr. Josefsberg conceded that this billing did not comply with the general requirement for contemporaneous billing. However, Mr. Lynch did not bill for this amount, despite stating his intention to do so in his declaration. (ECF No. 301-1 at 5).[11]

Finally, the Defendant objects to inclusion by the Plaintiff's attorneys for items she had agreed to remove. Specifically, the Defendant objects to entries for time spent on preparing the bill of costs and on the submissions connected to the instant Motion; on unsuccessful claims; on appellate work, and on travel time. (ECF No. 308 at 24-25)[12] The undersigned agrees that the Plaintiff is not entitled to recover for time spent on preparing fees and costs requests, State Farm Fire & Cas. Co. v. Palma, 629 So. 2d 830, 833 (Fla. 1993); on appellate work, Mims v. Arrow Fin. Servs., LLC, 900 F. Supp.2d 1336, 1342 (S.D. Fla. 2012), and on travel time, Citizens Prop. Ins. Corp. v. Pulloquinga, 183 So. 3d 1134, 1139 (Fla. 3rd DCA 2015). The Plaintiff does not dispute that the time entries identified fall within these categories.[13]

However, as discussed above, the undersigned finds that no further reduction is

---

[11]If Mr. Lynch had billed for this time, the amount would have been $49,875.00 and the undersigned would require that the claimed fee be reduced by that amount.

[12]The Defendant's Opposition to the Plaintiff's Motion incorrectly describes the number of hours billed for appellate work as identical to those billed for the "Amount of Fees" category. (ECF No. 308 at 24-25) The Court has reviewed the records for those professionals listed by the Defendant as having improperly billed for appellate work and finds that only half had billed for appellate work, for a total of 2.5 hours.

[13]Although the Plaintiff states in her Motion that her counsel "have taken out time related to amount of fees ...; unsuccessful claims ...; appellate work ...; and travel time to and from the lawsuit venue (Fort Lauderdale) ...," ECF No. 301 at 10-11, the billing records provided to the Court included time billed in such categories.

required for time spent on unsuccessful motions or unsuccessful claims.[14]  Accordingly, the undersigned finds that the following amounts must be deducted from the billed hours:

1. Hours spent on Bill of costs and Motion for Fees

Mr. Lynch: 15.5 hours

Mr. Phillips: 7.0 hours

Ms. Markham: 3.3 hours

Ms. Sherwood: .9 hours

Mr. Hall: .8 hours

Mr. Normand: .7 hours

2. Hours spent on Appellate Work

Ms. Markham: .8 hours

Ms. Sherwood: .5 hours

Mr. Normand: 1.2 hours

3. Travel Time

Mr. Lampros: 21 hours.[15]

---

[14]The Defendant objects to time spent on the Plaintiff's claim for declaratory relief, which the Defendant argues was an unsuccessful claim.  However, the Court did not dismiss that claim on the merits, but held that it was duplicative of Count 1 (asserting breach of contract), and that the Plaintiff had an adequate remedy at law in Count 1.  Therefore, time spent on Count 2 need not be deducted from the Plaintiff's attorneys' fees.  Moreover, this Count was dismissed early in the case, and the time attributable to work on it would be negligible (3.6 hours billed by Mr. Normand).

[15]The Defendant's Opposition to the Plaintiff's Motion challenges travel time only as to Mr. Lampros, and states that he billed 17 hours of travel time. (ECF No. 308, at 25) Mr. Lampros reported five billing entries which included travel time. (ECF No. 301-3 at 65) To the extent that he failed to specify what portion of each entry was for travel as compared to other tasks, the Court finds that the entire entry will be disallowed. For example, on March 23, 2018, Mr. Lampros billed 8 hours for "attend and depose defendant expert; return travel to Atlanta." (ECF

To summarize, the Court finds that the following hours, rates and total fees are appropriate:

| Name | Approved Hours | Hourly Rate | Total |
|---|---|---|---|
| Christopher Lynch | 279.1 | $750 | $209,325 |
| **TOTAL for firm** | | | **$209,325** |
| Edmund Normand | 569.4 | $750 | $427,050 |
| Jacob Phillips | 1,004.09 | $475 | $476,942.75 |
| Alex Couch | 30.82 | $295 | $9,091.90 |
| Paralegal Sherwood | 2.07 | $195 | $403.65 |
| Paralegal Montecalvo | 21.19 | $125 | $2,625 |
| Legal Asst Nampon | 16.01 | $75 | $1,200.75 |
| Legal Asst Doctor | 6.5 | $75 | $487.50 |
| Legal Asst Masters | 2.25 | $75 | $168.75 |
| **TOTAL for firm** | | | **$917,970.30** |
| Chris Hall | 1065.5 | $750 | $799,125 |
| Andrew Lampros | 269.9 | $750 | $202,425 |
| Gordon Van Remmen | 331.6 | $475 | $157,510 |
| Law Clerk Mensah | 27.8 | $75 | $2,085 |

---

No. 301-3 at 65)

24

| Law Clerk Barto | 8.75 | $75 | $656.25 |
| **TOTAL for firm** | | | **$1,161,801.25** |
| Bradley Pratt | 1,019.80 | $750 | $764,850 |
| Charles Clay | 16.9 | $750 | $12,675 |
| Brian Mickelsen | 21.5 | $390 | $8,385 |
| Paralegal Gray | 16.5 | $150 | $2,475 |
| Paralegal Leeson | 9.10 | $125 | $1,137.50 |
| **TOTAL for firm** | | | **$789,522.50** |
| Tracy Markham | 145.2 | $600 | $87,120 |
| Paralegal Roselle | 69 | $150 | $10,350 |
| **TOTAL for firm** | | | **$97,470** |

Accordingly, the total lodestar figure for the Plaintiff's attorneys' fees is $3,176,089.05.

## C. Multiplier

Mr. Josefsberg testified that all of the factors which favor application of a multiplier are present in this case: (1) the relevant market requires a continency fee multiplier to obtain competent counsel; (2) the attorneys were not able to mitigate the risk of nonpayment in any way; and (3) the factors set forth in Rowe are applicable, including the amount involved, the results obtained, and the contingency fee arrangements between the attorneys and the Plaintiff. Quanstrom, 555 So. 2d at 834. The undersigned finds that Mr. Josefsberg's opinion is supported by the declarations of the attorneys, and concludes that the employment of a multiplier is appropriate under

Florida law.  Joyce, 228 So. 2d at 1132-33.

The Plaintiff requests a multiplier in the amount of 2.5. As discussed earlier, the applicable formula is as follows: if the court determines that success was more likely than not at the outset, it may apply a multiplier of 1 to 1.5; if the likelihood of success was approximately even at the outset, it may apply a multiplier of 1.5 to 2.0; and if  success was unlikely at the outset of the case, it may apply a multiplier of 2.0 to 2.5. Quanstrom, 555 So. 2d at 834.

In the instant case, the undersigned finds that success was unlikely at the outset.  On the issue of whether the Defendant breached its contract by failing to pay sales tax and title transfer fees to the Plaintiff and the class, the undersigned believes that the likelihood of success was approximately even. Although Judge Dimitrouleas noted that the decision in Bastian v. United Servs. Auto. Ass'n, 150 F. Supp. 3d 1284, 1290 (M.D. Fla. 2015), denying summary judgment to an insurer on the issue of whether sales tax must be included in the cost of replacing an owned vehicle that was a total loss was persuasive, he also observed that the case was distinguishable. In any event, the Bastian decision is not controlling precedent and does not indicate that the Plaintiff's counsel here faced no risk in bringing this action. The decision in this case was on a question of law, decided on summary judgment, and the Eleventh Circuit may reverse this Court's ruling on this issue.

Moreover, from the perspective of the Plaintiff's counsel, it was unlikely that the Plaintiff would have access to sufficient data to ascertain the class. Compilation of the data necessary to identify class members was a gargantuan task against a formidable opponent, as evidenced by the multiple motions to compel and the piecemeal production of documents by the Defendant.  For all of these reasons, the undersigned concludes that a multiplier of 2 or 2.5 is appropriate.

As discussed above, the Defendant correctly noted that many tasks performed by counsel for the Plaintiff were handled by partners rather than associates.  The Plaintiff responds that each of the firms involved in this case were very small, necessitating the performance of the majority of work by partners.  The undersigned declined to assign lower billing rates to these partners, but the fact remains that the billing structure was top-heavy. On the other hand, the attorneys appeared to divide the work reasonably well. For example, more than half of the time billed by Mr. Lynch was prior to the filing of the Motion for Class Certification, and the lower number of hours he billed later in the case reflects that as other attorneys joined the Plaintiff's team they handled different aspects of the case. Considering all the circumstances, the undersigned concludes that the Court should exercise its discretion by applying a multiplier of 2 rather than 2.5.

The Defendant also argues that the three law firms who entered the case later were taking less of a risk and that for those firms, a lower multiplier is appropriate. As noted above, Hall & Lampros, LLP, began work in late October 2017, and entered appearances in this case in early 2018. Ms. Markham filed her Notice of Appearance in December 2017. Mr. Pratt filed a Notice of Appearance on January 4, 2018, just prior to the filing of the Plaintiff's Motion for Class Certification. Since these law firms entered the case before the class was certified (certification was granted in May 2018), the undersigned finds that the risk to them was not appreciably lower.

Therefore, after applying a multiplier of 2, the total attorneys' fee award in this case would be $6,352,178.10.

### D. Litigation Expenses and Service Award

The Plaintiff seeks an award of litigation expenses in the amount of $182,998.23 and

a service award for herself in the amount of $10,000.00.[16] The Defendant does not challenge any specific expense listed by any of the attorneys for the Plaintiff after the parties conferred, but argues that an award of expenses from the common fund is not permissible. The Plaintiff relies on Fed. R. Civ. P. 23(h), which provides that this Court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The Defendant argues that the Plaintiff has not demonstrated how an award of litigation expenses in this case is authorized by law or agreement.

The cases cited by the Plaintiff are Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1298 (11th Cir. 1999);  Houston Specialty Ins. Co. v. Vaughn, No. 8:14-cv-1187-T-17JSS, 2017 WL 6759709, at *5 (M.D. Fla. Dec. 29, 2017); Bobbitt v. Acad. of Court Reporting, Inc., No. 07-10742, 2009 WL 3336085, at *3 (E.D. Mich. Oct. 15, 2009), and Abraham v. BP Am. Pro.Co., No. CIV-09-961 WDS/KBM, 2013 WL12045197, at *2 (D.N.M. March 20, 2013). Waters, Bobbitt and Abraham each involved payment of fees and expenses from a settlement fund pursuant to a settlement agreement, and Bobbitt and Abraham specifically dealt with expenses to counsel of future fund administration (Bobbitt) and distributions (Abraham).  Houston Specialty held that the cost of an expert witness who testified on the issue of attorneys' fees was taxable under Fla. Stat. § 92.231. The Plaintiff has not cited any Florida case holding that litigation expenses that are not taxable costs should be included in an award of attorneys' fees under Fla. Stat. § 627.428.

The undersigned agrees with the Defendant that the Plaintiff has failed to establish

---

[16]The amount sought by the Plaintiff, even after reductions that resulted from the parties' pre-filing conferral process, does not equal the amount requested in the declarations submitted with the Plaintiff's Motion, which amount is $180,648.56.

that an award of litigation expenses is authorized by law or by an agreement between the parties. Therefore, the claimed expenses should not be awarded under Rule 23(h).

Regarding the Plaintiff's request for a service award for herself as class representative, the Defendant again points out that in each of the cases cited by the Plaintiff, the service award was given pursuant to the terms of a settlement agreement. David v. Am. Suzuki Motor Corp., No. 08-cv-22278, 2010 WL 1628362, at *6 (S.D. Fla. April 15, 2010); Bastian v. USAA, No. 13-cv-1454, Dkt. No. 145 (M.D. Fla. Nov. 1, 2017); In re Checking Account Overdraft Litig., No. 1:09-MD-02836-JLK, 2014 WL 11370115, at *1-13 (S.D. Fla. Jan. 6, 2014). The Plaintiff has not cited any authority for the proposition that this Court may, on its own volition, determine that a service award should be paid from the class fund. In the absence of any precedent, no service award should be given in this case.

## IV. CONCLUSION

This Court having considered carefully the motion papers, arguments of counsel and the applicable case law, it is hereby

RECOMMENDED that the Plaintiff's Verified Motion for Attorneys' Fees, Costs and Expenses, and Named Plaintiff's Service Award (ECF No. 301) be GRANTED, in part, and that the Plaintiff be awarded attorney's fees in the amount of $6,352,178.10.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with  the Honorable William P. Dimitrouleas, United States District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the

Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice.  See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

      DONE AND SUBMITTED at Fort Lauderdale, Florida, this 13th day of November, 2019.

                                          _____
                                          LURANA S. SNOW
                                        UNITED STATES MAGISTRATE JUDGE

Copies to counsel of record