**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO. 16-62942-Civ-DIMITROULEAS**

KERRY ROTH, on behalf of herself and
all others similarly situated,

     Plaintiffs,

v.

GEICO GENERAL INSURANCE
COMPANY,

     Defendant.

_____/

**CASE NO. 18-61361-Civ-DIMITROULEAS**

MARIANNE JOFFE, DEBBE SCHERTZER,
and STEPHANIE RODRIGUEZ, individually
and on behalf of all others similarly situated,

          Plaintiffs,

v.

GEICO INDEMNITY COMPANY,
GOVERNMENT EMPLOYEES
INSURANCE COMPANY and GEICO
GENERAL INSURANCE COMPANY,

          Defendants.

_____

**PLAINTIFFS' UNOPPOSED MOTION FOR**
**ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

Plaintiffs Kerry Roth, Marianne Joffe, Debbe Schertzer, and Stephanie Rodriguez (together "Plaintiffs"), individually and on behalf of the Settlement Class ("Class"), file this Unopposed Motion for Attorneys' Fees, Costs, and Service Awards.  Pursuant to the Global Settlement Agreement (the "Agreement" or "Settlement Agreement") between the Parties and the Settlement Class, Defendants Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company (together, "GEICO" or "Defendants") agreed to pay $8.7 million in attorneys' fees, up to $350,000.00 in case expenses and litigation costs, and $10,000.00 in service awards to each of the Named Plaintiffs.  Subject to the approval of this Court, the payment of these amounts for fees, costs, and service awards are separate and apart from the recovery of the Class, and therefore do not reduce the recovery of the Class.  This unopposed motion is supported by the Declarations of Expert Witnesses Robert C. Josefsberg (Exhibit B) and Jeffrey Martin (Exhibit C).

## I.   CONCISE STATEMENT OF THE RELIEF SOUGHT AND BASIS FOR REQUEST.

As provided by the Settlement Agreement (Doc. 352-1, at ¶¶ 41-44) preliminarily approved by this Court (Doc. 368), Plaintiffs request that the Court approve attorneys' fees of $8.7 million and reimbursement of costs and expenses of $350,000 to the law firms Normand PLLC, Hall & Lampros, LLP, Pratt Clay, LLC, Christopher J. Lynch, P.A., and Southern Atlantic Law Group, PLLC (together "Class Counsel"), and service awards of $10,000 for each Named Plaintiff (*i.e.*, Kerry Roth, Marianne Joffe, Stephanie Rodriguez, and Debbe Schertzer).

The requested fees, costs, and service awards were negotiated at arm's length between the Parties only after all other terms of the Settlement were agreed upon.  The fees, costs, and service awards have no impact on (and do not reduce) the amount of recoveries by members of the Class, were agreed to by Defendants as part of the Class Action Settlement, and are reasonable under either the "percentage of the fund" method adopted by the Eleventh Circuit in *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), or the lodestar and multiplier (multiplier of up to 5.0 x lodestar) method adopted by the Florida Supreme Court in *Kuhnlein v. Dep't of Revenue*, 662 So. 2d 309 (Fla. 1995).  *See* Exhibit A ("Phillips Decl.") at ¶¶ 32-33; Doc. 352-3 ("Max Decl."); Exhibit B ("Josefsberg Decl.").  Concurrent with the filing of this Motion, class notice is being made to approximately 18,000 Class Members.

## II.    FACTUAL BACKGROUND AND SETTLEMENT TERMS.

The Parties reached the Settlement Agreement after almost four years of litigation and following multiple mediations with three different independent mediators.  The Settlement Agreement was the product of substantial, multi-day negotiations, supervised by mediator Rodney Max, which culminated in a full-day mediation with Mr. Max on June 8, 2020.  Such a settlement is presumptively reasonable.  *See* McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.").  As set forth below, the Settlement Agreement provides Plaintiffs and those members of the Settlement Class who make a claim with a recovery that is greater than 100% of the relief originally requested by Plaintiffs in their respective *Roth* and *Joffe* complaints.  Additional components of relief include tag fees, additional interest for the *Roth* class, a larger *Roth* class size (with over 540 additional claims), a larger *Joffe* class size (encompassing longer periods of time and approximately 3,000 additional claims), and significant prospective relief benefitting all Florida GEICO insureds in the future.

### A.  Background.

These cases involve allegations that GEICO breached insurance policies (the "Policy") it issued to Plaintiffs and similarly-situated Florida insureds who leased their insured vehicles, by failing to pay the full amount of taxes and title fees necessary to replace a vehicle in the State of Florida.  *See Roth*, Doc. 1-2; *Joffe*, Doc. 1.  Plaintiffs alleged GEICO's Policy required payment of actual cash value upon the total loss of a covered auto, and defined actual cash value as the "replacement cost of the auto" less depreciation, which includes taxes and fees necessary to replace an auto in Florida; thus, these taxes and fees are required to be paid by GEICO to their insureds on total losses. Phillips Decl. at ¶¶ 3-5.  GEICO's practice and procedure in Florida was generally to not include full taxes and fees when calculating and issuing payments to insureds following the total loss of a covered leased auto.  *Id*. at ¶ 6.  These two class actions were filed to recover such unpaid taxes and fees from GEICO on behalf of insureds.

### B.  Litigation and Discovery History.

These two class actions were vigorously contested at every stage.  Motions practice included a motion to dismiss, motions to exclude expert testimony, competing motions for

summary judgment, motions to compel, motions for class certification, a motion to decertify the class, *Daubert* motions, and three separate appeals. The parties took 31 depositions, including class representatives, corporate representatives, GEICO employees, third parties, and expert witnesses. Plaintiffs reviewed over 50,000 pages of documents produced by GEICO and over half a billion data inputs involving over 300,000 total loss claims. The parties served over 20 sets of written discovery, including 17 sets of discovery served by the Plaintiffs. *Id*. at ¶¶ 9-10. Multiple rounds of Class notice were completed for approximately 15,000 claims. *Id*. at ¶ 12.

Prior to the settlement, the *Roth* matter was on appeal before the Eleventh Circuit and had been fully briefed (including two amicus briefs). In those two appeals, GEICO challenged class certification, the summary judgment Order, and the Court's prior Order granting attorneys' fees to the prevailing party based on Florida's fee-shifting statute applicable in such cases. *Id*. at ¶¶ 16-18. After this Court granted an indicative ruling stating that, upon remand, it was likely to grant preliminary approval of the proposed Settlement Agreement (Doc. 363), the Eleventh Circuit granted limited remand to this Court. Doc. 364. Following limited remand, this Court granted preliminary approval and directed Plaintiffs to file the present Motion by September 28, 2020. Doc. 368. This involved a complex procedural process of consolidating two cases, one of which was on appeal from final judgment for a certified class, requiring careful research to ensure the correct process of indicative rulings, remand, and substantive orders was conducted.

Before both this Court and the Eleventh Circuit, the Parties extensively briefed numerous complex and novel issues, including: the application of the "administrative feasibility" standard for ascertaining members of the Class (which was prescribed in unpublished opinions and has been addressed only twice by the Eleventh Circuit), the application of the *Daubert* standard in the context of class certification and the use of multivariable objective data from Defendants and third parties to ascertain class members, the interplay between statutory and insurance policy requirements, and the proper measure of loss in an auto insurance policy. Phillips Decl. at ¶¶ 11-12. Moreover, the ultimate liability issue – *i.e.*, whether leased vehicle insureds are owed full sales tax and title fees following a total-loss – had never before been addressed in Florida or anywhere in the United States. *Id*.

### C. The Proposed Settlement.

In the Settlement Agreement, GEICO agreed to pay Plaintiffs and members of the Settlement Class who submit a timely claim: (1) unpaid sales tax; (2) unpaid title and tag transfer

fees up to $79.85; and (3) prejudgment interest calculated at the applicable rate set by the State of Florida from the salvage close date or, if there is no salvage close date, 30 days after the claim's date of the loss. Additionally, GEICO agrees to include sales tax calculated at 6% (plus any applicable local surtax) of the adjusted vehicle value (irrespective of the sales tax amount paid, if any, during the lease and irrespective of sales tax paid, if any, to replace the vehicle), title transfer fees of (at minimum) $75.25, and tag transfer fees of $4.60, in total-loss claim payments to leased-vehicle Florida policyholders, unless and until: (a) GEICO implements a change in their Florida private passenger auto insurance policies to explicitly exclude sales tax and/or title and tag transfer fees; (b) the Eleventh Circuit or a Florida appellate court issues a decision holding taxes and/or fees are not owed to leased-vehicle insureds under policies utilizing language substantially similar to GEICO's; or (c) Florida statutes are amended to clarify sales tax and/or title and tag transfer fees are not owed to total-loss insureds.  Phillips Decl. at ¶ 22-23.

1.    **Approximate $80 Million Monetary Value and Greater Than 100% Recovery.**

Plaintiffs submit uncontroverted expert testimony that the monetary value of all claims under the terms of the Settlement Agreement for sales tax, title and tag transfer fees, and prejudgment interest is approximately $80.61 million, which includes: (1) approximately $31.31 million in cash available for claimants; (2) $40.25 million in prospective relief from GEICO's change in practice over a five-year period; and (3) $8.7 million in attorneys' fees and $350,000 in costs if approved by the Court. Ex. C ("Martin Decl.") at ¶ 7.  The average value per claim is over $1,700. *Id.* at ¶ 8.

The Settlement Class includes a larger class than the classes in the individual *Roth* and *Joffe* actions originally certified by the Court, thereby offering greater relief to significantly more Florida insureds. *Id*. at ¶ 9.[1] The Settlement Class includes over 3,500 additional claims ($5.71

---

[1] The *Roth* certified class against GEICO General runs from August 31, 2011 through August 30, 2016. The *Joffe* certified class, as to Government Employees Insurance Company and GEICO Indemnity, runs from June 15, 2013 through July 31, 2019, and as to GEICO General, from August 31, 2016 through July 31, 2019. As to each GEICO entity, the settlement extends the class-period cut-off from July 31, 2019 to August 1, 2020. This expansion provides relief for over 3,600 additional claims and approximately $6.8 million in settlement funds.  Martin Decl. at ¶ 7. The Agreement also provides for additional *Roth* claims identified based on data not produced in *Roth*, but produced in the similar case, *Cook v. Gov't Emples. Ins. Co.*, 2020 U.S. Dist. LEXIS 111956 (M.D. Fla. Jun. 22, 2020). Class Counsel identified over 450 additional claims, with damages exceeding $750,000, covered by the *Roth* class based on *Cook* data. Martin Decl. at ¶ 7.  GEICO

million in damages) that were not in the previously certified classes. *Id.* Of those additional claims, over 540 claims (over $1 million in damages) were added to the previously certified *Roth* class. *Id.* Moreover, pursuant to the Settlement, GEICO began paying sales tax, tag, and title fees on leased-vehicle total-loss claims on August 1, 2020. Phillips Decl. at ¶ 24. At the time of the February 5, 2021 fairness hearing, the prospective relief will have resulted in payment of approximately $1.92 million in sales tax and fees paid to approximately 1,300 insureds. Martin Decl. at ¶ 7.

**2.  Plaintiffs and Class Counsel Obtained Greater Than 100% of the Relief Originally Requested Despite a Split of Authority and While Contested Issues Were Pending Before the Eleventh Circuit.**

This Settlement provides final resolution and greater than 100% of the relief originally requested in the respective complaints. This is an excellent outcome because there is presently a split among courts addressing arguably similar claims. While some courts in Florida have denied motions to dismiss claims which are similar to Plaintiffs' claims, others have granted motions to dismiss (no state court has yet reached summary judgment on the claims, and no appellate court has addressed the claims). Phillips Decl. at ¶ 15. For example, in *Schenck v. Windhaven Ins. Co.*, No. 16-2018-CA-000023 (Fla. Cir. Ct. Duval Cty. May 17, 2019), a Florida court granted the defendant insurance company's motion to dismiss claims for title and license transfer fees. Likewise, in *Sigler v. Geico Cas. Co.*, 967 F.3d 658 (7th Cir. 2020), the Seventh Circuit affirmed the district court's dismissal of claims against GEICO for title and tag transfer fees, as well as sales tax. The Seventh Circuit's decision included grounds that, if accepted by the Eleventh Circuit, would have resulted in reversal of the *Roth* judgments on appeal at the time of settlement. The Fifth Circuit Court of Appeals also affirmed denial of similar claims against a different insurance company. *Singleton v. Elephant Ins. Co.*, 953 F.3d 334 (5th Cir. 2020). Plaintiffs believe these cases were wrongly decided or are distinguishable as applying different state's laws and/or different policy language. But the cases nevertheless demonstrate that the authority on the question central to this case is split and uncertain.

In addition, when the Settlement was reached, the favorable *Roth* judgments were being challenged on appeal. Phillips Decl. at ¶ 12. If this Agreement ultimately is not approved, and if

---

has agreed to review those additional claims and include all such leased-vehicle total-loss claims in this Settlement.

5

the Eleventh Circuit follows the Seventh Circuit's *Sigler* decision and agrees with GEICO's position, this Court's decision in *Roth* would be overturned, and the success Plaintiffs have secured in both *Roth* and *Joffe* would be reversed. This risk is significant and strongly supports not only the proposed settlement, but also the request for attorneys' fees, costs, and service awards given that Plaintiffs and Class Counsel successfully secured an Agreement that GEICO would pay greater than 100% of the alleged damages to all Settlement Class members who submit timely claims notwithstanding the uncertainty of the claims. Phillips Decl. at ¶¶ 15-19.

### 3. The Settlement Provides Additional Recovery to Class Members.

The Settlement includes cash available to *Roth* and *Joffe* class members of $31.31 million, which includes $5.7 million for claims that were added to the *Roth* and *Joffe* classes by virtue of the Settlement. Martin Decl. at ¶¶ 7, 9  These include 542 additional *Roth* claims, and 2,965 additional *Joffe* claims. The Settlement also provides greater recovery to Settlement Class Members than the damages alleged in the respective Complaints or awarded by this Court in the *Roth* judgments. All Settlement Class Members will receive an additional $4.60 in tag fees. All Settlement Class Members will receive prejudgment interest to run until 60 days after the preliminary approval Order. Martin Decl. at ¶ 10. The current *Roth* post judgment interest rate (which is less than prejudgment interest achieved in the settlement) commenced on November 21, 2018 (*Roth* Doc. 281), and March 26, 2019 (*Roth* Doc. 287).

The average claim value is over $1,700. Martin Decl. at ¶ 8. The large per-claimant recovery amount, over 100% recovery of damages originally alleged, the expanded class members, and the risk in the case all support the Settlement.

### 4. The Settlement Provides a Narrow Release.

The Settlement provides a limited and narrowly tailored release of claims and clarifies that the *res judicata* effect of this case is limited *only* to the specific sales tax, title fees, and tag fees at issue. The Settlement Agreement preserves all other claims that GEICO otherwise undervalued total losses. Phillips Decl. at ¶ 26.

### 5. The Settlement Provides for Robust Notice and Simple and Easy Claims Procedure.

The Settlement provides a robust and substantive Notice plan. The settlement administrator will send two separate direct mail notices during the notice period. Both notices by mail will include simple, easy-to-understand, detachable claim forms, and such claim forms will

have addressed and prepaid return postage. In addition to the two mail notices, the settlement administrator will initiate two separate email notices, both of which will enable class members to "click through" to the settlement website to access a pre-filled electronic claim form and make a claim.  Phillips Decl. at ¶ 25.  Members of the Settlement Class can request exclusion from the Settlement Class or object to the Settlement. *Id*. at ¶ 26; *see Braynen v. Nationstar Mortg.*, LLC, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence that the terms of settlement are fair and reasonable).

The Parties also agreed to a streamlined, simple, and straightforward claims process.  For the convenience of members of the Class in submitting claims, Defendants have extracted information from their claims records to pre-fill information on claim forms.  *Braynen*, 2015 WL 6872519, at *18; *see* Settlement Agreement at Exhibits 2-8 (Doc. 348-1).  No additional documentation is required beyond each Class Member's declaration that the information is correct to the best of their knowledge, and affirming they were a GEICO insured who, to the best of their knowledge, suffered a total-loss during the Class period and did not receive the full sales tax, title fees, or tag transfer fees.  Phillips. Decl. at ¶ 25.  The pre-filled mailed claim forms need only be signed and placed in the mail (the claim forms are addressed with postage prepaid). In sum, the claims process requires only the submission of a simple, almost entirely pre-filled form – and nothing else – for the Class Member to receive payment from the defendant entity with whom the Class Member will be familiar and quickly recognize.  *See Wilson v. Everbank*, 2016 WL 457011, at *9 (finding significant that class members need not submit any evidence or documentation beyond merely "checking a box" which "should take no more than a few minutes for the average claimant to complete.").  Class Members can also access a pre-filled electronic claim form on the website by providing a claim ID (which is provided in all mailed and email notices).  This will allow Class Members to electronically submit their claims with relative ease.

### 6.   Attorneys' Fees are Reasonable and Below the Eleventh Circuit Benchmark.

As provided by the Settlement Agreement (Doc. 348-1 at ¶ 42), Class Counsel now makes this application for attorneys' fees of $8.7 million and costs of $350,000. The requested fees and

costs are to be paid separately from, and will not reduce in any way, the amount of damages available to be paid to Class Members.[2] Phillips Decl. at ¶ 29.

The attorneys' fees are 21.56% of the benefit to the Class (not including prospective relief), 18.45% when including only one year of prospective relief, and 10.8% of the benefit to the Class when including five years of prospective relief. *See* Martin Decl. at ¶ 11.  The percentages of recovery requested here fall within the Eleventh Circuit benchmark for attorneys' fees, which is 20-25% of the benefit to the class.  *See Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011) ("[T]his Court has often stated that the majority of fees in these cases are reasonable where they fall between 20-25% of the claims.") (citations and quotations omitted).[3] In *Camden I*, the Eleventh Circuit noted that while there is "no hard and fast rule mandating a certain percentage of a common fund which may be reasonably awarded as a fee," the "majority of common fund fee awards fall between 20% to 30% of the fund" with the median of 25% as a "benchmark" percentage.  946 F.2d at 774-75. The $8.7 million in fees sought represent 10.8% of the total benefits secured for the Class including five years of prospective relief for GEICO's changed practice. *See Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (approving $5 million in fees constituting 9.4% of monetary value to class including prospective relief as being "well below the 25% benchmark established in *Camden I*.")

Importantly, the requested attorneys' fees, costs, and service awards are separate from the Class recovery and do not reduce the over 100% recovery that is provided to each Class Member who makes a claim. Phillips Decl. at ¶ 29; *see also, Mahoney v. TT of Pine Ridge, Inc.*, 2017 WL 9472860, at **10-11 (S.D. Fla. Nov. 20, 2017) (courts consider settlement cash fund value and injunctive relief when applying benchmark attorneys' fees percentage); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342–43 (S.D. Fla. 2007) (same).

As more fully set forth below, the reasonableness of the attorneys' fees and costs is also supported by the declaration submitted by Robert C. Josefsberg, one of the preeminent class action and complex litigation practitioners in South Florida (Exhibit B), the declaration of statistician and

---

[2] The Parties reached agreement on the merits claims prior to beginning discussion of the question of attorneys' fees, costs, and service awards. Max Decl. at ¶ 13.

[3] Numerous decisions recognize that fees paid separately by a defendant are included in the class benefit.  *See, e.g., Poertner v. Gillette Co.,* 618 Fed. Appx. 624, 628 (11th Cir. 2015); *Johnston v. Comerica Mtg. Corp.,* 83 F.3d 241, 245-46 (8th Cir. 1996); *In re Managed Care Lit.,* 2003 WL 22850070 at *6 (S.D. Fla. Oct. 24, 2003).

data expert Jeffrey Martin (Exhibit C), and the declarations submitted by Class Counsel attached as composite Exhibit D.

### 7.     The Service Awards Are Reasonable.

As provided by the Settlement Agreement (Doc. 348-1 at ¶ 42), Plaintiffs seek Service Awards of $10,000 as compensation for their service as class representatives. Any awards approved by the Court will be paid separately by GEICO and will not impact nor reduce in any way recoveries by Class Members. Phillips Decl. at ¶ 29.  Each of the Named Plaintiffs sat for a lengthy deposition, answered extensive discovery, responded to requests for production requiring locating numerous documents, participated in multiple mediations during (and after) which they provided input to counsel relating to settlement negotiations, consistently followed up with counsel on major issues and pleadings, requested updates, sought to understand all legal and factual issues, and stayed up-to-date on relevant rulings and orders.  *Id*. at ¶ 28.  Each Named Plaintiff submits a declaration outlining their efforts in this case.   Ex. E (composite exhibit of all Plaintiffs' declarations).  Their efforts on behalf of the Settlement Class support the service awards requested here.  Such awards are proper under Florida law.

### 8.     Case Risks.

These cases included and continue to include significant risks, including (1) the Eleventh Circuit may follow the Seventh Circuit's *Sigler* decision, or separately conclude that Fla. Stat. § 626.9743 (setting total loss payment procedures) controls and does not require payment of sales tax or title and tag transfer fees to leased-vehicle insureds, or that the Policy does not require payment in the first instance; (2) the Florida Supreme Court or other state appellate court could address and resolve the issues adverse to Plaintiffs and the Class before the case is finalized; and (3) class certification could be overturned based on various factors including that individualized issues exist or that the Class is not ascertainable, as Defendants argued in opposing class certification in this Court and on appeal in the Eleventh Circuit. Phillips Decl. at ¶¶ 15-18. Moreover, as noted above, there is a split of authority on the question of whether payment of actual cash value (or payment of "loss") requires inclusion of sales tax and transfer fees, including in Florida, where two Florida state courts holding that it does not.  *Schenck v. Windhaven Ins. Co.*, No. 16-2018-CA-000023 (dismissing claims for title and tag fees under actual cash value policies); *Williams v. Mercury Indemnity Ins. Co. of Am.*, Case No. 19-004620-CL (Fla. Cir. Ct. Pinellas

Cty. Apr. 8, 2020) (same); *Sigler v. Geico Cas. Co.*, 967 F.3d 658 (7th Cir. 2020) (sales tax and fees not included in "loss" and thus not covered under the GEICO policy).

Class Counsel and Named Plaintiffs were aware of and bore the substantial risks, and, notwithstanding such risks, vigorously prosecuted this action.  Class Counsel committed over 9,600 hours and over $350,000 in costs spent without any possibility such costs and time would be reimbursed if Plaintiffs were unsuccessful in this litigation. Phillips Decl. at ¶ 18.

### III.   ARGUMENT AND CITATION OF AUTHORITY.

#### A.  The Court Should Give Great Weight to the Parties' Agreement.

This Court is not bound by the Parties' agreement, and, indeed, has a duty to independently evaluate the requested fees. Nonetheless, the Settlement Agreement is entitled to great weight because it resulted from adversarial negotiations after the merits of the benefits available to members of the Class was already agreed. *Id.* at ¶ 21; *see also, e.g., Strube v. Am. Equity Inv. Life Ins. Co.,* 2006 WL 1232816, at *2 (M.D. Fla. May 5, 2006); *Elkins v. Equitable Life Ins. Co.,* 1998 WL 133741, at *34 (M.D. Fla. Jan. 27, 1998);  *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 695 (N.D. Ga. 2001).  It has been noted:

> The Court finds that the fee and expense negotiations were conducted at arm's length, only after the parties had reached agreement on all terms of the Settlement. There is no evidence in this case that the Settlement, or the fee and expense agreement, was in any way collusive.  Under these circumstances, the Court gives great weight to the negotiated fee in considering the fee and expense request.
>
> Such agreements between plaintiffs and defendants in class actions are encouraged, particularly where the attorneys' fees are negotiated separately and only after all terms of the settlement have been agreed to between the parties. *See Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983) (noting that negotiated, agreed upon attorneys' fees are the "ideal" toward which the parties should strive and stating that "[i]deally, of course, litigants will settle the amount of a fee").

*Manners v. Am. Gen. Life Ins. Co.,* 1999 WL 33581944, at *28 (M.D. Tenn. Aug. 11, 1999) (some internal citations omitted); *see also, e.g. Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").

This Court has cited *Manners* with approval, and held:

The Court finds that the parties' agreement with regard to the payment of fees and expenses was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of collusion or fraud. As a result, the parties' agreement is entitled to substantial weight…

*James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.,* 3:07-CV-598-TJC-MCR, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) ("*Hinson I*") (citing *Strube v. Am. Equity Inv. Life Ins. Co.*, 2008 U.S. Dist. LEXIS 28582 at *6–7 (M.D. Fla. May 5, 2006); *Elkins v. Equitable Life Ins. Co.*, 1998 U.S. Dist. LEXIS 1557 (M.D. Fla. Jan. 27, 1998); *Ingram v. Coca–Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001)).

In other words, where the amount for attorneys' fees and costs is reached by agreement – and particularly where, as here, the amount awarded is paid separately by the defendant and does not impact the amount recoverable by members of the class – the focus of a court's analysis is not on the amount, but on ensuring that whatever amount was agreed to did not result from any collusion between the parties. Absent indication of collusion, great weight is afforded the parties' agreement. *See Strube v. Am. Equity Inv. Life Ins. Co.*, 2006 WL 1232816, at *2 (M.D. Fla. May 5, 2006). This is largely for two reasons – first, because the benefits for the class are already decided and will not be impacted by the fee amount, class counsel is incentivized to maximize fees while the defendant can "bargain for lower fees using the risk of delay and the potential conflict of interest which could [arise] if counsel delay[s] settlement for a higher fee." *Id*. at *6. Second, because fees are paid separately and not from the available class benefits, the defendant is incentivized to pay as low a fee as possible. *See Elkins*, 1998 WL 133741, at *34 (because defendant was paying fees "separate and apart from any recovery to the Class, [the defendant] had a particular incentive to bargain strenuously to keep the fee as low as possible."). Such principles apply here – the Parties agreed on all substantive terms prior to negotiating attorneys' fees and costs, and GEICO is paying such fees and costs separately from the benefits available to Class Members. Max Decl. at ¶¶ 12-13; *see also, e.g.*, *Brna v. Isle of Capri Casinos Inc.*, 2018 U.S. Dist. LEXIS 26662, at **4-5 (S.D. Fla. Feb. 20, 2018) (Rodney Max's involvement "serves to reject any notion" that the settlement involved collusion); McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation" strongly suggests there was no collusion).

The Settlement Agreement reflects the economic realities of the marketplace, one in which GEICO wanted to pay as little as possible while Class Counsel had an incentive to obtain a larger award. The competing pressures on the Parties served as a substitute for the incentives that

normally drive *private* fee negotiations, ensuring that the agreed-upon fee does not constitute a windfall. *See generally, In re Continental Illinois Sec. Lit.,* 962 F.2d 566, 572-73 (7th Cir. 1992) (noting that the court's objective is to award a fee providing the lawyers what they would have achieved through arm's length bargaining with a paying client). Indeed, GEICO was more successful in keeping fees low than in a typical private fee negotiation. GEICO negotiated an amount equating to approximately 10% of the benefits obtained, which is less than the typical private-party fee (33 1/3%) and less than the class action benchmark (20-30%). Moreover, the fees and costs negotiated take *nothing away from the Class Members*, and the Settlement provides over 100% recovery to Class Members who make a claim. Phillips Decl. at ¶ 22.

### B.   The Fees are Reasonable Under the Common-Fund Doctrine.

#### 1. The Common-Fund Doctrine and Eleventh Circuit Law.

Courts have long recognized the common fund doctrine, under which attorneys who create a recovery benefitting a group of people may be awarded their fees and costs from the recovery. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Lit.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989). This doctrine also ensures that those who benefit from a lawsuit are not "unjustly enriched." *Van Gemert*, 444 U.S. at 478.

The Eleventh Circuit has directed that the fee be based upon a percentage of the class benefit. *Camden I*, 946 F.2d at 774-75. Courts have significant discretion in choosing the proper percentage. *Id*. at 774 ("There is no hard and fast rule…the amount of any fee must be determined upon the facts of each case."). Courts should look at factors such as the time at which settlement was reached, any substantial objections, the economics of class actions, the *Johnson* criteria, and any other "unique" circumstances. *Id*. at 775. The Eleventh Circuit prescribed that a fee award of 50 percent of the benefit is the upper limit; that most fee awards fall between 20-30 percent; and that 25 percent is the "benchmark" unless the circumstances suggest a more appropriate percentage. *Id*. at 774-75.

### 2. The Requested Fees are Approximately 10.8% of the Benefits Obtained.

The benefits to the class are approximately $80.61 million, which includes: (1) approximately $31.31 million in cash available for claimants with an average value of $1,700 per claim (Martin at ¶ 8);[4] (2) $40.25 million in prospective relief from GEICO's change in practice over a five-year period; and (3) $8.7 million in attorneys' fees and $350,000 in costs if approved by the Court.  Martin Decl. at ¶ 7. The $80.61 million benefit does not include the approximately $1.92 million that will have been paid pursuant to GEICO's change in business practice from August 1, 2020 through fairness hearing set for February 5, 2021.  *See, e.g., Camden I,* 946 F.2d at 771 (recognizing that fees are properly based on "monetary or nonmonetary benefits"); *Hinson v. AT&T Services, Inc.,* No. 3:13-cv-00029-TJC-JRK (Order of 12/16/16, Doc. 172) ("*Hinson II*") (approving fees of under 12 percent of a common benefit fund including cash available to class, attorneys' fees and costs, and benefit of change in practices); *Manual for Complex Litigation* § 21.7 at 335 (4th ed.) ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney's fees and expenses... the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class"). Numerous decisions recognize that fees paid separately by a defendant are included in the class benefit. *See, e.g., Poertner,* 618 Fed. Appx. at 628; *Johnston,* 83 F.3d at 245-46; *In re Managed Care Lit.,* 2003 WL 22850070, at *6 (S.D. Fla. Oct. 24, 2003).

### C.  The Percentage Sought by Class Counsel is Justified.

The requested fee is approximately 10.8% of the total benefit to the Class. Martin Decl. at ¶¶ 7, 11. The requested fee meets the guidelines of *Camden I* and, at approximately 10.8% of the class benefit, is "well below the lower-end of the threshold" of 20% approved by the Eleventh

---

[4] The entire fund available to class members is used to determine the benefit to the class for the purpose of determining fees. That class members may not file claims for the entire amount available does not impact the fee analysis. Both the Supreme Court and the Eleventh Circuit have approved calculating fees based on the total value of the settlement, regardless of actual payout to the class. *See Van Gemert,* 444 U.S. at 480-82; *Waters v. Int'l Precious Metals Corp,* 190 F.3d 1291, 1295-97 (11th Cir. 1999).  This approach is widely followed, both in this circuit and elsewhere. *See, e.g., Montoya v. PNC Bank. NA,* 2016 WL 1529902, at *16 (S.D. Fla. Apr. 13, 2016); *Pinto,* 513 F. Supp. 2d at 1339; *Stahl v. MasTec, Inc.,* 2008 WL 2267469, at *1 (M.D. Fla. May 20, 2008); *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 437-38 (2d Cir. 2007); *Williams v. MGM- Pathe Comm. Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997).

Circuit, and *a fortiori* the benchmark of 25%. Josefsberg Decl. at ¶ 23. The requested fee therefore is justified under the case law and the facts of this case. *See, e.g.*, *Waters v. Int'l Precious Metals Corp*, 190 F.3d 1291, 1295 (11th Cir. 1999) (approving fee of 33.3%); *In re Checking Account Overdraft Litig.*, 2014 WL 11370115, at *13 (S.D. Fla. 2014) (awarding fees of 30%); *Pinto v. Princess Cruise Lines*, 513 F.Supp.2d 1334, 1342 (same).

The fees requested are proper under the *Johnson* factors, which are "appropriately used in evaluating, setting, and reviewing" the percentage awarded. *Camden I*, 946 F.2d at 775 (*citing Johnson*, 488 F.2d 714). Mr. Josefsberg provides detailed analysis of the *Johnson* factors and opines that they support the requested fees. Josefsberg at ¶¶ 46-48. The fees are proper and within the Eleventh Circuit benchmark whether calculated without consideration of prospective relief (21.56%), including only one year of prospective relief (18.45%), or including five years of prospective relief (10.8%). Josefsberg Decl. at ¶ 44 (proper and within the benchmark); Martin Decl. at ¶ 11 (calculating the percentages).[5]

### 1. The Time and Labor Required.

Substantial time and labor was required to investigate and litigate these cases – indeed, Class Counsel invested over 9,666 hours having a lodestar of over $6.095 million, and expect to expend approximately 180 more hours through finalization of this case and payment to Class Members. Phillips Decl. at ¶ 31. These two class actions have been contested at every stage. Motion practice included a motion to dismiss, motions to exclude expert testimony, competing motions for summary judgment, motions to compel, motions for class certification, along with three separate appeals. The Parties took 31 depositions, including class representatives, corporate representatives, GEICO employees, third parties, and expert witnesses. Plaintiffs reviewed over 50,000 pages of documents produced by Defendants and over half a billion data inputs. The parties served over 20 sets of written discovery, including 17 sets of discovery served by the Plaintiffs. *Id*. at ¶¶ 10-12. Multiple rounds of class notice have been completed relating to over 15,000 claims. *Id*. Class Counsel engaged in a lengthy settlement negotiation process relating to over 100 pages of settlement and notice documents, plus website content, FAQs and answers, phone

---

[5] Class Counsel believe that the following factors also support Plaintiffs' fee request: (1) time limitations, (2) undesirability of the case, and (3) nature of client relationship. *See* Josefsberg Decl. at ¶¶46(b); 66, and 70-71 (difficult issues presented by the case, the nature of client relationship, and time limitations all support Plaintiffs' request).

recordings, and help desk scripts.  Class Counsel negotiated very favorable notice provisions that ensured fair notice to Class Members and an extremely simple claims process.

The work was justified in view of the issues and how the case was defended. As a result, this factor supports the requested fee. *See* Josefsberg Decl. at ¶ 46(a).

### 2. Novelty and Difficulty of Questions Involved.

The central question at issue – whether leased-vehicle insureds were owed full sales tax and fees following a total-loss – was one of first impression and had never been brought in Florida or the United States prior to *Roth*. This is critical, because, in *Johnson*, the sole issue addressed by the Fifth Circuit in prescribing "novelty and difficulty" as a factor was that "[c]ases of first impression generally require more time and effort on the attorney's part." *Johnson*, 488 F.2d at 718. Moreover, not only was this an issue of first impression on the merits, but there were also complex class certification issues, including, with expert involvement, analysis of voluminous data for over 300,000 total loss claims (of which only approximately 6% were leases), and determination of which of the claims involved leased vehicles. Because GEICO does not track leased vehicle data, Class Counsel vigorously pursued the production of electronic data to enable Class Counsel to identify leased vehicles from a multitude of "leased-vehicle indicators" contained in GEICO's data. Class Counsel paid over $25,000 for third-party data to check the leased vehicle determinations on the heavily contested issue of ascertainability. *See* Phillips Decl. at ¶ 11.  The difficulty of the case strongly supports the requested fee award. *See* Josefsberg Decl. at ¶ 46(b).

### 3. Skill Requisite to Performed Services.

For many of the reasons set forth in the other factors outlined herein – i.e., the risk involved, that this case was one of first impression, the complicated and voluminous discovery and analysis related to class certification – this case required class counsel who possessed high level of energy, skill, and experience in class litigation. It required counsel with the expertise to address the numerous and significant legal issues, often in underdeveloped areas of the law, and with the experience to manage the logistics inherent in a class comprised of thousands of members. *Id*. at ¶ 46(c). As seen by the excellent results obtained, Class Counsel possessed the necessary experience and skill. *Id*. at ¶ 46(d).

### 4. Preclusion of Other Employment.

Given the substantial time commitment – Class Counsel expended over 9,666 hours litigating this case, see Phillips Decl. at ¶ 18 – each Class Counsel firm forewent other fee and

profit-generating opportunities in pursuit of this case. *See* Composite Ex. D. This is unsurprising – indeed, it is essentially unavoidable – given the nature of the case. Josefsberg Decl. at ¶ 46(f).

### 5. Customary Fee.

The usual fee range for common fund cases is 20% to 30%, with 50% as the upper limit. *Camden I*, 946 F.2d at 774-75. The fee requested here of approximately 10% is well under this customary range. *See also* Josefsberg Decl. at ¶ 46(g).

### 6. Whether Fee is Fixed or Contingent.

This action was prosecuted entirely on a contingent fee basis. Phillips Decl. at ¶ 18. If Plaintiffs had been unsuccessful, Class Counsel would receive nothing and would have suffered significant out-of-pocket loss of all expenses due to the fact that they advanced all litigation expenses. *Id*. Numerous courts have recognized that such risk deserves extra compensation and is a critical factor in determining the reasonableness of a fee. *See, e.g.*, *In re Dun & Bradstreet Credit Svcs. Cons. Lit.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990); *Behrens v. Wometco Enterprises., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 889 F.2d 21 (11th Cir. 1990); *In re Cont. Ill, Sec. Lit.*, 962 F.2d 566, 569 (7th Cir. 1992).

### 7. Amount Involved and Results Obtained.

Class Counsel secured excellent results for the Class under difficult circumstances. *See* Josefsberg Decl. at ¶ 46(e).  Class Members who submit a claim will recover 100% of the sales tax and title fees alleged to be overpaid, plus interest and an additional $4.60 in registration (tag) fees. Phillips Decl. at ¶ 34. As outlined above, the amount of cash available to make these payments is over $31.31 million.  GEICO's agreement to change its practices will result in an additional $1.92 million in benefits already secured through the fairness hearing on February 5, 2021.  The value of GEICO's change in practice exceeds $40.25 million over a five-year period.  Martin Decl. at ¶ 7.  The amounts involved support the requested fee.

### 8. Experience, Reputation, and Ability of the Attorneys.

As Mr. Josefsberg testified, Class Counsel collectively possess considerable experience, skill, and reputation in complex and class litigation, which supports the fee requested here. Josefsberg Decl. at ¶ 46(d).  This factor favors the requested fee.

### 9. Awards in Similar Cases.

Awards in similar cases more than justifies the requested fees. Josefsberg Decl. at ¶ 46(h) (*citing*, *inter alia*, *Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla.

Nov. 1, 2017) (total-loss class action where court awarded fees of approximately 9.4% of benefits); *Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *7 (S.D. Fla. Oct. 24, 2014) (awarding fees of 16% in forced-place insurance settlement)). The requested fees are, as a percentage, significantly lower than fees in similar cases. *See, e.g.*, *Waters*, 190 F.3d at 1295 (11th Cir. 1999) (33 1/3%); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d. 1330, 1358 (S.D. Fla. 2011) (30%); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *2 (N.D. Ga. Oct. 26, 2012) (awarding fee of 33.3% and listing cases awarding fees based on similar or higher percentages); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at **5-6 (S.D. Fla. Sept. 26, 2012) (noting that fees in the Eleventh Circuit are "roughly one-third" of the benefit to the class and listing cases awarding fees of 30% or higher).

## 10.  Other Factors.

The economics of class actions require that class counsel be adequately compensated – otherwise, consumers will find it increasingly difficult to secure good lawyers to undertake their cases.  As one court observed:

> [C]ourts . . . have acknowledged the economic reality that in order to encourage "private attorney general" class actions brought…on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid."

*Mashburn v. Nat'l Healthcare, Inc.,* 684 F.Supp. 679, 687 (M.D. Ala. 1988); *see also, e.g. In re Checking Account Overdraft Litig.*, 2014 WL 11370115, at *17 (if not awarded a bonus, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing") (quotation omitted). Absent a premium incentive, it would make no economic sense for counsel to undertake risky, complex consumer class actions. *See* Josefsberg Decl. at ¶¶ 79-83. Other factors support the fee requested here. *Id.* at ¶¶ 47-48.

## D.  Fees are Reasonable Under Florida's Lodestar with Multiplier Method.

Generally, where attorneys' fees are negotiated in settlement (after other terms are agreed), courts apply Eleventh Circuit law when analyzing the reasonableness of the fee under Rule 23(h). *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694-95 (S.D. Fla. 2014) (analyzing reasonableness of attorneys' fees under Rule 23(h) upon settlement of state-law claims

under Eleventh Circuit law, and noting that "[t]he 'common fund' analysis is appropriate even where the fee award will be paid separately by Defendants."). However, if Florida law applies, the fees requested are reasonable – indeed, Class Counsel could seek a significantly higher amount under Florida law.

In Florida class actions, the reasonableness of attorneys' fees is based upon their lodestar,[6] plus a multiplier applied to the lodestar of up to 5.0. *Kuhnlein v. Dep't of Revenue*, 662 So. 2d 309, 315 (Fla. 1995) (raising potential multiplier to 5.0 "to alleviate the contingency risk factor involved and attract high level counsel"). This applies where the attorneys' fees issue is resolved through settlement, even where the underlying claim would be capped at a lower multiplier or where no multiplier could be applied. *See Barnhill v. Fla. Microsoft Anti-Trust Litig.*, 905 So. 2d 195, 200 (Fla. Dist. Ct. App. 2005) (rejecting argument that it was error to approve fees above the lodestar where the underlying claim would not have allowed multiplier because "the attorneys' fees issue was resolved by agreement of the parties…[not] a jury verdict and judgment" and noting that "the fees in no way diminished the amount of the benefits to the class."); *see also Ramos v. Philip Morris Cos.*, 743 So. 2d 24, 33 n.8 (Fla. Dist. Ct. App. 1999) (holding that where attorneys' fees are based on settlement agreement and not pursuant to statute, *Kuhnlein* 5.0 multiplier applies even where a case is "not a common-fund case" and noting that "[a]ny reduction in the fee award would benefit only the tobacco companies and not the class members.")

Here, Class Counsel expended over 9,666 hours prosecuting the two cases for a lodestar of $6,095,570. Phillips Decl. at ¶ 31 (citing Composite Ex. D (Class Counsel Declarations)). If the multiplier this Court already found appropriate under § 627.428 of 2.0 were applied (Docs. 328 and 333), the reasonable fee would be $12.19 million. If the permitted multiplier under *Kuhnlein* for common-fund and class action settlement agreements of 5.0 were applied, the reasonable fee could be as high as $30.4 million. Based on Class Counsel's lodestar, $8.7 million is reached with a multiplier of merely 1.43.[7] As such, the requested fees are reasonable under both Eleventh Circuit and Florida law. Josefsberg Decl. at ¶¶ 52, 90.

---

[6] In Florida, the lodestar is controlled by *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145, 1150-51 (Fla. 1985). Because the factors overlap almost entirely with the *Johnson* factors already addressed, Class Counsel will not repeat them here.

[7] The multiplier of 1.43 is less than the 1.5-2.0 that *Quanstrom* provides should be awarded when the likelihood of success is "even" at the outset of the cases (this would assume *Quanstrom* cap applies, which, according to *Kuhnlein*'s progeny, it does not where attorneys' fees are based on a

### E.  The Court Should Approve the Requested Costs.

Class Counsel seeks approval of $350,000 in costs and expenses. Class Counsel has expended over $375,000 in litigation costs and expenses to date. Phillips Decl. at ¶ 31. Because such costs exceed the amount GEICO agreed to pay, the Court should direct GEICO to pay to Class Counsel $350,000 in costs as provided in the Settlement. *See, e.g.*, *Waters*, 190 F.3d at 1298 (recognizing that class counsel is entitled to costs in addition to attorneys' fees); *see also*, Josefsberg Decl. at ¶ 92 ($350,000 in litigation expenses is reasonable).

### F.  The Court Should Approve the Requested Service Awards.

The Settlement Agreement also provides that Plaintiffs may make an application for Service Awards up to $10,000 to each Named Plaintiff, to be paid by GEICO separate and apart from the payments available to Class Members. Settlement Agreement at ¶ 42. In this diversity case involving a dispute of state contract law, state law applies to the question of service (or "incentive") awards. *See Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 861 F.3d 1182, 1195 (10th Cir. 2017) (addressing whether to grant service award, and holding that "[w]e think it clear that…*Erie* requires us to apply Oklahoma law."). Under Florida law, service awards in class actions are appropriate as compensation for the fact that class representatives are "identified as a class litigant in public records…[are] subject to fiduciary duties [and] may be deposed and required to produce records" and must engage in the litigation proceedings. *Altamonte Springs Imaging, L.C. v. State Farm Mut. Auto. Ins. Co.*, 12 So. 3d 850, 857 (Fla. Dist. Ct. App. 2009) (affirming $10,000 award because being a class representative "is less an honor than a headache").[8]

---

class action settlement). *Standard Guaranty Insurance Co. v. Quanstrom*, 555 So. 2d 828, 834 (Fla. 1990); *see also Joyce v. Federated Nat'l Ins. Co.*, 228 So. 3d 1122 (Fla. 2017) (approving *Quanstrom*).  The fees requested here are proper under the Eleventh Circuit benchmark, the settlement guidelines of *Kuhnlein*, and Fla. Stat. § 627.428 as applied in *Joyce* and *Quanstrom*.

[8] The Eleventh Circuit recently disallowed service awards in a case asserting claims under federal law. *Johnson v. NPAS Sols., LLC*, 2020 WL 5553312 (11th Cir. Sep. 17, 2020). That case is inapplicable here, however, because the case arose under federal law (and thus federal law applied), while this Court, sitting in diversity, should apply Florida law. *See, e.g.*, *Chieftain Royalty Co.*, 861 F.3d at 1195; *Haas v. Burlington Cty.*, 2019 WL 413530, at *10 (D. N.J. Jan. 31, 2019) ("Since this case has been resolved pursuant to state law claims, this Court must look to New Jersey law to determine whether the incentive awards" are appropriate); *Freebird, Inc. v. Merit Energy Co.*, 2013 WL 1151264, at *5 (D. Kan. Mar. 19, 2013) (applying Kansas law to question of service awards); *Du v. Blackford*, 2018 WL 6604484, at *9 (D. Del. Dec. 18, 2018) (holding "the reasonableness of the [service] award…to be a matter of state law.")

Here, each Named Plaintiff provided deposition testimony, produced numerous documents, attended and traveled to mediation conferences, actively participated in the litigation including periodic updates from counsel and review of court filings, provided input in negotiating the terms of the Settlement for Class Members, insisted on favorable terms, and otherwise significantly advanced the litigation and the interests of the Class Members. Phillips Decl. at ¶ 28; see also Ex. E (composite exhibit of Plaintiffs' Declarations). Courts sitting in diversity under Florida law have approved Service Awards where, as here, the named plaintiffs contributed to and expended time on the litigation, and, in so doing, helped secure benefits for a class. *See, e.g.*, *Cook v. Gov't Emples. Ins. Co.*, 2020 U.S. Dist. LEXIS 111956, at *34 (M.D. Fla. Jun. 22, 2020) (approving awards of $10,000 as "reasonable and justified given the Class Representatives' admirable dedication to the Class, time and effort expended in litigating the case, participating in discovery and mediation, and protecting the best interests of Class Members."). Similarly, the Service Awards requested here are eminently reasonable, particularly given approval of such awards will have no impact on the recovery to which Class Members are entitled. *See Altamonte Springs Imaging*, 12 So. 3d at 857 (finding that "it is highly significant" that the defendant was paying the Service Awards separately from the class recovery).

Each Named Plaintiff submits a declaration identifying the efforts and risks undertaken on behalf of the Settlement Class. Ex. E (composite exhibit of Plaintiffs' Declarations). Plaintiffs respectfully submit this Court should approve Service Awards of $10,000 to each of the Named Plaintiffs.

<u>**CONCLUSION**</u>

Plaintiffs and Class Counsel respectfully request that the Court grant Plaintiffs' unopposed Motion for Attorneys' Fees, Costs, and Service Awards, and direct that GEICO pay to Class Counsel and the Named Plaintiffs $8.7 million in attorneys' fees, $350,000 in costs, and $10,000 as Service Awards to each of the Named Plaintiffs, pursuant to the Settlement Agreement.

Dated:  September 28, 2020.

Respectfully submitted,

*/s/ Jake Phillips*_____
Jacob Phillips
Florida Bar No. 0120130
Edmund A. Normand
Florida Bar No. 0865590

**Normand PLLC**
3165 McCrory Pl., Ste. 175
Orlando, FL 32803
Telephone: (407) 603-6031
Facsimile: (888) 974-2175
Ed@Normandpllc.com
Jacob.phillips@normandpllc.com

Christopher B. Hall
Georgia Bar No. 318380
Andrew Lampros
Georgia Bar No. 432328
Appearing Pro Hac Vice
**Hall & Lampros, LLP**
400 Galleria Parkway, Suite 1150
Atlanta, GA 30339
Phone: (404) 876-8100
Facsimile: (404) 876-3477
chall@hallandlampros.com
alampros@hallandlampros.com

Bradley W. Pratt
Florida Bar No. 0094300
**Pratt Clay, LLC**
4401 Northside Parkway, Suite 520
Atlanta, Georgia 30327
Telephone: (404) 949-8118
Facsimile: (404) 949-8159
bradley@prattclay.com

Christopher J. Lynch
Florida Bar No. 331041
**Christopher J. Lynch, P.A.**
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Facsimile: (305) 443-6204
Clynch@hunterlynchlaw.com
Lmartinez@hunterlynchaw.com

Tracy L. Markham
Florida Bar No. 0040126
**Southern Atlantic Law Group, PLLC**
2800 N 5th Street, Suite 302
St. Augustine, Florida 32084
Phone: (904) 794 7005

21

Facsimile: (904) 794 7007
tlm@southernatlanticlaw.com
pleadingsonly@southernatlanticlaw.com

***Counsel for Plaintiff***